# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARLENE COLLINS, individually and )
on behalf of all others similarly situated; )
BAIL BOND ASSOCIATION )
OF NEW MEXICO; )
SENATOR RICHARD MARTINEZ; )
SENATOR BILL SHARER; )
SENATOR CRAIG BRANDT; )
REPRESENTATIVE BILL REHM; and )
REPRESENTATIVE CARL TRUJILLO; )

       *Plaintiffs*, )

        )

v. )                Case No. 1:17-cv-00776

        )

CHARLES W. DANIEL, )
Individually and in His Official Capacity; )
EDWARD L. CHAVEZ, )
Individually and in His Official Capacity; )
PETRA JIMENEZ MAEZ, )
Individually and in Her Official Capacity; )
BARBARA J. VIGIL; )
Individually and in Her Official Capacity; )
JUDITH K. NAKAMURA, )
Individually and in Her Official Capacity; )
THE NEW MEXICO SUPREME COURT; )
NAN NASH, )
Individually and in Her Official Capacity; )
JAMES NOEL, )
Individually and in His Official Capacity; )
THE SECOND JUDICIAL DISTRICT COURT; )
HENRYA. ALAINZ, )
Individually and in His Official Capacity; )
ROBERT L. PADILLA, )
Individually and in His Official Capacity; )
BERNALILLO COUNTY METROPOLITAN )
COURT; JULIE MORGAS BACA, )
Individually and in Her Official Capacity; and )
BERNALILLO COUNTY; )

       *Defendants*. )

        )

## *1ST AMENDED* CLASS ACTION COMPLAINT; COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1

Plaintiff Darlene Collins, on behalf of herself and all others similarly situated, Plaintiff Bail Bonds Association of New Mexico ("BBANM"), Plaintiff Senators Richard Martinez, Bill Sharer and Craig Brandt, and Plaintiff Representatives Bill Rehm and Carl Trujillo (collectively "Plaintiffs"), bring this action against Defendants Charles Daniels, Edward Chavez, Petra Maez, Barbara Vigil, Judith Nakamura, the New Mexico Supreme Court, Nan Nash, James Noel, the Second Judicial District Court, Henry A. Alaniz, Robert L. Padilla, Bernalillo County Metropolitan Court, Julia Morgas Baca, and Bernalillo County  (collectively "Defendants"), and allege the following:

## PRELIMINARY STATEMENT

1.      Plaintiff Collins stands accused but unconvicted of a crime. Under bedrock principles of American law, she is presumed innocent. And like all innocent people, she is presumptively entitled to liberty from any pre-trial or pre-arraignment restraint.  In fact, denial of that pre-arraignment liberty almost cost her very life and cost the State of New Mexico significant amounts of money in medical care.

2.      For centuries, the mechanism for ensuring a defendant's liberty from pre-trial restraint was monetary bail. A person accused but unconvicted of a bailable offense could not be subject to any pre-trial or pre-arraignment deprivation of liberty without the option of bail, unless the government showed that no amount of money would serve the government's interest in securing the defendant's future appearance (or, more recently, that detention was necessary to protect the community from danger). Bail is thus a liberty-preserving mechanism as old as the Republic.

3.      The availability of bail is enshrined in the Bill of Rights. The Eighth Amendment forbids "[e]xcessive bail," a protection that presupposes the option of bail. And the vast majority

of state constitutions throughout American history, including New Mexico's, have likewise guaranteed defendants (in all but capital cases) the option of bail before being subjected to pre-trial deprivations of liberty.

4.      The option of bail to avoid pre-trial deprivations of liberty no longer exists in New Mexico, despite the fact that the New Mexico Legislature did not pass a change in the law or adopt a public policy modifying the law regarding bail found at NMSA 1978 § 31-3-1 *et. seq.* Instead, under the recently passed and effective July 1, 2017 New Mexico Supreme Court Rules regarding pretrial release and detention in criminal proceedings, adopted pursuant to Supreme Court Order No. 17-8300-005[1] ("Supreme Court Rules"), *See* EXHIBIT A, New Mexico courts may not consider releasing a defendant on bail unless they first conclude and provide a written opinion within two days of the appearance of the Defendant before them that no combination of non-monetary conditions - including substantial deprivations of pre-trial liberty like home detention, being prevented from returning to their home or some sort of 24-hour electronic monitoring for instance through an "ankle bracelet" - will ensure the defendant's appearance at trial. Thus, no matter how much an accused would prefer posting bail or might need to obtain pretrial or pre-arraignment liberty because of needs like medical conditions, the Supreme Court rules mandate that release on her own recognizance with home detention, an electronic monitoring device or some other liberty depriving condition be imposed instead.  Further, as a result of the Supreme Court Rules, obtaining

---

[1] IT IS THEREFORE ORDERED the amendment of Rules 5-106, 5-204, 5-401, 5-402, 5-403, 5-405, and 5-406 NMRA of the Rules of Criminal Procedure for the District Courts, Rules 6-401, 6-403, 6-406, 6-506, and 6-703 NMRA of the Rules of Criminal Procedure for the Magistrate Courts, Rules 7-401, 7-403, 7-406, 7-506, and 7-703 NMRA of the Rules of Criminal Procedure for the Metropolitan Courts, Rules 8-401, 8-403, 8-406, 8-506, and 8-703 NMRA of the Rules of Procedure for the Municipal Courts, Rules 12-204, and 12-205 NMRA of the Rules of Appellate Procedure, and For s 9-302, 9-303, 9-307, 9-308, and 9-309 NMRA of the Criminal Forms is APPROVED;

needed or desired pre-arraignment release is no longer an option.

5.      Even before the Supreme Court Rules took effect the Defendants Second Judicial District Court ("SJDC"), Bernalillo County Metropolitan Court ("BCMC"), and Bernalillo County ("BC") adopted and implemented the Public Safety Assessment$^{TM}$ court-based pretrial risk assessment tool ("Arnold Tool") (developed by the Laura and John Arnold Foundation) pursuant to an MOU *attached hereto as* EXHIBIT C.  This tool operating under the same framework that would be adopted by the Supreme Court effectively eliminated pre-trial release pursuant to a secured bond denying those alleged to have committed a crime the pre-trial liberty option of a secured bond.

6.      Plaintiff Collins's experience is illustrative of just how damaging the changes these rules can be even before the alleged violator can be arraigned. She was arrested on July 1, 2017, after a domestic dispute and charged with aggravated assault with a deadly weapon. Plaintiff Collins is 61 years old, she is handicapped, diagnosed with mental health issues and other major health issues all requiring medications, but has supportive family, and a residence in the community. However, despite the fact that her family secured the bond necessary from a local bond agency to have her released on bail from the Metro Detention Center prior to arraignment, because of the Defendants newly enacted rules she was denied release. She could have paid a non-excessive amount of bail to secure her future appearance for arraignment. In fact, Plaintiff Collins' family had reached an agreement with an Albuquerque bond company that is a member of Plaintiff BBANM.  Had the new rules not prevented the posting of a jailhouse bond, she then would have enjoyed her full pre-arraignment liberty necessary to take care of her medical needs without placing her life in jeopardy, just like any other presumptively innocent member of society.

7.      Instead, under the Supreme Court Rules, neither the courts nor the jailhouses ever

had the option to set a pre-arraignment jailhouse bond or the realistic option to set pre-trial secured bond, let alone to give Plaintiff Collin's family the opportunity to post it.  Instead, relying on new rules the detention center concluded that pre-arraignment secured bonds are not allowed under the new Supreme Court Rules, and that Plaintiff Collin's appearance for arraignment could not be secured by a non-excessive jailhouse bond requiring her continued incarceration prior to arraignment.  Further, even upon her arraignment the lower court was required to consider non-monetary conditions (including the condition imposed that she was not to return to her home while she was awaiting trial) or an unsecured cash bond disallowing her the option of obtaining a non-excessive secured bond that allowed her to continue her daily life, with her particular needs free from liberty restricting conditions.

8.     Thousands of other New Mexico defendants have been, and will continue to be, subjected to similar life-altering, liberty-restricting conditions without ever receiving the option of a secured non-excessive bond. And they are not the only ones harmed. The Supreme Court Rules and even before the Supreme Court Rules the implementation of the Arnold Tool largely eliminates the business of secured appearance bonds like those provided by the members of Plaintiff BBANM, which help criminal defendants obtain their pre-arraignment and pretrial freedom without infringing on their civil liberties.

9.     The New Mexico Supreme Court Rules and the Arnold Tool deviate from centuries of American criminal practice. The Supreme Court believes its new approach will reduce the number of detained defendants who cannot afford bail, and Plaintiffs have no quarrel with that general objective. But the state can achieve that goal while offering both monetary bail and other conditions, as appropriate. What the New Mexico Supreme Court may not do is restrict the liberty of presumptively innocent defendants without offering the one alternative to substantial pre-trial

deprivations that the Constitution expressly protects—monetary bail.

## JURISDICTION AND VENUE

10.     This action seeks declaratory and injunctive relief, damages, and other relief pursuant to 28 U.S.C. §§2201 and 2202 and 42 U.S.C. §§1983 and 1988.

11.     This Court has subject-matter jurisdiction over Plaintiffs' federal constitutional claims pursuant to 28 U.S.C. §§1331 and 1343(a)(3).

12.     This Court has pendent jurisdiction to hear Plaintiff's state constitutional claims.

13.     Venue is proper pursuant to 28 U.S.C. §1391(b)(2).

14.     There is an active, justiciable controversy between the parties over whether Defendants' imposition of liberty-restricting conditions of pre-arraignment and pre-trial release on Plaintiff Collins and other presumptively innocent criminal defendants - including prospective clients of bond agents like the members Plaintiff BBANM — without providing the option of secured non-excessive bond violates the Constitution.  Further, there is a justiciable controversy concerning whether the actions of Defendants violate the New Mexico Constitution's separation of powers found at N.M. Const. art. III, § 1 by impermissibly invading the powers delegated to New Mexico Legislature in N.M. Const. art. IV, § 1.

15.     Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' constitutional rights as well as the economic harms imposed by the unconstitutional actions and by restoring the law-making authority of the New Mexico Legislature to decide the highly important public policy issue.

16.     A preliminary injunction preventing the New Mexico Courts Defendants from enacting the challenged New Mexico Supreme Court Rules will shield Plaintiffs' constitutional rights from ongoing harm while this litigation is pending.

17.     A permanent injunction against Defendants, preventing them from enacting the challenged New Mexico Supreme Court Rules, will protect Plaintiffs' rights prospectively after final resolution of this matter and will restore the legislative power to address this public policy matter for the preservation of the public peace, health or safety.

## PARTIES

18.     Plaintiff Darlene Collins is a citizen of New Mexico who resides in Albuquerque. Plaintiff was arrested July 1, 2017, for aggravated assault, based on her alleged role in a domestic disturbance. Plaintiff is handicapped, suffering mobility limitations incurred after being in a collision caused by a drunk driver, is on medications for psychological issues and for blood pressure issues, she has a supportive family, and a residence in the community, and her family was willing to pay a non-excessive amount of bail for secured bond required to assure her future appearance for arraignment and trial. Under the new Supreme Court Rules, however, neither the jailhouse nor the court could not offer her that option, but instead could not consider a secured bond to release her pre-arraignment and had to consider whether non-financial conditions or unsecured monetary conditions would assure her appearance before considering a secured bond. The court determined that the non-financial conditions of not returning to her home would secure the community upon her release on her own recognizance and that pretrial service could determine any other conditions to secure her return - which ultimately resulted in no additional conditions, however, Plaintiff Collins was denied the option of posting a secured bond so that she could return to her home.

19.     Plaintiff Bail Bond Association of New Mexico (BBANM) is a professional membership organization comprised of bail bond businesses licensed to do business and operating throughout New Mexico. The membership of BBANM stands ready, willing, and able to issue and

post a secured bond to Plaintiff Collins and others similarly situated. The membership of BBANM has experienced almost total devastation of their businesses, through the depravation of the protections of the 8th Amendment to a reasonable bond for their potential customers.  Madrid Enterprises, Inc., DBA Gerald Madrid Bail Bonds is a member of BBANM and licensed bail bond agent in the State of New Mexico, Gerald Madrid Bail Bonds is owned by Gerald Madrid who is the President of Plaintiff BBANM.

20.    Plaintiff Senator Richard Martinez is a duly elected Senator to the New Mexico Legislature.

21.    Plaintiff Senator Bill Sharer is a duly elected Senator to the New Mexico Legislature.

22.    Plaintiff Senator Craig Brandt is a duly elected Senator to the New Mexico Legislature.

23.    Plaintiff Representative Carl Trujillo is a duly elected Representative to the New Mexico Legislature.

24.    Plaintiff Representative Bill Rehm is a duly elected Representative to the New Mexico Legislature

25.    Defendant Charles Daniels is a Justice of the New Mexico Supreme Court. Defendant Daniels is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

26.    Defendant Edward Chavez is a Justice of the New Mexico Supreme Court. Defendant Chavez is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

27.    Defendant Petra Maez is a Justice of the New Mexico Supreme Court. Defendant

Maez is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

28.     Defendant Barbara Vigil is a Justice of the New Mexico Supreme Court. Defendant Vigil is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

29.     Defendant Judith Nakamura is the Chief Justice of the New Mexico Supreme Court. Defendant Nakamura is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

30.     Defendant New Mexico Supreme Court is sued in its official capacity for declaratory and injunctive relief as a co-equal branch of the tripartite New Mexico government established by the New Mexico Constitution.

31.     Defendant Nan Nash is the Chief Judge of the Second Judicial District Court. Defendant Nash is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity.

32.     Defendant James Noel is the Court Executive Officer of the Second Judicial District Court. Defendant Noel is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

33.     Defendant Second Judicial District Court is sued in its official capacity for declaratory and injunctive relief as part of the judicial branch of the tripartite New Mexico government established by the New Mexico Constitution.

34.     Defendant Henry A. Alaniz is the Chief Judge of the Bernalillo County Metropolitan Court. Defendant Alaniz is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

35.     Defendant Robert L. Padilla is the Court Executive Officer of the Bernalillo County Metropolitan Court. Defendant Padilla is sued for declaratory and injunctive relief in his official capacity and for damages in his personal capacity.

36.     Defendant Bernalillo County Metropolitan Court is sued in its official capacity for declaratory and injunctive relief as part of the judicial branch of the tripartite New Mexico government established by the New Mexico Constitution

37.     Defendant Julia Morgas Baca is the County Manager of the Bernalillo County. Defendant Baca is sued for declaratory and injunctive relief in her official capacity and for damages in her personal capacity

38.     Defendant Bernalillo County is sued in its official capacity for declaratory and injunctive relief as a governmental entity of the State of  New Mexico government established by the New Mexico Constitution.

## FACTUAL ALLEGATIONS

### A.     HISTORICAL AND CONSTITUTIONAL BACKGROUND

39.     "Bail … is basic to our system of law." *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971). With roots tracing to the "ancient practice[s]" of English common law and the Magna Carta, bail has preserved the "traditional right to freedom before conviction" for almost a thousand years. *Stack v. Boyle*, 342 U.S. 1, 4 (1951).

40.     The defining documents of English liberty—the Statute of Westminster of 1275, the Petition of Right of 1628, the Habeas Corpus Act of 1679, and the English Bill of Rights of 1689—all recognize a defendant's right to bail. *See Cobb v. Aytch*, 643 F.2d 946, 958 n.7 (3d Cir. 1981) (en banc).

41.     Early American authorities likewise recognized the right to bail. The Northwest Ordinance, adopted by the Continental Congress in 1787, provided that "[a]ll persons shall be

bailable, unless for capital offenses where the proof should be evident, or the presumption great." 1 Stat. 50, 52. The Judiciary Act of 1789, adopted on the same day that Congress proposed the Bill of Rights to the States for ratification, directed that "upon all arrests in criminal cases, bail shall be admitted except where the punishment may be death." 1 Stat. 73, 91.

42.     Against this backdrop in which the right to bail was presumed, the People ratified the Eighth Amendment, which provides "[e]xcessive bail shall not be required."

43.     State constitutions, too, have overwhelmingly recognized a right to bail as an option to avoid pre-trial deprivations of liberty. "[E]very state that entered the Union after 1789, except West Virginia and Hawaii, guaranteed a right to bail in its original state constitution." Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L. Rev. 328, 351 (1982).

44.     The right to bail is not absolute. Courts may deny bail to a defendant if no amount of money will assure his appearance at trial or the safety of the community. *United States v. Salerno*, 481 U.S. 739, 746-55 (1987). And legislatures may define categories of crimes, such as capital offenses, or other "special circumstances" in which detention without bail may be permitted. *Id.* at 749.

45.     But outside such "carefully limited" exceptions, *id*. at 755, the Constitution has always guaranteed a defendant the opportunity to avoid pre-trial deprivations of liberty through non-excessive monetary bail.

**B.  BAIL IN NEW MEXICO**

46.     Non-excessive bail is a long-established tradition in New Mexico contained the New Mexico Constitution's Bill of Rights stating that "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the

presumption great and in situations in which bail is specifically prohibited by this section. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. N.M. Const. art. II, § 13.

47.     On November 8, 2016, following the passage of 2016 Senate Joint Resolution 1, the voters of New Mexico voted to amend the New Mexico Constitution by adding the following, removing some of the language and adding the following language as recommended by SJR 1:

> Bail may be denied by a court of record pending trial for a defendant charged with a felony if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community. An appeal from an order denying bail shall be given preference over all other matters.
>
> A person who is not detainable on grounds of dangerousness nor a flight risk in the absence of bond and is otherwise eligible for bail shall not be detained solely because of financial inability to post a money or property bond. A defendant who is neither a danger nor a flight risk and who has a financial inability to post a money or property bond may file a motion with the court requesting relief from the requirement to post bond. The court shall rule on the motion in an expedited manner.

N.M. Const. art. II, § 13

48.     The New Mexico voters in the adoption of the amendment to the Constitution therein sent the undeniable signal to the New Mexico Legislature concerning their views on the public policy in New Mexico concerning bail.  Bail in New Mexico was historically a matter of law providing for the preservation of the public peace, health or safety delegated to the New Mexico Legislature which was acted upon by the New Mexico Legislature in the passage of law found at NMSA 1978 § Ch. 31, art. 3.

## C. THE CHALLENGED LAW AND THE CHALLENGED ARNOLD TOOL PROGRAM

49.     In 2016, following the New Mexico Supreme Court's decision in *State v. Brown*, 2014-NMSC-038, 338 P.3d 1276, Justice Daniels the author of the *Brown* opinion petitioned the Legislature for a change in the law regarding bail in New Mexico.  His quest for that change

culminated in compromise that was passed as SJR 1 and was ratified by the voters in November of 2016.

50.     Just before (November 7, 2017) the voters ratified SJR 1, Defendants SDJC, BCMC and BC entered into an MOU with Laura and John Arnold Foundation for the adoption and implementation of the Arnold tool in Bernalillo County criminal cases.   The use of the Arnold Tool resulted in persons accused of a crime being denied the opportunity to secure their pre-trial release through a secured bond as the tool requires the court thru an entirely opaque program to assess non-monetary conditions of release that infringe upon a person's pretrial liberty just as the Supreme Court Rules do.

51.     Following the adoption of the amendment by the voters in November 2016, the New Mexico Supreme Court convened an *ad hoc* committee for the adoption of modified rules concerning bail in New Mexico.   The resultant changes to the Rules of Criminal Procedure for the Districts Courts, specifically the redline changes to NMRA 5-401, are included as EXHIBIT B, for example.   The result of the *ad hoc* committee was the recommendation of the sweeping bail reforms sought but denied to Justice Daniels in the New Mexico Legislature following the 2014 *Brown* decision.   On June 5, 2017, presumably under the auspices of the New Mexico Supreme Courts constitutional authority of superintending control over the inferior courts of New Mexico, the New Mexico Supreme Court usurped the powers of the New Mexico Legislature to pass a sweeping public policy reform not as law, but through rule.

52.     The new Supreme Court Rules created hierarchy effectively prohibiting the lower courts from considering secured bonds without placing untenable work requirements on the lower court judges therein effectively removing the option from consideration by judges and a de facto situation wherein jailhouse bonds where completely extinguished as an option for pre-arraignment

release.  Specifically, the new rules as adopted contained the following language:

> Pending trial, any defendant eligible for pretrial release under Article II, Section 13 of the New Mexico Constitution, shall be ordered released pending trial on the defendant's personal recognizance or upon the execution of an unsecured appearance bond in an amount set by the court, unless the court makes written findings of particularized reasons why the release will not reasonably ensure the appearance of the defendant as required. The court may impose non- monetary conditions of release under Paragraph D of this rule, but the court shall impose the least restrictive condition or combination of conditions that will reasonably ensure the appearance of the defendant as required and the safety of any other person or the community.
>
> …
>
> In determining the least restrictive conditions of release that will reasonably ensure the appearance of the defendant as required and the safety of any other person and the community, the court shall consider any available results of a pretrial risk assessment instrument approved by the Supreme Court for use in the jurisdiction, if any, and the financial resources of the defendant.

53.    *Most importantly,* the Supreme Court Rules in establishing the hierarchy only allowed for the lower courts to consider the posting of secured bonds "[i]f the court makes findings of the reasons why release on personal recognizance or unsecured appearance bond, in addition to any non-monetary conditions of release, will not reasonably ensure the appearance of the defendant as required, the court may require a secured bond for the defendant's release." And then the Supreme Court Rules require the already overworked lower court judges to write and file written findings of the individualized facts justifying the secured bond, effectively ensuring that no defendant could elect or be offered the alternative to post a non-excessive secured bond in lieu of suffering infringement upon their pre-trial liberties.

54.    In sum, the new Supreme Court Rules change the landscape of the State's criminal justice system replacing a system that guaranteed a monetary bail determination to all defendants except those in certain capital cases with a system that authorizes pre-trial detention based on perceived dangerousness and imposition of severely restrictive conditions such as electronic

monitoring, home detention, drug and alcohol prohibition, and travel limitations without any opportunity to instead post non-excessive secured bond.

### D.     THE IMPACT OF THE CHALLENGED LAW

55.     The New Mexico Supreme Court's new pretrial release rules took effect July 1, 2017.  They are similar if not largely identical to the Criminal Justice Reform Act that was adopted by New Jersey's legislature as New Jersey's new pre-trial release and detention procedures which took effect January 1, 2017.

56.     Because New Mexico's new rules and the Bernalillo County parties use of the Arnold Tool are nearly identical to New Jersey's new law, and because Supreme Court Rules are so recently adopted such that no reliable accounting or collection of data has yet been completed, it is appropriate to consider New Jersey statistics of the impacts to its citizenry in forecasting the impact to New Mexico.

57.     According to New Jersey's preliminary statistics, in the first three months of 2017, New Jersey courts granted 1,262 pre-trial detention motions from prosecutors—a procedural mechanism that allows detention without the consideration of bail and that did not exist before the new law.  N.J. Courts, *Criminal Justice Reform Statistics: January 2017-March 2017*, Chart A, http://bit.ly/2q68u9Y.

58.     According to the same statistics, approximately 7,579 individuals were released subject to non-monetary conditions in the first three months of 2017, including 1,286 who were released subject to the most severe conditions including home detention and electronic monitoring. *Id.*

59.     Although New Jersey appears not to have issued official statistics on the number of defendants released on monetary bail under the new law, one prominent newspaper reported that of

"the 3,382 cases statewide that were processed in the first four weeks of January, judges set bail only three times." Lisa W. Foderaro, *New Jersey Alters its Bail System and Upends Legal Landscape*, N.Y. Times (Feb. 6, 2017), http://nyti.ms/2llmeMR.

60.     Thus, in New Jersey (as in New Mexico) while bail or secured bond remains a theoretical option, "the reality is that judges have nearly done away with it." *Id.*; *see also* Nicole Hong & Shibani Mahtani, *Cash Bail, a Cornerstone of the Criminal-Justice System, Is Under Threat*, Wall St. J. (May 22, 2017), http://on.wsj.com/2qHz5hb (describing impact on bail industry).

61.     Plaintiff BBANM's membership is the many bail bond companies that have been severely harmed by the drastic reduction in the number of defendants given the option of jailhouse bonds or secured bonds under the new law and the implementation of the Arnold Tool.

62.     If New Mexico criminal defendants had the option of secured bonds or jailhouse bonds, the members of Plaintiff BBANM would help them to take advantage of that option.

63.     Plaintiff BBANM thus asserts both its members own constitutional rights and those of their potential customers. *See, e.g.*, *Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990).

E.     **THE CHALLENGED LAW APPLIED TO PLAINTIFF COLLINS**

64.     On July 1, 2017, Plaintiff Darlene was arrested for aggravated assault arising out of a domestic dispute.

65.     Plaintiff Collins was then transported to the Metro Detention Center in Albuquerque, NM.

66.     Plaintiff Collins suffers from a handicap from a previous accident cause by a drunk driver, a mental condition requiring medication, and a medical condition requiring medication.  She was denied access to necessary medications as a result of her incarceration, ultimately resulting in her care in the jail's infirmary, Lovelace Hospital and UNM-Hospital at taxpayer expense.

67.     Plaintiff Collins is retired and lives in the community.

68.     Plaintiff Collins has no prior criminal record.

69.     Plaintiff Collins has a supportive family.

70.     Under the system of jailhouse bonds and secured bonds that existed for a century in New Mexico before July 1, 2017, the jailhouse could have set a reasonable, non-excessive monetary bail to ensure Plaintiff Collin's appearance at arraignment and then for trial.

71.     If a jailhouse bond had been allowed, Plaintiff Collin's family was prepared to use their own financial resources with the assistance of a member of Plaintiff BBANM to pay the required amount for pre-arraignment release.

72.     The new Supreme Court Rules barred the jailhouse and the Court from setting a secured bond unless a Court first determined that no combination of non-monetary conditions would reasonably assure Plaintiff Collin's appearance at arraignment.

73.     As result of the denial of the ability of her family to post bail to secure her freedom, Plaintiff Collins was incarcerated for almost 5 full days and was required to be hospitalized.

74.     The Metro Detention Center (MDC) did not—and could not, under the new Supreme Court Rules consider releasing Plaintiff Collins subject to monetary bail.

75.     Ultimately, no conditions were imposed upon her release post-arraignment and pre-trial other than a verbal order from the Court that she was being released, but she was not allowed to return to her home.  The loss of liberty pre-arraignment imposed upon on Plaintiff Collins was severely disruptive, causing her medical problems, causing concerns for post-traumatic stress disorder, to disrupt her family life causing her daughters to fear for her life, and make her feel that her life was in jeopardy.

76.     Yet under the Supreme Court Rules, the MDC was not even allowed to consider the liberty-preserving if not potentially life-preserving option of monetary bail before requiring the

continued incarceration of Plaintiff Collins.

**F.  THE CHALLENGED LAW WAS PROMULGATED IN VIOLATION OF THE NEW MEXICO CONSTITUTION'S SEPERATION OF POWERS**

77.      Plaintiffs Senator Martinez, Senator Sharer, Senator Brandt, Representative Trujillo and Representative Rehm are currently serving legislators in the New Mexico Senate and House respectively.  As duly elected members of the New Mexico Legislature they are charged as members of the body with the power and the responsibility of that branch of government to pass "laws providing for the preservation of the public peace, health or safety." N.M. Const. art. IV, § 1

78.      The Defendants have the ability to write rules for the administration of justice in the lower courts pursuant to the Supreme Court's authority under the New Mexico Constitution to "have superintending control over all inferior courts." N.M. Const. art. VI, § 3

79.      In New Mexico's tripartite government, the respective powers are separated and cannot be executed by a branch not possessing those powers under the New Mexico Constitution. The New Mexico Constitution expressly states:

> The powers of the government of this state are divided into three distinct departments, the legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others, except as in this constitution otherwise expressly directed or permitted.

N.M. Const. art. III, § 1.  Article III provides for the division of government into three distinct branches, the legislative, executive, and judicial branches, each responsible for performing a different function. The separation of powers provision of Article III, Section 1, generally bars one branch of government from performing a function reserved for another branch of government. *Old Abe Co. v. New Mexico Mining Commission*, 908 P.2d 776, 787 (1995); c*iting State ex rel. Clark v. Johnson,* 904 P.2d 11, 22 (1995).

80.     The question at hand is, therefore, does the Supreme Court's new pretrial release rules make or change law for the preservation of the public peace, health or safety.  "The test is whether the [Supreme Court's] action disrupts the proper balance between the [judicial] and legislative branches." *State ex rel. Clark,* 904 P.2d at 23.  "If the Supreme Court's actions infringe upon "the essence of legislative authority the making of laws then the [Supreme Court] has exceeded [its] authority." *State ex rel. Clark,* 1995-NMSC-051, 120 N.M. at 573, 904 P.2d at 22.

81.     The New Mexico Legislature has clearly exercised its legislative authority to pass laws to preserve the public peace with regard to bail and pretrial release as evidenced by the existence of statutes directed to the issue.  Thus, such a major public policy change undertaken by the New Mexico Supreme Court in adopting the new Supreme Court Rules infringes upon the power of the Legislature to make law.

## CLASS ACTION ALLEGATIONS

### A.     GENERAL CLASS ACTION ALLEGATIONS

82.     Plaintiff Collins brings this action, on behalf of herself and all others similarly situated, for the purpose of asserting the claims alleged in this complaint on a common basis.

83.     A class action is a superior means, and the only practicable means, by which Plaintiff Collins and unknown class members can challenge the New Mexico Supreme Court's unconstitutional rules restricting the liberty of Plaintiff Collins and similarly situated class members without providing the constitutionally required option of monetary bail.

84.     This action is brought and may properly be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3).

85.     This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule

23(b)(2) and (b)(3), where applicable.

86.     Plaintiff Collins proposes a class seeking declaratory and injunctive relief and a class seeking damages relief.

87.     The Declaratory and Injunctive Relief Class is defined as: All New Mexico criminal defendants who are or will be subject to the liberty-restricting conditions of pre-trial release permitted by the Supreme Court Rules or under the implementation of the Arnold Tool without having the opportunity to be considered for release on secured bond.

88.     The Damages Class is defined as: All New Mexico criminal defendants who were denied the opportunity for pre-arraignment liberty and criminal defendants who are or who were (but are no longer) subject to the liberty-restricting conditions of pre-trial release permitted by the Supreme Court Rules or the Arnold Tool without having the opportunity to be considered for release on a secured bond, and who have suffered compensable harm as a result.

## B.     RULE 23(A)(1): NUMEROSITY

89.     The class is so numerous that joinder is impracticable.

90.     The vast majority of these individuals were denied the opportunity for pre-arraignment liberty and were subjected to liberty-restricting conditions of pre-trial release without having the opportunity to be considered for release on a secured bond.

91.     The total number of individuals subjected to the challenged law—either in the past, currently, or in the future—will likely number in the tens of thousands.

## C.     RULE 23(A)(2): COMMONALITY

92.     Common questions of law or fact exist as to all members of the class.

93.     All class members seek relief on the common legal question whether New Mexico's law violates their constitutional rights by subjecting them to liberty- restricting conditions of release without providing them with an opportunity to be considered for release on monetary bail.

94.     All class members also present a common factual question in that they were denied release pre-arraignment and were released subject to liberty-restricting conditions without a consideration of secured bond.

95.     All members of the declaratory and injunctive relief class seek relief on the common legal question whether a declaratory judgment and injunctive relief are appropriate relief for the asserted constitutional violation.

96.     All members of the damages class seek relief on the common legal question whether damages are available for the asserted constitutional violation.

**D.     RULE 23(A)(3): TYPICALITY**

97.     Plaintiff Collin's claims are typical of the claims of other members of the class.

98.     Like all members of the class, Plaintiff Collins was denied a jailhouse bond pre-arraignment and was released subject to liberty-restricting conditions without having the opportunity to be considered for release on secured bond.

99.     Like all members of the class, Plaintiff Collins claims that the New Mexico Supreme Court's rules barring consideration of secured bond before imposing liberty-restricting conditions violates her constitutional rights.

100.    Like all members of the declaratory and injunctive relief class, Plaintiff Collins seeks a declaratory judgment that the law is unconstitutional and an injunction preventing the New Mexico Courts from enforcing it.

101.    Like all members of the damages class, Plaintiff Collins suffered compensable harm

as a result of the liberty-restricting conditions imposed on her and seeks damages to remedy that harm.

102.     There is nothing distinctive about Plaintiff Collins's claim for declaratory relief, injunctive relief, or damages that would lead to a different result in her case than in any case involving other class members.

### E.     RULE 23(A)(4): ADEQUACY

103.     Plaintiff Collins is an adequate representative of the class because her interest in the vindication of her constitutional rights is entirely aligned with the interests of the other class members, each of whom has the same constitutional claims.

104.     Plaintiff Collins is a member of the class, and her interests do not conflict with those of the other class members with respect to any claims.

105.     Plaintiff Collins is represented by attorneys from Western Agriculture, Resource and Business Advocates, LLP and Preston Law Offices, who have extensive experience litigating complex civil rights matters in federal court and detailed knowledge of New Mexico's law and other relevant issues.

106.     Class counsel has undertaken a detailed investigation of New Mexico's policies, practices, and procedures as they relate to federal constitutional requirements.

107.     Class counsel has developed and continues to develop relationships with Plaintiff Collins and others similarly situated.  The interests of the members of the class will be fairly and adequately represented by Plaintiff Collins and her attorneys.

### F.     RULE 23(B)(2): DECLARATORY AND INJUNCTIVE RELIEF CLASS

108.     A class action is appropriate for the declaratory and injunctive relief class under Rule

23(b)(2) because Defendants have acted on grounds that apply generally to the class—namely the new Supreme Court Rules or the implementation of the Arnold Tool effectively prohibiting consideration of secured bond if any combination of non-monetary conditions and non-secured monetary conditions would reasonably assure a defendant's appearance at trial.

109.    The class seeks declaratory and injunctive relief to enjoin enforcement of the unconstitutional provisions of the Supreme Court Rules or use of the Arnold Tool. That relief will necessarily apply to every member of the class and is thus appropriate, respecting the class as a whole.

110.    Class status is particularly appropriate because there is an acute risk that any individual class member's claim for declaratory and injunctive relief will become moot before the litigation is finally resolved.

## G.    RULE 23(B)(3): DAMAGES CLASS

111.    A class action is appropriate for the damages class under Rule 23(b)(3) because questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

112.    The predominant question in the case is whether the provisions of the Supreme Court Rules allowing liberty-restricting conditions of release to be imposed without consideration of secured bond is consistent with the Constitution. This question of law and the most important questions of fact—that the class members were subjected to denial of pre-arraignment liberty and liberty-restricting conditions without consideration of secured bond—are common to all members of the class. These questions predominate over any questions affecting only individual members, such as potential variations in damages.

113.    A class action is a superior mechanism for fairly and efficiently adjudicating the controversy because individual damage claims are likely to be relatively small, which would severely limit any individual class member's ability to obtain relief (especially considering that many class members are unlikely to be able to retain attorneys to pursue their small civil claims).

114.    A class action is also superior because litigating thousands of individual damages claims would be unnecessarily burdensome for the state and the courts and could produce unfair and inconsistent results.

115.    Individual members of the damages class do not have a strong interest in controlling the prosecution of separate lawsuits. *See* Fed. R. Civ. P. 23(b)(3)(A). To the contrary, given the small claims at issue, they are unlikely to obtain any relief at all without aggregation.  And the class members' interests are wholly aligned with Plaintiff Collin's. Finally, class counsel is highly experienced and competent to represent the members' individual and collective interests.

116.    Class counsel is not aware of any other pending litigation on the same issue.  *See* Fed. R. Civ. P. 23(b)(3)(B).

117.    It is desirable to concentrate this litigation in the District of New Mexico because the lawsuit concerns the constitutionality of New Mexico Supreme Court Rules and the implementation of the Arnold Tool, all of the operative events take place in New Mexico, and any relevant evidence is likely to be found in New Mexico.  *See* Fed. R. Civ. P. 23(b)(3)(C).

118.    Class litigation would be manageable. The Class is not so large as to be unwieldy, common questions predominate over individual issues, the Class is geographically concentrated, and aggregation will not present any difficulties related to notice.  *See* Fed. R. Civ. P. 23(b)(3)(D).

## COUNT ONE VIOLATION OF RIGHT TO BAIL
### (Eighth and Fourteenth Amendments)

119.    Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-108.

120.    The Eighth Amendment provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

121.    The Supreme Court has held that the Eighth Amendment protection against excessive bail applies to the States. *See McDonald v. City of Chicago, Ill.,* 561 U.S. 742, 763 (2010).

122.    The Eighth Amendment's protection against "excessive bail" has always been understood to refer to monetary bail. *See, e.g.*, *Salerno*, 481 U.S. at 754 ("bail must be set by a court *at a sum* designed to ensure" statutory objective) (emphasis added); *Stack*, 342 U.S. at 5 (describing bail as a "bond or the *deposit of a sum of money* subject to forfeiture") (emphasis added).

123.    The Eighth Amendment protection against pre-trial deprivation of liberty through "[e]xcessive bail" necessarily implies the option of bail to avoid a pre-trial deprivation of liberty in the first place, just as the Sixth Amendment right to a speedy trial implies the option of a trial. Otherwise, the prohibition on excessive bail could be rendered superfluous by denying bail in all cases.

124.    The only way to give meaning to the Eighth Amendment protection against excessive bail is to recognize the logically antecedent "right to bail before trial." *Stack*, 342 U.S. at 4; *see United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926) (Butler, Circuit J.) (Eighth Amendment "implies, and therefore safeguards, the right to give bail"); *Sistrunk*, 646 F.3d at 70 n.23 ("The constitutional right to be free from excessive bail thus shades into a protection against a denial of bail.").

125.    In other words, the Eighth Amendment "bail clause should be interpreted to protect and ratify the … right to bail as a fundamental principle of American criminal jurisprudence."

Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 354.

126.     Although a court may deny bail when no amount of money will reasonably assure the defendant's presence at trial or when releasing the defendant would endanger the community, the Eighth Amendment requires that the option of bail remain available before a defendant is deprived of pre-trial liberty outside such "carefully limited exception[s]." *Salerno*, 481 U.S. at 753-55.

127.     The Supreme Court Rules and the implementation of the Arnold Tool violate the Eighth Amendment by permitting judges to consider secured bond only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required."

128.     Moreover, because the permissible "conditions of release" that courts must consider before offering monetary bail include extremely restrictive conditions like electronic monitoring and home detention, the law not only subordinates secured bond to other conditions (which are not constitutionally protected), but effectively takes secured bonds off the table as an option entirely.

129.     By imposing substantial deprivations of pre-trial liberty on Plaintiff Collins and other presumptively innocent defendants without offering the option of non-excessive bail to assure their appearance at arraignment and trial, Defendants violate Plaintiffs' Eighth Amendment rights.

130.     Defendants' violation of Plaintiffs' Eighth Amendment rights has caused them substantial damages.

## COUNT TWO DEPRIVATION OF LIBERTY WITHOUT DUE PROCESS OF LAW
### (Fourteenth Amendment)

131.     Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-120.

132.     The Fourteenth Amendment Due Process Clause provides that no State shall

"deprive any person of life, liberty, or property, without due process of law."

133.    The Due Process Clause's protection of "liberty" has "always … been thought to encompass freedom from bodily restraint and punishment." *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977).

134.    The protection against bodily restraint includes not only freedom from "government custody, detention, or other forms of physical restraint," *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001), but also "the right to move freely about one's neighborhood or town," *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990); s*ee also* 1 William Blackstone, *Commentaries* *134 ("personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law").

135.    The Due Process Clause's protection of liberty applies to criminal defendants awaiting trial, who "remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc).

136.    Under the Due Process Claus, "liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755.

137.    As a "general rule," therefore, "the government may not detain a person prior to a judgment of guilt in a criminal trial." *Id.* at 749.

138.    By subjecting Plaintiff Collins and other presumptively innocent criminal defendants to denial of pre-arraignment release, restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty - "freedom from bodily restraint." *Ingraham*, 430 U.S. at 674.

139.    "Every confinement of the person is an imprisonment, whether it be in a common

prison or in a private house, … and when a man is lawfully in a house, it is imprisonment to prevent him from leaving the room in which he is." *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007) (quotation marks omitted).

140.    By imposing liberty-restricting conditions on Plaintiff Collins and other presumptively innocent criminal defendants without offering them the historically-required option of non-excessive monetary bail that would reasonably assure their appearance at arraignment and trial and protect the community, Defendants violate the procedural component of the Due Process Clause.

141.    Defendants also violate Plaintiffs' substantive rights under the Due Process Clause because the option of non-excessive bail for a bailable offense is "fundamental to *our* scheme of ordered liberty" and "deeply rooted in this Nation's history and tradition." *McDonald*, 561 U.S. at 767.

142.    The Supreme Court has held that bail is "basic to our system of law," *Schilb*, 404 U.S. at 365, and a "constitutional privilege" to which pre-trial defendants are "entitled," *United States v. Barber*, 140 U.S. 164, 167 (1891).

143.    The Supreme Court has equated the "traditional right to freedom before conviction" with the "right to bail before trial." *Stack*, 342 U.S. at 4.

144.    The Third Circuit has similarly held that "bail constitutes a fundament of liberty underpinning our criminal proceedings" that "has been regarded as elemental to the American system of jurisprudence." *Sistrunk*, 646 F.2d at 70.

145.    Likewise, bail is deeply rooted in this Nation's history and tradition. The right to bail predates the Constitution, having been recognized in the Massachusetts Body of Liberties in 1641 and other fundamental documents of the Founding Era; having been protected by federal law

since the Northwest Ordinance of 1787 and the Judiciary Act of 1789; and having been protected in the overwhelming majority of state constitutions.

146.     The right to bail enjoys a historical pedigree that is as well-established - if not more so - than other rights protected by the Due Process Clause. For example, when the Fourteenth Amendment was ratified in 1868, 22 of 37 state constitutions included the right to keep and bear arms that the Supreme Court found protected by the Due Process Clause in *McDonald*, 561 U.S. at 777. An even greater number - 29 state constitutions - protected a right to bail. *See* Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev. 909, 934-35 (2013).

147.     In sum, if a defendant's right to be free from restrictions on his liberty without first being offered the option of non-excessive monetary bail is not directly protected by the Eighth Amendment, it must be protected by the Due Process Clause of the Fourteenth Amendment.

148.     Defendants' violation of Plaintiffs' rights under the Due Process Clause has caused them substantial damages.

### COUNT THREE UNREASONABLE SEARCH AND SEIZURE
### (Fourth and Fourteenth Amendments)

149.     Plaintiffs hereby re-allege and incorporate by reference the allegations in paragraphs 1-138.

150.     The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

151.     The Fourth Amendment applies against the States through the Fourteenth Amendment. *See, e.g.*, *Camara v. Mun. Ct. of City & Cty. of S.F.*, 387 U.S. 523, 528 (1967).

152.     Subjecting a person to a GPS-tracking electronic monitor constitutes a Fourth Amendment "search." *Grady*, 135 S. Ct. at 1369.

153.    Likewise, pre-trial release conditions such as home detention and mandatory reporting to pre-trial services constitute a Fourth Amendment "seizure." *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (a "meaningful interference, however brief, with an individual's freedom of movement" is a seizure).

154.    A criminal defendant who has been released before trial "does not lose his or her Fourth Amendment right to be free of unreasonable" searches and seizures. *United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006).

155.    Moreover, a defendant's consent to Fourth Amendment searches or seizures as a condition of release does not immunize the restrictions from constitutional scrutiny. *Id.* at 866.

156.    The reasonableness of a Fourth Amendment search or seizure is determined "by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Wyoming v. Houghton*, 526 U.S. 295, 300 (1999).

157.    The intrusion on Plaintiff's privacy is particularly severe because it reaches into her home, where her interest in privacy is "at its zenith." *Scott*, 450 F.3d at 871; *see United States v. Karo*, 468 U.S. 705, 714 (1984).

158.    On the other side of the balance, Defendants cannot show that intrusive electronic monitoring of the kind imposed on Plaintiffs in New Mexico is "*needed* for the promotion of" their "legitimate governmental interest[]" in securing a defendants appearance at trial when Supreme Court Rules prohibited consideration of a less restrictive mechanism that has been used to promote precisely that governmental interest for almost the entire history of Anglo-American law: monetary bail. *Houghton*, 526 U.S. at 300 (emphasis added).

159.    It is particularly unreasonable to prohibit consideration of monetary bail to fulfill

the state's legitimate governmental interest when monetary bail is *protected by the Constitution*.

160.    Defendants' search and seizure violates the Fourth Amendment.

161.    Defendants' violation of Plaintiffs' Fourth Amendment rights has caused them substantial damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that this Court:

A.    Enter judgment in their favor;

B.    Certify a class as described above, pursuant to Plaintiff Collins's forthcoming class certification motion;

C.    Declare that the Supreme Court Rules and the implementation of the Arnold Tool violate the Eighth Amendment right of Plaintiff Collins and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at arraignment and trial before being subjected to severe restrictions of their pre-trial liberty;

D.    Declare that the Supreme Court Rules and the implementation of the Arnold Tool violate the procedural and substantive due process rights of Plaintiff Collins and other presumptively innocent criminal defendants to the option of non-excessive monetary bail that will reasonably assure their appearance at arraignment and trial before being subjected to severe restrictions of their pre-trial liberty;

E.    Declare that the Supreme Court Rules and the implementation of the Arnold tool violate the Fourth Amendment rights of Plaintiff Collins and other presumptively innocent criminal defendants to be free from unreasonable searches and seizures;

F.    Declare that the Supreme Court Rules violate the New Mexico Constitution's Art. III, § 1 separation of powers by infringing upon the authority of the New Mexico Legislature to

pass laws preserving the public peace;

G.     Enter a preliminary injunction preventing Defendants and their inferior courts from enforcing the provisions of the Supreme Court Rules or implementing the Arnold Tool that allows them to impose severe restrictions on the pre-trial liberty of Plaintiff Collins and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail or a secured bond that will reasonably assure their appearance at arraignment or trial;

H.     Enter a permanent injunction preventing Defendants and their inferior courts from enforcing the provisions of the Supreme Court Rules or implementing the Arnold Tool that allow them to impose severe restrictions on the pre-trial liberty of Plaintiff Collins and other presumptively innocent criminal defendants without offering the option of non-excessive monetary bail that will reasonably assure their appearance at arraignment or trial;

I.     Award Plaintiffs damages to compensate for the injuries they have suffered as a result of Defendants' unconstitutional conduct;

J.     Award Plaintiffs the costs of their suit, including attorney fees and costs, pursuant to 42 U.S.C. §1988;

K.     Grant any other and further relief that the Court deems just and proper.

Respectfully submitted this 3rd day of July 2017.

> **WESTERN AGRICULTURE, RESOURCE**
> **AND BUSINESS ADVOCATES, LLP**
> */s/ A. Blair Dunn*
> A. Blair Dunn, Esq.
> abdunn@ablairdunn-esq.com
>
> */s/ Dori E. Richards*
> Dori E. Richards, Esq.
> dorierichards@gmail.com

400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060

**PRESTON LAW OFFICES**

*/s/ Ethan Preston*
Ethan Preston, Esq.
ep@eplaw.us
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340

*Attorneys for Plaintiffs*

33