## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

_____

| | |
|---|---|
| **DARLENE COLLINS, individually and** | ) |
| **on behalf of all others similarly situated;** | ) |
| **BAIL BOND ASSOCIATION** | ) |
| **OF NEW MEXICO;** | ) |
| **SENATOR RICHARD MARTINEZ;** | ) |
| **SENATOR BILL SHARER;** | ) |
| **SENATOR CRAIG BRANDT;** | ) |
| **REPRESENTATIVE BILL REHM; and** | ) |
| **REPRESNTATIVE CARL TRUJILLO;** | ) |
| *Plaintiffs*, | ) |
| | ) |
| **v.** | )    **Case No. 1:17-cv-00776** |
| | ) |
| **CHARLES W. DANIEL,** | ) |
| **Individually and in His Official Capacity;** | ) |
| **EDWARD L. CHAVEZ,** | ) |
| **Individually and in His Official Capacity;** | ) |
| **PETRA JIMENEZ MAEZ,** | ) |
| **Individually and in Her Official Capacity;** | ) |
| **BARBARA J. VIGIL;** | ) |
| **Individually and in Her Official Capacity;** | ) |
| **JUDITH K. NAKAMURA,** | ) |
| **Individually and in Her Official Capacity;** | ) |
| **THE NEW MEXICO SUPREME COURT;** | ) |
| **NAN NASH,** | ) |
| **Individually and in Her Official Capacity;** | ) |
| **JAMES NOEL,** | ) |
| **Individually and in His Official Capacity;** | ) |
| **THE SECOND JUDICIAL DISTRICT COURT;** | ) |
| **HENRYA. ALAINZ,** | ) |
| **Individually and in His Official Capacity;** | ) |
| **ROBERT L. PADILLA,** | ) |
| **Individually and in His Official Capacity;** | ) |
| **BERNALILLO COUNTY METROPOLITAN** | ) |
| **COURT; JULIE MORGAS BACA,** | ) |
| **Individually and in Her Official Capacity; and** | ) |
| **BERNALILLO COUNTY;** | ) |
| *Defendants*. | ) |
| | ) |

## PLAINTIFFS' *CORRECTED* MOTION AND BRIEF IN SUPPORT FOR A PRELIMINARY INJUNCTION

TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 3

BACKGROUND ................................................................................................. 6

    A.  The History and Purpose of Bail Protects the Premise of Innocence ................... 6

    B.  The New Mexico Supreme Court Rule and the "Tool". ...................................... 10

    C.  Application of the Challenged Law. ................................................................. 14

LEGAL STANDARDS FOR PRELIMINARY INJUNCTION .................................................. 17

ARGUMENT ..................................................................................................... 18

    I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS. ................................. 18

    A.  The Law Violates Plaintiffs' Eighth Amendment Right to
       Pre-Trial Liberty by Non-Excessive Monetary Bail. ......................................... 22

    B.  The New Mexico Supreme Court Rule Violates Plaintiffs'
       Due Process Rights. ...................................................................................... 26

        1.  The Law Violates Plaintiffs' Procedural Due Process Rights. ...................... 27

        2.  The Law Violates Plaintiffs' Substantive Due Process Rights ...................... 28

    C.  The New Mexico Supreme Court Rule Violates Plaintiffs' Fourth
       Amendment Rights. ...................................................................................... 31

    D.  The New Mexico Supreme Court Rule Violates the Mandate of
       Separation of Powers ..................................................................................... 33

    II.   PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT
       INJUNCTIVE RELIEF ................................................................................. 37

    III.  THE BALANCE OF EQUITIES FAVORS PLAINTIFFS ........................................ 39

    IV.  INJUNCTIVE RELIEF SERVES THE PUBLIC INTEREST ..................................... 40

    CONCLUSION ................................................................................................. 40

TABLE OF AUTHORITIES

**Cases**

*ACLU of Illinois v. Alvarez,* 679 F.3d 583, 589 (7th Cir.2012),.....................................17

*Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1194 (D.N.M. 2010)....................................................................................................................18, 19

*Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003),....................................40

*Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999)(............................40

*Baker v. McCollan*, 443 U.S. 137, 147 (1979) .............................................................22

*Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,* 562 F.3d 1067, 1070–71 (10th Cir.2009). .............................................................................................................18

*Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986..............19

*Bradley v. Fisher*, 80 U.S. (13 Wall.) .........................................................................37

*Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014);.......................17

*Carlson v. Landon*, 342 U.S. 524, 545-46 (1952). ............................................9, 23, 25

*Chalamidas v. Environmental Improvement Div. (In re Proposed Revocation of Food and Drink Purveyor's Permit),* 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984) ....................................35

*Cobb v. Aytch*, 643 F.2d 946, 958 n.7 (3d Cir. 1981).........................................8, 24, 30

*Coffin v. United States*, 156 U.S. 432, 453 (1895). ..........................................20, 29-30

*Collins v. Harker Heights,*503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); ..19

*Coulter Unknown Prob. Officer*, 562 F. App'x 87, 90 (3d Cir. 2014...........................................27

*Dias v. City & County of Denver,* 567 F.3d 1169, 1181 (10th Cir.2009)....................................19

*Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011.......................................................38

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981)............................................22

*Free Enter. Fund v. PCAOB*, 561 U.S. 477, 505 (2010)..............................................................26

*Gregory v.  Ashcroft*, 501 U.S. 452, 459 (1991)...........................................................................34

*Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) .........................................38, 39

*Grady v. North Carolina*, 135 S. Ct. 1368, 1369 (2015).........................................32

*Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013),...........17

*Hudson v. Parker*, 1895, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424 ...........3

*Hunt v. Roth,* 648 F.2d 1148, 1156 (8th Cir.1981), .........................................7, 9, 23, 25

*Ingraham v. Wright*, 430 U.S. 651, 673-74  (1977);.......................................37

*Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). .....................18

*Jones v. Murdoch, et al.*, 200 P.3d 523, 532 (NM 2009),....................................35

*Kelsey v. Fitzgerald*, 574 F.2d 443, 444 (8th Cir. 1978). .................................37

*Kitchen v. Herbert*, 755 F.3d 1193, 1208–09 (10th Cir. 2014)..........................18, 19

*Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990); ...............................27, 28, 29

*Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009) ...............................38

*Marbury v. Madison*, 5 U.S. 137, 174 (1803);...........................................23

*Mathews v. Eldridge*, 424 U.S. 319, 334 (1976...........................................28

*McClain v. Brown*, 587 F.2d 389, 390 (8th Cir. 1978);...................................10, 37

*McDonald v. City of Chicago*, 561 U.S. 742, 764 n.12 (2010);..... 22*Medina v. California*, 505 U.S.
437, 446 (1992) ...........................................................................22, 29-31

*Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983); ...............................7-8

*New Jersey Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388-89
 (3d Cir. 2012);...........................................................................39, 40

*Old Abe Co. v. New Mexico Mining Commission*, 908 P.2d 776, 787 (1995)...............36

*Perry Educ. Ass'n v. Perry Local Educ. Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948,
74 L.Ed.2d 794 (1983);...................................................................19, 23

*Planned Parenthood v. Casey,* 505 U.S. 833, 846–47, 112 S.Ct. 2791,
120 L.Ed.2d 674 (1992) ..................................................................18

*Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) ...............................20, 27

*Rainbo Baking Co. v. Commissioner of Revenue,* 84 N.M. 303, 306, 502 P.2d 406, 409
(Ct.App.1972)...........................................................................................................35

*Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ...................................19

*Schilb v. Kuebel*, 404 U.S. 357, 365 (1971). .........................................................................22, 29

*Sistrunk v. Lyons*, 646 F.2d 64, 68 (3d Cir. 1981). .............................................. 7-9, 22, 23, 26, 30

*Smith v. Miller*, 384 P.2d 738, 741 (Colo. 1963 ........................................................................34

*Stack v. Boyle*, 342 U.S. 1, 4; 72 S.Ct. 1 (1951). ......................... 3, 7, 8, 20, 22, 24, 26, 28-30, 38

*State ex rel. Capitol Addition Bldg. Comm'n v. Connelly,* 39 N.M. 312, 321,
46 P.2d 1097, 1102 (1935)..........................................................................................35

*State ex rel. Clark v. Johnson*, 120 N.M. 562, 904 P.2d 11 (1995 ...........................................2, 36

*State ex rel. State Park & Recreation Comm'n v. New Mexico State Authority,* 76 N.M. 1, 13,
411 P.2d 984, 993 (1966)............................................................................................35

*State ex. Rel. Taylor v. Johnson*, 961 P.2d 768, 775-6 (NM 1998). ............................................35

*State of New Mexico v. The Hon. Gary Johnson*, 904 P.2d at 19 ........................................... 34-36

*State v. Brown*, 2014-NMSC-038, 338 P.3d 1276................................................................10, 37

*State v. Mairs*, 1 N.J.L. 335, 336 (1795). ................................................................................30

*Stump v. Sparkman*, 435 U.S. 349, 355-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); ...................37

*TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 471 (1993) .....................................................23

*United States v. Feely*, 25 F. Cas. 1055, 1057 (C.C.D. Va. 1813). ...................................................7

*United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) ...........................................................32

*United States v. Jones*, 565 U.S. 400, 404 (2012) ................................................................32, 33

*United States v. Melendez-Carrion*, 790 F.2d 984, 1000 (2d Cir. 1986),.......................................20

*United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985)....................................................25

*United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926) .......................................................3, 23

*United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986). ................................................. 23, 27-28

*United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010 ....................................27, 32

*United States v. Salerno*, 481 U.S. 739, 749 (1987). .........................................9, 19, 20, 23, 25, 26

*United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006)....................................................20, 32, 33

*United States ex rel. Goodman v. Kehl,* 456 F.2d 863, 868 (2d Cir. 1972 ....................................8

*Varney v. Albuquerque,* 40 N.M. 90, 94, 55 P.2d 40, 43 (1936)( ..................................................35

*Wallace v. Kato*, 549 U.S. 384, 388-89 (2007)...............................................................................27

*Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258,
138 L.Ed.2d 772 (1997);.....................................................................................................18, 29, 29

*Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017)...........................................................37

*Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). ................................................17

*Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). .......................................................................19, 27

## Statutes

N.M. Const. Art. II, § 13...........................................................................................10, 11, 33, 34

NMSA 1978 § Ch. 31, art. 3 ...............................................................................................10

## Other Authorities

1 William Blackstone, *Commentaries* ...............................................................................7, 25, 27

11A Wright & Miller, Federal Practice & Procedure §2948.1 (West 3d ed. 2017). ....................37

Akhil Reed Amar, *Sixth Amendment First Principles*, 84 Geo. L.J. 641, 664-65 (1996)..............33

*Criminal Justice Reform Statistics: January 2017- March 2017*, Chart A,
http://bit.ly/2q68u9Y.................................................................................................................14

Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev.
909, 920-27 (2013)..................................................................................................................30

*New Mexico Alters its Bail System and Upends Legal Landscape*, N.Y. Times (Feb. 6, 2017),
http://nyti.ms/2llmeMR. .........................................................................................................14

Nicole Hong & Shibani Mahtani, *Cash Bail, a Cornerstone of the Criminal-Justice System, Is
Under Threat*, Wall St. J. (May 22, 2017), ...........................................................................15

*The Coming Constitutional Crisis in Bail*, 113 U. Pa. L. Rev. 959, 975....................................8, 24

Donald B. Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82
    Colum. L. Rev. 328, 329 (1982) ...............................................................7, 8, 24, 30

Pursuant to Federal Rule of Civil Procedure, Rule 65, Plaintiff Darlene Collins, on behalf of herself and others similarly situated, and Plaintiff Bail Bonds Association of New Mexico ("BBANM"), Plaintiff Senators Richard Martinez, Bill Sharer and Craig Brandt, and Plaintiff Representatives Bill Rehm and Carl Trujillo (collectively, Plaintiffs), bring this action against Defendants Charles Daniels, Edward Chavez, Petra Maez, Barbara Vigil, Judith Nakamura and the New Mexico Supreme Court (collectively, Defendants) and move for a preliminary injunction enjoining the unconstitutional provisions of the New Mexico Supreme Court Rule regarding pretrial release and detention in criminal proceedings, adopted pursuant to Supreme Court Order No. 17-8300-005 and effective on July 1, 2017 (Supreme Court Rule). Despite state statutory law regarding the availability of bail found at NMSA 1978 § 31-3-1 *et. seq.*, the Supreme Court, solely by its own rule-making, sought to and did modify statutory law without legislative authority, approval or action.

The Supreme Court Rule is contrary to and in contravention of the Eighth Amendment, the Due Process Clause, and the Fourth Amendment to the United States Constitution as well as Art. 2 Section 13 of the New Mexico Constitution by subjecting presumptively innocent criminal defendants to severe restrictions of pre-trial liberties—including home detention and 24-hour electronic monitoring through an ankle bracelet—without providing them the constitutionally-protected option of bail. Moreover, the actions of the Defendants violate the mandate of separation of powers provided for in the Federal and State constitutions as it impermissibly treads into the purview of the legislature and ultimately the citizenry to pass laws or constitutional changes. The actions of Defendants essentially re-write the New Mexico Constitution and change legislation without the benefit debate and consideration required when changing law and impacting individual rights. For similar reasons, over twenty years ago

Governor Johnson was held to be in violation of principles of separation of powers when he entered into gaming compacts without the approval of the Legislature. *See State ex rel. Clark v. Johnson*, 120 N.M. 562, 904 P.2d 11 (1995)("The Governor may not exercise power that as a matter of state constitutional law infringes on the power properly belonging to the legislature. We have no doubt that the compact [ ] does not execute existing New Mexico statutory or case law, but that it is instead an attempt to create new law."). Engaging in an action that drastically alters the Constitutional and statutory rights of citizens under the guise of Court Rules goes beyond the authority of the judicial branch, and requires legislative action.

In addition, Plaintiffs seek an injunction preventing the practical application of New Mexico Supreme Court Rule, or similar policy and action, by the Second Judicial District Court, Bernalillo County Metropolitan Court and Bernalillo County (collectively referred to as the Bernalillo Stakeholders) that violates the Plaintiff's constitutional rights, through the use of the Public Safety Assessment court-based pretrial risk assessment tool (Tool) developed by the Laura and John Arnold Foundation (Foundation). Currently, in denying pre-trial defendants of the option of monetary security to appear at trial be posting bonds, in favor of the curtailment or elimination of liberty rights, the Bernalillo Stakeholders have entered into a Memorandum of Agreement with the Foundation to use the Tool developed by it.  The Tool does not provide for the consideration of attendance security by posting bond, however, unless no mix of non-monetary, liberty resting restrictions would provide for likely attendance at trial.

The need for injunctive relief is urgent. Every day that a person is subject to restriction on liberty rights, home detention and a severely restrictive ankle bracelet, he/she suffers an irreparable constitutional injury that neither the state nor the public has an interest in inflicting. Many other criminal defendants in New Mexico, including potential clients of bonding entities

making up the Bail Bonds Association of New Mexico ("BBANM"), suffer the same irreparable harm caused by the New Mexico Supreme Court Rule and application of the Foundation "Tool."

Plaintiffs ask this Court to enter a preliminary injunction enjoining the application of the Supreme Court Rule and application of the Tool by the Bernalillo Stakeholders that prohibits bond issuance in favor of curtailing constitutional rights and pre-trial liberties of criminal defendants in New Mexico without offering the option of monetary bail. Given the severe, immediate injury that is ongoing daily and the significant constitutional questions presented, Plaintiffs respectfully request expedited briefing and argument.

## INTRODUCTION

Since the 1700's federal law has "unequivocally provided that a person arrested for a non-capital offense shall be admitted to bail." This right to freedom before conviction affords one with the unhampered preparation of a defense and prevents the infliction of punishment prior to conviction. *See Hudson v. Parker*, 1895, 156 U.S. 277, 285, 15 S.Ct. 450, 453, 39 L.Ed. 424. The right preserves the hard-fought presumption of a party's innocence, which would otherwise lose meaning without the right to bail, while also upholding society's interest in ensuring that defendants answer the charges against them. *Stack v. Boyle*, 342 U.S. 1, 4; 72 S.Ct. 1 (1951).

The modern practice of requiring a bail bond subject to forfeiture serves as an assurance that the accused will attend trial, just as the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused. And, the Eighth Amendment serves as a check on the judiciary preventing bail set at an amount higher than reasonably calculated to guarantee the accused's attendance. *See Stack v. Boyle*, 342 U.S. 1, 4–5, 72 S. Ct. 1, 3, 96 L. Ed. 3 (1951); *United States v. Motlow*, 10 F.2d 657 (1926, opinion by Mr. Justice Butler as Circuit Justice of the Seventh Circuit).

Here in New Mexico, the Supreme Court, acting ultra vires of its authority and usurping the role of the legislature, took action to alter centuries of consistent practice by – for all intents and purposes – abolishing the bond issuance as security for trial attendance effective July 1, 2017. Under the Supreme Court Rule, a court in New Mexico may release a defendant on bail only if no combination of non-monetary conditions - including the severe deprivations of liberty like home detention and 24-hour electronic monitoring through an ankle bracelet - would reasonably ensure the defendant's appearance at trial.  Supreme Court Order No. 17-8300-005. The result is a system that mandates severe restrictions on the pre-trial liberty of the accused where no such restrictions existed under the law, even when the accused could post sufficient bail to ensure his appearance at trial and does not endanger the community.

Plaintiff Collin's case is illustrative. Plaintiff was arrested July 1, 2017, for aggravated assault, based on her alleged role in a domestic disturbance. Ms. Collins is handicapped, suffering mobility limitations incurred after being in a collision caused by a drunk driver. She takes prescribed medications for psychological issues and for blood pressure issues. Ms. Collins has both a supportive family, and a residence in the community, and her family was willing to pay a non-excessive amount of bail for secured bond to assure her future appearance for arraignment and trial, to provide for her immediate release and to ensure that her medical needs were met. Under the new Supreme Court Rule, however, neither the jailhouse nor the Court was permitted to provide or offer Ms. Collins that normal and traditional option. Instead of allowing for the secured bond to facilitate pre-arraignment release, the Court was required to go down the long and slippery slope, considering whether non-financial conditions or unsecured monetary conditions would assure her appearance before considering a secured bond, which also would have required a written opinion before proceeding. This process took 5 days –

during which Ms. Collins remained incarcerated, without needed physical assistance for her disabled condition, without needed prescribed medications for psychological and physical conditions, causing her condition to deteriorate. The Court eventually determined that the non-financial conditions of not returning to Ms. Collins home would sufficiently secure the community upon her release on her own recognizance; and that pretrial service could determine any other conditions to secure her return. While she was ultimately released without additional conditions, Plaintiff Collins was denied the option of posting a secured bond so that she could return to her home quickly. The effects of this will be lasting both on Ms. Collins and the community – as family members concerned with whether a member will be released to return home for employment, education or parental needs will be less and less likely to seek police assistance if incarceration is possible.

Only one other state[1] has ever imposed such severe restrictions on the liberty of the accused without offering the option of bail.  This is so because multiple provisions of the federal Constitution forbid substantial deprivations of pre-trial liberty without even the option of bail. First, the Eighth Amendment's prohibition of "[e]xcessive bail" implicitly prohibits states from depriving defendants of pre-trial liberty without offering the option of bail. Second, imposing severe restrictions on the liberty of presumptively innocent defendants without offering the historically- rooted option of bail violates the Due Process Clause, just as imposing such restrictions on any other presumptively innocent member of society would. Finally, subjecting the merely accused to home detention and intrusive electronic monitoring violates the Fourth Amendment protection against unreasonable searches and seizures when imposed without

---

[1] New Jersey passed a similar statute, but contrary to New Mexico, such was approved after debate by the legislature, not simply by a rule of the Court.  And, that statute is currently challenged in the Federal District Court of New Jersey, as to its constitutionality.

considering the liberty and privacy-preserving alternative of monetary bail.

To be clear, Plaintiffs do not claim an absolute right to bail. They accept that states may deny bail for certain serious offenses, such as capital crimes, and that courts may set bail at non-excessive" amounts that some defendants may not be able to afford. Stated differently, there is no constitutional right to *affordable* bail. A state is certainly free to offer defendants a choice between monetary bail and non-monetary conditions of release. But what states may not do, and until now have not done, is impose severe restrictions on the pre-trial liberty - which includes the lengthy delay seen in Ms. Collins' instance before those restrictions were even fully vetted - of presumptively innocent defendants who do not endanger the community *without offering them the option of monetary bail* sufficient to reasonably ensure their appearance in court.

New Mexico's Supreme Court Rule -- purportedly having the effect of law -- embodies just that unprecedented and verboten deprivation, and thus Plaintiffs are highly likely to prevail on the merits of their case. The need for emergency injunctive relief could hardly be clearer than when a governmental action challenges the very foundation of our liberties. Every day that a person is detained in New Mexico, is denied pre-arraignment bail and/or is detained in their home with liberty restrictions including but not limited to a bracelet around their ankle, they suffer any injury that cannot be repaired. Plaintiffs' only avenue for meaningful relief is a preliminary injunction to prevent the further application of this unconstitutional Supreme Court Rule.

## BACKGROUND

### A.    The History and Purpose of Bail Protects the Premise of Innocence.

Since the Middle Ages, bail has been "the answer of the Anglo-American system of criminal justice to a vexing question: what is to be done with the accused, whose guilt has not

been proven, in the 'dubious interval' … between arrest and final adjudication." Donald B.

Verrilli, Jr., *The Eighth Amendment and the Right to Bail: Historical Perspectives*, 82 Colum. L.

Rev. 328, 329 (1982) (quoting 4 W. Blackstone, Commentaries *300).  The mechanics of bail

are straightforward. An accused defendant must "deposit … a sum of money subject to

forfeiture" if he fails to appear for trial.  *Stack*, 342 U.S. at 5. The amount of the deposit is fixed

by a court and must not be "excessive" - that is, it must not be "higher than … reasonably

calculated" to ensure the defendant's appearance at trial. *Id.* If the defendant posts the required

deposit, she re-gains the same liberties as all other presumptively innocent citizens while she

awaits her day in court. This is the essence of the presumption of innocence.

Bail is thus the mechanism to ensure the "traditional right to freedom" guaranteed by the

Constitution, while also providing a sufficient incentive for a defendant to answer the charges

brought against her. *Id.* at 4; *see id.* at 8 (Jackson, J., concurring) (describing bail as "a calculated

risk which the law takes as the price of our system of justice"). By "conditioning release on the

offer of financial security," monetary bail "seeks to reconcile the defendant's interest in, and

society's commitment to, pretrial liberty with the need to assure the defendant's presence at

trial." *Sistrunk v. Lyons*, 646 F.2d 64, 68 (3d Cir. 1981). In the words of Chief Justice John

Marshall, bail exists "not to enrich the treasury, but to combine the administration of criminal

justice with the convenience of a person accused, but not proved to be guilty." *United States v.*

*Feely*, 25 F. Cas. 1055, 1057 (C.C.D. Va. 1813). Thus, the Eighth Amendment's excessive bail

provision is found to be "integral to our concept of ordered liberty and therefore binding upon

the states under the Fourteenth Amendment. *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th

Cir. 1983); *citing Hunt v. Roth,* 648 F.2d 1148, 1156 (8th Cir.1981), *vacated as moot,* 455 U.S.

478, 102 S.Ct 1181, 71 L.Ed.2d 353 (1982); *Sistrunk v. Lyons,* 646 F.2d 64, 71 (3d Cir. 1981);

*United States ex rel. Goodman v. Kehl,* 456 F.2d 863, 868 (2d Cir. 1972).

A pretrial detainee's "traditional right to freedom before conviction permits the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction." *Stack v. Boyle,* 342 U.S. 1, 4, 72 S.Ct. 1, 3, 96 L.Ed. 3 (1951). The right to bail is "a fundament of liberty underpinning our criminal proceedings" and an essential guardian of the presumption of innocence, *Meechaicum v. Fountain,* 696 F.2d at 791. Citing *Sistrunk,* 646 F.2d at 70; *Stack,* 342 U.S. at 4, 72 S.Ct. at 3.

Few aspects of criminal law have deeper roots than bail. The defining documents of English liberty—the Magna Carta of 1215, the Statute of Westminster of 1275, the Petition of Right of 1628, the Habeas Corpus Act of 1679, and the English Bill of Rights of 1688—all recognize a defendant's right to pre-trial liberty through bail. *See Cobb v. Aytch*, 643 F.2d 946, 958 n.7 (3d Cir. 1981) (en banc). And bail "was a carefully guarded right" guaranteeing pre-trial liberty in early America. *Sistrunk*, 646 F.2d at 68. Colonial constitutions, the Northwest Ordinance of 1787, the Judiciary Act of 1789, and the vast majority of state constitutions throughout American history have protected a right to bail by sufficient sureties. *Cobb*, 643 F.2d at 958 n.7; Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 351. Both the Massachusetts[2] and Virginia bills of rights prohibited excessive bail. Virginia Bill of Rights s 9 (1776) ("excessive bail ought not to be required"), reprinted in Documents of Am. History at 104; Massachusetts Bill of Rights art. XXVI (1780) ("no magistrate or court of law shall demand excessive bail or

---

[2] The Massachusetts provision may indeed trace its roots to the 1641 Massachusetts Body of Liberties, section 18, which provided in part:

> no mans person shall be restrained or imprisoned by any Authority what so ever, before the law hath sentenced him thereto, If he can put in sufficient securities, bayle, or mainprise, for his appearance, and good behavior in the meane time ...

Massachusetts Body of Liberties s 18 (1641), *quoted* in Foote, The Coming Constitutional Crisis in Bail, 113 U.Pa.L.Rev. at 975 (1965).

sureties"), reprinted in Documents of Am. History at 109. These provisions in early state bills of rights precurse the intent of the framers of the Bill of Rights.

The Eighth Amendment, ratified by the People as part of the Bill of Rights, outlaws "[e]xcessive bail," necessarily presuming the availability of bail in the first instance. *See Hunt v. Roth*, 648 F.2d 1148, 1157 (8th Cir. 1981), *vacated on other grounds*, 455 U.S. 478 (1982).

The right to bail is not without limitation as courts may deny bail to individual defendants if no amount of money will ensure their appearance at trial (*Sistrunk*, 646 F.2d at 68) and some defendants may not be able to pay even a constitutionally permissible bail.[3]  Legislatures are empowered to define categories of non-bailable offenses or other "special circumstances" in which detention without bail may be permitted because defendants are especially likely to flee or are a danger to the community. *United States v. Salerno*, 481 U.S. 739, 749 (1987). For instance, Congress authorized pre-trial detention without the option of bail for defendants shown by clear and convincing evidence to pose a danger to the community, in the Bail Reform Act of 1984. *Id.* at 741; *see also Carlson v. Landon*, 342 U.S. 524, 545-46 (1952).Liberty, however, "is the norm, and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. The presumptively innocent defendant's right to obtain pre-trial liberty bail by paying non-excessive bail reasonably calculated to ensure his appearance at trial for a bailable offense is a fundamental right, and one that can – and should – only be curtailed by the People, not merely by a court rule passed in secret behind their backs.  Such is abhorrent to a government of the people, by the people, for the people." Pres. Abraham Lincoln, Gettysburg

---

[3] Courts have consistently held that "bail is not excessive merely because the defendant is unable to pay it." *Hodgdon v. United States*, 365 F.2d 679, 687 (8th Cir. 1966); *accord, e.g.*, *United States v. McConnell*, 842 F.2d 105, 107 (5th Cir. 1988), *United States v. James*, 674 F.2d 886, 891 (11th Cir. 1982), *United States v. Beaman*, 631 F.2d 85, 86 (6th Cir. 1980), *United States v. Wright*, 483 F.2d 1068, 1070 (4th Cir. 1973), *White v. Wilson*, 399 F.2d 596, 598 (9th Cir. 1968).

Address, (Nov. 19, 1863).

**B.      The New Mexico Supreme Court Rule and the "Tool."**

The provision of non-excessive bail is a long-established right in New Mexico and provided for in the New Mexico Constitution's Bill of Rights. This provision states that, "[a]ll persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses when the proof is evident or the presumption great and in situations in which bail is specifically prohibited by this section. Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted. N.M. Const. Art. II, § 13. Bail in New Mexico was historically a matter of law providing for the preservation of the public peace, health or safety delegated to the New Mexico Legislature which was acted upon by the New Mexico Legislature in the passage of law found at NMSA 1978 § Ch. 31, art. 3.

In 2016, following the New Mexico Supreme Court's decision in *State v. Brown*, 2014-NMSC-038, 338 P.3d 1276, Justice Daniels -- the author of the *Brown* opinion -- petitioned the Legislature for a change in the law regarding bail in New Mexico.  His petition (the Rule he later championed before his own bench) was rejected by the representatives of the state citizenry – the New Mexico legislature. Instead, Justice Daniels quest for change resulted in a compromise bill, SJR 1, which was ratified by public vote in November of 2016.

On November 8, 2016, following the passage of 2016 Senate Joint Resolution 1, the voters of New Mexico voted to amend the New Mexico Constitution by removing some of the existing to Art. II language and adding the language as recommended by SJR 1:

> Bail may be denied by a court of record pending trial for a defendant charged with a felony if the prosecuting authority requests a hearing and proves by clear and convincing evidence that no release conditions will reasonably protect the safety of any other person or the community. An appeal from an order denying bail shall be given preference over all other matters.

> A person who is not detainable on grounds of dangerousness nor a flight risk in the absence of bond and is otherwise eligible for bail shall not be detained solely because of financial inability to post a money or property bond. A defendant who is neither a danger nor a flight risk and who has a financial inability to post a money or property bond may file a motion with the court requesting relief from the requirement to post bond. The court shall rule on the motion in an expedited manner.

N.M. Const. art. II, § 13. Thus, the citizens of New Mexico unequivocally voiced their views on the continued importance of pre-trial liberties for its citizens as balanced by the needs/safety of the community in passing this constitutional amendment. The New Mexico voters by the adoption of the State constitutional amendment sent the undeniable signal to the New Mexico Legislature (as well as the executive branch and judiciary) concerning their views on the public policy in New Mexico concerning bail.

The sweeping modification to the New Mexico Constitution as it relates to issuance of bail championed by Justice Daniels was squarely rejected by the citizens of New Mexico. Ignoring the will of the people and following the adoption of the Art. II amendments by the voters in November 2016, the New Mexico Supreme Court (Justice Daniels) then convened an *ad hoc* committee for the adoption of modified rules concerning bail in New Mexico. The result of the *ad hoc* committee was the recommendation of the sweeping bail reforms sought but denied to Justice Daniels by the New Mexico Legislature and the popular vote.  On June 5, 2017, presumably under the auspices of the New Mexico Supreme Courts constitutional authority of superintending control over the inferior courts of New Mexico, the New Mexico Supreme Court usurped the powers of the New Mexico Legislature to pass a sweeping public policy reform not as law, but merely through unchecked rulemaking. Thus, the New Mexico Supreme Court ignored the Legislature, ignored the people's will demonstrated by their vote, and did exactly as Justice Daniels desired.  *See*, the resultant changes to the Rules of Criminal

Procedure for the Districts Courts, specifically the redline changes to NMRA 5-401 (EXHIBIT

B, to the Complaint)

The New Mexico Supreme Court Rule creates a hierarchy and effectively prohibits the

lower courts from considering secured bonds without placing untenable work requirements on

the lower court judges. Such effectively removes from consideration by judges the option for

bonding and *de facto* extinguishment of bonds as an option for pre-arraignment release.

Specifically, the new rules as adopted contained the following language:

> Pending trial, any defendant eligible for pretrial release under Article II, Section
> 13 of the New Mexico Constitution, shall be ordered released pending trial on
> the defendant's personal recognizance or upon the execution of an unsecured
> appearance bond in an amount set by the court, unless the court makes written
> findings of particularized reasons why the release will not reasonably ensure the
> appearance of the defendant as required. The court may impose non- monetary
> conditions of release under Paragraph D of this rule, but the court shall impose
> the least restrictive condition or combination of conditions that will reasonably
> ensure the appearance of the defendant as required and the safety of any other
> person or the community.
> …
> In determining the least restrictive conditions of release that will reasonably ensure
> the appearance of the defendant as required and the safety of any other person and
> the community, the court shall consider any available results of a pretrial risk
> assessment instrument approved by the Supreme Court for use in the jurisdiction,
> if any, and the financial resources of the defendant.

The New Mexico Supreme Court Rule thus only permits the lower courts to consider the

posting of secured bonds "[i]f the court makes findings of the reasons why release on personal

recognizance or unsecured appearance bond, in addition to any non-monetary conditions of

release, will not reasonably ensure the appearance of the defendant as required, the court may

require a secured bond for the defendant's release." The New Mexico Supreme Court Rule then

requires the already overworked lower court judges to write and file written opinions containing

individualized facts justifying the secured bond in each and every instance a bond is posted.

The Supreme Court actions effectively ensure that no defendant could elect or be offered the

alternative to post a secured bond in lieu of suffering infringement or denial of their liberties before trial.

The Bernalillo Stakeholders began applying the New Mexico Supreme Court Rule months before it was even to go into effect, by agreeing to and pledging their "Fidelity to the Tool" which includes a "prohibition of scoring or categorization overrides by pretrial services entities." Ex. 1, Memorandum of Understanding, sec. II.  The "Tool" per the MOU is required to be used and applied to all "misdemeanor and felony charges" and its use commenced in the Metropolitan Court to be rolled out throughout "Bernalillo County." Id. at p. 2.  Moreover, in using the Tool, the Bernalillo Stakeholders agreed to not disclose the parameters used to calculate "risk scores" *i.e.* the underlying bases, reasons and breadth of curtailed liberty interests for a pre-trial defendant." This would, of course, violate the right of the accused to argue for reduced restrictions (or bond if it would continue as an option), as well as violating State disclosure laws such as the Inspection of Public Records Act.  *See* Ex. 1, Section III, para. 6 at p. 5.

The New Mexico Supreme Court Rules change the landscape of the State's criminal justice system, replacing a system that guaranteed a monetary bail determination to all defendants, except those in certain capital cases, with a system that authorizes pre-trial detention and the imposition of severely restrictive conditions impacting persons' fundamental rights, including electronic monitoring, home detention, drug and alcohol prohibition, and travel limitations without any opportunity to instead post non-excessive secured bond. Thus, the New Mexico Supreme Court has acted to replace a system that long guaranteed defendants' pre-trial liberty with a preference for constitutional liberty-restricting conditions. The Bernalillo Stakeholders have implemented the New Mexico Supreme Court Rule, by using a private Tool,

with unknown parameters (ostensibly none of which provides for application of bail unless no set of liberty restrictions would guarantee a defendant's presence at trial) and have waived their discretion to override the Tool.

## C.   Application of the Challenged Law

The NM Supreme Court Rule purports to do what the Legislature would not. The New Mexico Supreme Court Rule took effect July 1, 2017, and are similar if not largely identical to the Criminal Justice Reform Act that was adopted by New Jersey's legislature as New Jersey's new pre-trial release and detention procedures which took effect January 1, 2017. Because the New Mexico Supreme Court Rule is nearly identical to New Jersey's new law, and because Supreme Court Rules are so recently adopted such that no reliable accounting or collection of data has yet been completed, it is appropriate to consider New Jersey statistics as to the impacts to its citizenry in forecasting the impacts to New Mexico.

According to the  state's preliminary statistics, in the first three months of 2017, New Jersey courts granted 1,262 pre-trial detention  motions  from  prosecutors - a  procedural mechanism that  did  not  exist  before  the new law. N.J. Courts, *Criminal Justice Reform Statistics: January 2017- March 2017*, Chart A, http://bit.ly/2q68u9Y. More than 7,500 individuals were released subject to non-monetary conditions, including 1,286 who were released subject to severe conditions including home detention and electronic monitoring. *Id.* Although New Jersey appears not to have issued official statistics on  the number of defendants released on bail, one newspaper reported that of "the 3,382 cases statewide that were processed in the first four weeks of January, judges set bail only three times." Lisa W. Foderaro, *New Jersey Alters its Bail System and Upends Legal Landscape*, N.Y. Times (Feb. 6, 2017), http://nyti.ms/2llmeMR. Put differently, while bail remains a theoretical option, "the reality is that judges have nearly

done away with it," thus eliminating the vast majority of business for bail sureties like Plaintiff Bail Bond Association of New Mexico. *Id.*; *see* Madrid Decl. ¶9; *see also* Nicole Hong & Shibani Mahtani, *Cash Bail, a Cornerstone of the Criminal-Justice System, Is Under Threat*, Wall St. J. (May 22, 2017), http://on.wsj.com/2qHz5hb  (describing New Jersey's devastating impact on bail industry).

One who has felt the brunt of impact from the New Mexico Supreme Court Rule has been Plaintiff Collins. On July 1, 2017, at approximately 7:00 pm, this retired member of the community was arrested for aggravated assault arising out of a domestic dispute and transported to the Metro Detention Center in Albuquerque, NM. Although Collins has a supportive family, and no prior criminal record, she was not considered for bail and detained.

Normally, under the system of jailhouse bonds and secured bonds that existed for a century in New Mexico before July 1, 2017, the jailhouse could have set a reasonable, non-excessive monetary bail to ensure Plaintiff Collin's appearance at arraignment and then for trial. She then would have been free to live her life and prepare her defense, having access to the prescribed medications which help keep her disabilities manageable. Her family was prepared to use their own financial resources with the assistance of a member of Plaintiff BBANM to pay the required amount for pre-arraignment release, but due to the new Supreme Court Rules the jailhouse was barred from setting a secured bond.

Under the New Mexico Supreme Rule after July 1, 2017, Plaintiff Collin's case unfolded very differently. New Mexico courts could not consider releasing Plaintiff Collins on monetary bail without first finding that no combination of non-monetary conditions (including home detention and electronic monitoring) would reasonably ensure her appearance at arraignment and had a short 2-day period to write such a decision (as she would not see a judge until arraignment

she could not therefore be release pre-arraignment.)  Such draconian conditions would, generally

of course, reasonably ensure Plaintiff Collin's appearance at trial. But under the court's rule, it

had 2-days to consider the matter. Plaintiff Collin thus had no legal mechanism available to seek

pre-arraignment release on bail. The days that Plaintiff Collins was incarcerated caused her

medical and psychological conditions to deteriorate requiring medical intervention.

Plaintiff Collins suffers from a handicap from a previous accident caused by a drunk

driver, a mental condition requiring medication, and a medical condition requiring medication.

She was denied access to necessary medications as a result of her incarceration, ultimately

resulting in her care in the jail's infirmary, Lovelace Hospital and UNM Hospital at tax-payer

expense. This hospitalization is as a direct result of the denial of the Court for her family to post

bail to secure her freedom, and her incarceration for nearly 5 full days. Upon her release, after

the 5 days, Plaintiff Collins was given a *verbal order* from the Court that she was not allowed to

return to her home. This pre-arraignment loss of liberty imposed upon Collins was severely

disruptive, causing her medical problems, raising the concern of post-traumatic stress disorder

given her existing medical impairment. The actions initiated solely due to the New Mexico

Supreme Court Rule – not even a law passed by the citizenry of New Mexico -- disrupted Ms.

Collins' family life and caused her daughters to fear for her life, and made her feel that her life

was in jeopardy.  Because of the New Mexico Supreme Court Rule, instead of having the option

to preserve her pre-trial liberty by posting monetary bail to secure her appearance at trial,

Plaintiff Collins' only way to avoid pre-trial detention was to accept banishment from her home.

That banishment comes after becoming extremely physically and mentally ill as a result of the

denial of pre-trial release provided for per bond issuance.

Currently the Foundation Tool appears to be applied (per the express terms of the MOU)

16

in every criminal case in Bernalillo County and its results – and those results alone – determine the full breadth of liberty rights curtailed or taken from a presumptively innocent pre-trial defendant.

## LEGAL STANDARDS FOR PRELIMINARY INJUNCTION

In considering a motion for a preliminary injunction, this Court weighs the standards identified in *Winter v Natural Res. Def. Council*, *Inc*. Thus, a plaintiff seeking a temporary restraining order or a preliminary injunction must establish that: (1) whether the movant is substantially likely to succeed on the merits; (2) whether the movant is likely to suffer irreparable harm in the absence of preliminary relief; (3) whether the balance of equities tips in favor of the movant; and (4) whether an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). The same standard applies to both temporary restraining orders and preliminary injunctions.

In a case involving constitutional rights, "the likelihood of success on the merits will often be the determinative factor." *Hobby Lobby Stores, Inc. v. Sebelius*, 723 F.3d 1114, 1145 (10th Cir. 2013), *aff'd sub nom. Burwell v. Hobby Lobby Stores, Inc.*, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014); *ACLU of Illinois v. Alvarez,* 679 F.3d 583, 589 (7th Cir.2012), *cert. denied,* ––– U.S. ––––, 133 S.Ct. 651, 184 L.Ed.2d 459 (2012). Such is the case because:

> • "the loss of [constitutional] freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury, *Heideman v. S. Salt Lake City,* 348 F.3d 1182, 1190 (10th Cir.2003) (internal quotation marks omitted);
> • "when [a] law ... is likely unconstitutional, the[ ] interests [of those the government represents, such as voters] do not outweigh [a plaintiff's interest] in having [its] constitutional rights protected," *Awad v. Ziriax,* 670 F.3d 1111, 1131–32 (10th Cir.2012); and
> • "it is always in the public interest to prevent the violation of a party's constitutional rights,"

*Id.* at 1132.

In assessing this crucial factor, courts "do not require that the right to a final decision after trial be wholly without doubt." *Issa v. Sch. Dist. of Lancaster*, 847 F.3d 121, 131 (3d Cir. 2017). Rather, a movant "need only show a reasonable probability of success" on the merits. *Id.* The preliminary injunction relief is intended to restrict the parties from altering the status quo until the merits of their disputes may be resolved. *Beltronics USA, Inc. v. Midwest Inventory Distrib., LLC,* 562 F.3d 1067, 1070–71 (10th Cir.2009). In the case of a constitutional challenge, the most significant prong reviewed the likelihood of the movant's success on the merits. *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1192–93 (D.N.M. 2010), *on reconsideration in part*, No. CIV 08-0702 JB/WDS, 2010 WL 3834049 (D.N.M. July 28, 2010).

"[A]ll fundamental rights comprised within the term liberty are protected by the Federal Constitution from invasion by the States." *Planned Parenthood v. Casey,* 505 U.S. 833, 846–47, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (quotation omitted). The doctrine of substantive due process extends protections to fundamental rights "in addition to the specific freedoms protected by the Bill of Rights." *Washington v. Glucksberg,* 521 U.S. 702, 720, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997); *see also Casey,* 505 U.S. at 848, 112 S.Ct. 2791 ("Neither the Bill of Rights nor the specific practices of States at the time of the adoption of the Fourteenth Amendment marks the outer limits of the substantive sphere of liberty which the Fourteenth Amendment protects."). To qualify as "fundamental," a right must be "objectively, deeply rooted in this Nation's history and tradition ... and implicit in the*1209 concept of ordered liberty, such that neither liberty nor justice would exist if [it] were sacrificed." *Glucksberg,* 521 U.S. at 720–21, 117 S.Ct. 2258(quotations omitted). *Kitchen v. Herbert*, 755 F.3d 1193, 1208–09 (10th Cir. 2014).

## ARGUMENT

**I.    PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS.**

The Due Process Clause serves to "forbid[] the government to infringe certain fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest."  *Kitchen v. Herbert*, 755 F.3d 1193, 1218 (10th Cir. 2014), *citing Reno v. Flores,* 507 U.S. 292, 302, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (quotation and emphasis omitted).[4]  A plaintiff succeeds on her constitutional claims unless defendants can show that their action survives strict scrutiny. *Kitchen v. Herbert*, 755 F.3d at 1218.

Under strict scrutiny, the State must assert a significant and compelling state interest, and the law must be narrowly tailored to serve that compelling state interest.  *Am. Ass'n of People with Disabilities v. Herrera*, 690 F. Supp. 2d 1183, 1194 (D.N.M. 2010), *on reconsideration in part*, No. CIV 08-0702 JB/WDS, 2010 WL 3834049 (D.N.M. July 28, 2010);  *Perry Educ. Ass'n v. Perry Local Educ. Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983); *Dias v. City & County of Denver,* 567 F.3d 1169, 1181 (10th Cir.2009) ("If a legislative enactment burdens a fundamental right, the infringement must be narrowly tailored to serve a compelling government interest.").

Plaintiffs have at least "a reasonable probability" - indeed, a strong likelihood - of success on the merits as this case turns on the most basic principles of constitutional law and fundamental rights.  There is no constitutional protection more basic than the right of ordinary, law-abiding citizens to be free of "government custody, detention, or other forms of physical restraint." *Zavydas v. Davis*, 533 U.S. 678, 690 (2001).  "In our society[,] liberty is the norm,

---

[4] *See*, *e.g., Collins v. Harker Heights,* 503 U.S. 115, 125, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992); *Salerno, supra,* 481 U.S., at 746, 107 S.Ct., at 2101; *Bowers v. Hardwick,* 478 U.S. 186, 191, 106 S.Ct. 2841, 2844, 92 L.Ed.2d 140 (1986).

and detention prior to trial or without trial is the carefully limited exception." *Salerno*, 481 U.S. at 755. Thus, New Mexico plainly could not impose home detention, electronic monitoring through an ankle bracelet, travel restrictions or similar deprivations of liberty on members of the general public—even if those conditions would promote compliance with the law. *See id.* at 749. Such "a police state" would clearly violate core constitutional protections. *United States v. Melendez-Carrion*, 790 F.2d 984, 1000 (2d Cir. 1986), *abrogated on other grounds by Salerno*, 481 U.S. 739.

It is equally "axiomatic and elementary" that a person who has been accused but is unconvicted of a crime -- is presumed to be innocent. *Coffin v. United States*, 156 U.S. 432, 453 (1895). Consequently, defendants pending trial "remain clothed with a presumption of innocence and with their constitutional guarantees intact." *Pugh v. Rainwater*, 572 F.2d 1053, 1056 (5th Cir. 1978) (en banc); *see United States v. Scott*, 450 F.3d 863, 868 (9th Cir. 2006). Bail is the mechanism that protects the well-established "right to freedom before conviction," while also protecting society's interest in ensuring a defendant answers charges brought. *Stack*, 342 U.S. at 4. A defendant released on bail generally faces no restrictions on his liberty, only obligated to appear for trial.

The New Mexico Supreme Court Rule departs drastically from a liberty-preserving paradigm. As described above, the law mandates that courts impose *any* [and all] *combination of non- monetary conditions* that will reasonably ensure the defendant's future appearance and protect the community *before considering monetary bail*. The available non-monetary conditions include severe deprivations of pre-trial liberty, including home detention, returning to custody in jail, curfews, and 24-hour electronic monitoring through an ankle bracelet. Practically, a full suite of restrictive conditions – even those not yet implemented or considered such as

surveillance or requiring an implanted tracking device -- will ensure the future appearance of any defendant who could also have her attendance ensured through monetary bail. Thus, the mandatory preference for non-monetary conditions, restriction of liberty and fundamental rights, over monetary bail means that defendants who could reasonably ensure their appearance at trial by posting bail - and who would then enjoy complete pre-trial liberty - are instead subjected to constitutional deprivations. Put differently, at least for non-dangerous defendants, the new Rule mandates a deprivation of liberty when no such deprivation is necessary to ensure appearance at trial. The method that Bernalillo Stakeholders have selected to effect the New Mexico Supreme Court Rule and deprive presumptively innocent pre-trial defendants of their liberty rights is the Foundation Tool, which provides no room for discretion and consideration of bail instead of such deprivations. Such regime has nothing to do with preventing the detention of indigent defendants, one of the alleged leading purposes of the law.

The New Mexico Supreme Court Rule's needless deprivation of liberty is unprecedented and unconstitutional. No mere rule (especially one adopted *ultra vires*) in the history of the United States has ever provided that a presumptively innocent defendant who can reasonably ensure his future appearance by posting bail may - let alone *must* - be subjected curtailment of civil liberties. Just as New Mexico would violate the Eighth Amendment by imposing the non-monetary condition of pre-trial detention on all non-dangerous defendants without offering the possibility of bail, it cannot constitutionally impose severe deprivations of liberty without offering the possibility of bail. Likewise, just as New Mexico would violate the Due Process Clause and the Fourth Amendment by restricting or removing the constitutional rights of presumptively innocent members of the general public, it cannot constitutionally impose such restrictions on presumptively innocent defendants without offering the historically-rooted and

constitutionally-enumerated option of bail. Plaintiffs are accordingly likely to succeed on all their constitutional claims.[5]

### A. The Law Violates Plaintiffs' Eighth Amendment Right to Pre-Trial Liberty by Non-Excessive Monetary Bail.

Anglo-American law has for centuries recognized monetary bail as the mechanism for preserving the "traditional right to freedom before conviction" *Stack,* 342 U.S. at 4. The Supreme Court has accordingly described bail as a "right" and a "constitutional privilege" that safeguards the pre-trial liberty of presumptively innocent criminal defendants who can deposit sufficient security to assure their appearance and do not endanger the community. *Id.* ("right to bail"); *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377 (1981) ("constitutional right"); *United States v. Barber*, 140 U.S. 164, 167 (1891) ("constitutional privilege"); *see also Baker v. McCollan*, 443 U.S. 137, 147 (1979) (Blackmun, J., concurring) ("right to bail" among other constitutional rights protected by the Bill of Rights).

The clearest source of this right is the Eighth Amendment, which protects against "[e]xcessive bail," along with "excessive fines" and "cruel and unusual punishments." U.S. Const. amend. VIII. The Supreme Court has repeatedly stated that the Bail Clause of the Eighth Amendment applies to the States. *See McDonald v. City of Chicago*, 561 U.S. 742, 764 n.12 (2010); *Baker*, 443 U.S. at 144 n.3; *Schilb v. Kuebel*, 404 U.S. 357, 365 (1971). The Third Circuit has expressly held as much, reasoning that "bail constitutes a fundament of liberty underpinning our criminal proceedings" that "has been regarded as elemental to the American system of jurisprudence." *Sistrunk*, 646 F.2d at 70. Moreover, both the Supreme Court and the Third Circuit

---

[5] In addition, as explained in the complaint and forthcoming class certification motion, the putative class is likely to be certified and succeed on the merits on those same grounds.

have explained that a state can violate the Bail Clause by restraining pre-trial liberty through either detention or "conditions of release." *Salerno*, 481 U.S. at 764; *United States v. Perry*, 788 F.2d 100, 112 (3d Cir. 1986).

The Eighth Amendment's prohibition of "[e]xcessive bail" presupposes a right to bail as an alternative to pre-trial deprivation of liberty for bailable offenses. Indeed, "[l]ogic defies any other resolution of the question." *Hunt*, 648 F.2d at 1157.

If the Eighth Amendment did not imply at least some underlying right to bail, a state could eliminate bail entirely without running afoul the Amendment. Under that "devitalizing interpretation," the "Eighth Amendment's ban on excessive bail means just about nothing." *Carlson*, 342 U.S. at 556 (Black, J., dissenting); *see id.* at 569 (Burton, J., dissenting).[6] That reading would violate first principles of constitutional interpretation. "It cannot be presumed that any clause in the constitution is intended to be without effect; and therefore, such a construction is inadmissible." *Marbury v. Madison*, 5 U.S. 137, 174 (1803); *cf. TXO Prod. Corp. v. All. Res. Corp.*, 509 U.S. 443, 471 (1993) (Scalia, J., concurring) (rejecting interpretation that would "make the Excessive Fines Clause of the Eighth Amendment superfluous").

The only logical interpretation, then, is that the Eighth Amendment "implies, and therefore safeguards, the right to give bail" before depriving a presumptively innocent defendant of pre-trial liberty. *United States v. Motlow*, 10 F.2d 657, 659 (7th Cir. 1926) (Butler, Circuit J.). Indeed, the Third Circuit in its most extensive discussion of the Bail Clause recognized that the "constitutional right to be free from excessive bail … shades into a protection against a denial of bail." *Sistrunk*, 646 F.3d at 70 n.23; *see also Hunt*, 648 F.2d at 1157 ("if the eighth amendment

---

[6]The majority opinion in *Carlson* addressed only an asserted right to bail by immigrants in deportation proceedings and, as the Third Circuit has recognized, does not control the scope of the right to bail for presumptively innocent defendants in criminal cases. *See Perry*, 788 F.2d at 111.

has any meaning beyond sheer rhetoric, the constitutional prohibition against excessive bail necessarily implies that unreasonable denial of bail is likewise prohibited"). Just as a state could not evade the Sixth Amendment's protection of a speedy trial by eliminating the right to trial or the Fifth Amendment right to just compensation for a taking of private property by providing no compensation, it cannot evade the Eighth Amendment protection against excessive bail by offering no bail.

The history of bail underscores this commonsense reading of the Eighth Amendment. As explained above, the Excessive Bail Clause was adopted against a backdrop in which the right to bail itself was deeply ingrained, having been protected in the fundamental documents of English liberty. *See Cobb*, 643 F.2d at 958 n.7. The right was just as firmly established in early America. The Massachusetts Body of Liberties of 1641, the Pennsylvania Frame of Government of 1682, the North Carolina Constitution of 1776, the Northwest Ordinance of 1787, and fundamental laws in Delaware and New York all protected the right to bail for all but certain capital defendants. *See id.*; Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 337 & n.50; Caleb Foote, *The Coming Constitutional Crisis in Bail*, 113 U. Pa. L. Rev. 959, 975 (1965). Moreover, the First Congress proposed the Eighth Amendment to the States for ratification *on the same day* that it passed the Judiciary Act of 1789, which mandated a right to bail for non-capital defendants. *See Stack*, 342 U.S. at 4; *Cobb*, 643 F.2d at 958 n.7; Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 338; Foote, *Crisis in Bail*, 113 U. Pa. L. Rev. at 975-77. In short, the Eighth Amendment protection against excessive bail was adopted with a background understanding of an antecedent right to bail as a means to secure pre-trial liberty.

As noted above, right to bail historically protected by the Eighth Amendment is not absolute, and Plaintiffs here do not suggest otherwise. Courts may deny bail to individual

defendants if no amount of money will ensure their appearance at trial, and some defendants may not be able to afford bail in a constitutionally permitted non-excessive amount. *See Hunt*, 648 F.2d at 1158. Likewise, legislatures can define categories of crimes as non-bailable or identify other "special circumstances" in which detention without bail may be permitted because defendants are especially likely to flee or endanger the community. *See Salerno*, 481 U.S. at 752-55; *Carlson*, 342 U.S. at 545-46. Indeed, the historical justification for denying bail in capital cases was that a defendant facing the death penalty would be overwhelmingly likely to flee to save his life. *See Hunt*, 648 F.2d at 1160; 4 W. Blackstone, Commentaries *294 ("For what is there that a man may not be induced to forfeit, to save his own life?"). But those exceptions are "carefully limited." *Salerno*, 481 U.S. at 755; *see United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985) (Kennedy, J.) ("Only in rare circumstances should release be denied."). The Eighth Amendment otherwise ensures a presumptively innocent defendant the option of bail before his pre-trial liberty is restrained.

The New Mexico Supreme Court Rule plainly violates that right. Under the law—and accompanying court rules and administrative directive—a court is legally barred from offering presumptively innocent criminal defendants the option of bail before severely restraining their pre-trial liberty through mechanisms like home detention and electronic monitoring. As Plaintiff Collins's case illustrates, a defendant who wants to post bail, who can post bail, and who would be reasonably assured to appear at trial if released on bail *must still* be subjected to these restrictive conditions (or pre-trial detention in jail) if they would reasonably assure his appearance at trial. Hundreds of other presumptively innocent criminal defendants, including those served by Plaintiff Bail Bonds Association of New Mexico, are similarly affected. *See* Madrid Decl. ¶8 and ¶9. And none of this remotely advances the state's purported objective of

reducing the detention of indigent defendants.

There is no historical basis whatsoever for the New Mexico Supreme Court's and Bernalillo Stakeholder's approach. That "lack of historical precedent" is a "telling indication of the severe constitutional problem" and Plaintiffs' likelihood of success on the merits. *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 505 (2010). Unlike the Bail Reform Act provisions upheld in *Salerno*, New Mexico Supreme Court Rule does not impose severe restrictions on the pre-trial liberty of only the most dangerous defendants, determined by clear and convincing evidence to threaten the community. *Salerno* 481 U.S. at 741. To the contrary, New Mexico Supreme Court Rule imposes severe restrictions of the pre-trial liberty on *all* defendants except those who can be released on their own recognizance, including defendants who could reasonably secure their future appearance-and the corresponding "right to freedom before conviction"-through monetary bail if only they were given that option. *Stack*, 342 U.S. at 4. The New Mexico Supreme Court Rule runs directly into admonitions that the Bail Clause "must be carefully guarded so as to prevent diminution of its protection by statutory elimination of the right to bail for various offenses." *Sistrunk*, 646 F.2d at 68. Just as New Mexico could not deny bail by imposing pre-trial detention on all criminal defendants, it cannot deny bail in all cases by other severe restrictions of pre-trial liberty. Plaintiffs' Eighth Amendment claim is likely to succeed.

**B.      The New Mexico Supreme Court Rule Violates Plaintiffs' Due Process Rights.**

Separate and apart from the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment (in both its procedural and substantive dimensions) protects Plaintiff Collins and other presumptively innocent criminal defendants-including those served by Plaintiff Bail Bonds Association of New Mexico - against restrictions of her pre-trial liberty without the option of non-excessive bail. New Mexico Supreme Court Rule plainly eliminates that right. Plaintiffs' due process claims are accordingly likely to succeed.

26

**1.  The Law Violates Plaintiffs' Procedural Due Process Rights.**

The Due Process Clause's protection of "liberty" has "always … been thought to encompass freedom from bodily restraint." *Ingraham v. Wright*, 430 U.S. 651, 673-74 (1977); *see Perry*, 788 F.2d at 112 ("liberty" includes "[f]reedom from constraint"). The protection against bodily restraint includes not only freedom from "government custody, detention, or other forms of physical restraint," *Zadvydas*, 533 U.S. at 690, but also "the right to move freely about one's neighborhood or town," *Lutz v. City of York*, 899 F.2d 255, 268 (3d Cir. 1990); *see Perry*, 788 F.2d at 112 ("freedom of movement"); *see also* 1 William Blackstone, *Commentaries* \*134 ("personal liberty consists in the power of locomotion, of changing situation, or moving one's person to whatsoever place one's own inclination may direct, without imprisonment or restraint, unless by due course of law").

The Due Process Clause's protection of liberty applies to criminal defendants awaiting trial, *see Pugh*, 572 F.2d at 1056, and is plainly implicated by New Mexico Supreme Court Rule. Home detention squarely restricts a defendant's constitutionally protected liberty, as "[e]very confinement of the person is an imprisonment, whether it be in a common prison or in a private house." *Wallace v. Kato*, 549 U.S. 384, 388-89 (2007). Likewise, the "[r]equired wearing of an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal would be considered a serious limitation on freedom by most liberty-loving Americans." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (E.D.N.Y. 2010). Indeed, the Third Circuit has expressly observed that being "subjected to electronic monitoring" may "implicate due process concerns." *Coulter Unknown Prob. Officer*, 562 F. App'x 87, 90 (3d Cir. 2014). Many of the other restrictions authorized by New Mexico Supreme Court Rule-from compliance with a curfew, to spending part of the day in jail, to a

27

physical reporting requirement-also implicate constitutionally protected liberty. *See Lutz*, 899 F.2d at 268; *Perry*, 788 F.2d at 112. By imposing these liberty-restricting conditions on Plaintiff Collins and other presumptively innocent criminal defendants without offering them the historically- required option of non-excessive monetary bail, New Mexico violates Plaintiffs' right to procedural due process. "Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976). More specifically, due process requires balancing the liberty interest at stake-here, the "traditional right to freedom before conviction" (*Stack*, 342 U.S. at 4) against "the risk of an erroneous deprivation … through the procedures used" and "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail" (*Mathews*, 424 U.S. at 335).

Although that balancing may be complicated in some circumstances, it is straightforward here. New Mexico Supreme Court Rule completely eliminates the right of presumptively innocent criminal defendants to pre-trial liberty without any consideration of the historically protected option of release on monetary bail as does the application of the Foundation Tool. *See Medina v. California*, 505 U.S. 437, 446 (1992) ("Historical practice is probative of whether a procedural rule can be characterized as fundamental" for purposes of procedural due process). Moreover, allowing consideration of bail at the detention hearing would add no fiscal or administrative burden to the government. And Plaintiffs' proposed alternative of a bail determination would save the state time and money compared to pretrial supervision, especially through expensive technology like ankle bracelets.

### 2. The Law Violates Plaintiffs' Substantive Due Process Rights.

For similar reasons, the New Mexico Supreme Court Rule violates Plaintiffs' substantive rights under the Due Process Clause. A right is protected by the substantive component of the

Due Process Clause if it is "fundamental to [our] scheme of ordered liberty" *or* "deeply rooted in this Nation's history and tradition." *McDonald*, 561 U.S. at 767; *see Washington v. Glucksberg*, 521 U.S. 702, 721 (1997); *Lutz*, 899 F.2d at 267-68. Although a right need only meet one of those standards to receive constitutional protection, the right asserted by Plaintiffs-the option of posting monetary bail sufficient to ensure their future appearance before being subjected to severe deprivations of pre-trial liberty-satisfies both prongs of the inquiry.

First, a defendant's right to bail as an option before being subjected to severe deprivations of pre-trial liberty is "fundamental to [our] scheme of ordered liberty." *McDonald*, 561 U.S. at 767. As explained above, bail is the mechanism employed for centuries by our legal system to preserve the "axiomatic and elementary" presumption that a person accused but unconvicted of a crime is innocent until proven guilty. *Coffin*, 156 U.S. at 453. Bail preserves that fundamental principle by ensuring "freedom before conviction"-the same full range of freedom enjoyed by all other presumptively innocent members of society-for defendants who can reasonably ensure their future court appearances and do not endanger the community. *Stack*, 342 U.S. at 4. Ensuring a presumptively innocent defendant's pre-trial liberty is not only valuable in its own right, but directly relevant to the fair functioning of the criminal justice system. Without the full range of pre-trial freedom provided by bail, presumptively innocent defendants are "handicapped in consulting counsel, searching for evidence and witnesses, and preparing a defense." *Id.* at 8 (Jackson, J., concurring). Bail is thus "a calculated risk which the law takes as *the price of our system of justice*." *Id.* (emphasis added).

The Supreme Court has accordingly recognized the fundamental place of bail, describing it as "basic to our system of law," *Schilb*, 404 U.S. at 365, and a "constitutional privilege" to which pre-trial defendants are "entitled," *Barber*, 140 U.S. at 167. The Third Circuit has similarly held

that "bail constitutes a fundament of liberty underpinning our criminal proceedings" that "has been regarded as elemental to the American system of jurisprudence." *Sistrunk*, 646 F.2d at 70; *see* Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 329 (right to bail is "a fundamental principle of American criminal jurisprudence").  Of particular relevance here, the Supreme Court has directly connected bail to preserving the presumption of innocence that all agree is fundamental to our scheme of ordered liberty, *see Coffin*, 156 U.S. at 453, explaining that "[u]nless th[e] right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning," *Stack*, 342 U.S. at 4.

Bail is also "deeply rooted in this Nation's history and tradition." *McDonald*, 561 U.S. at 767. Indeed, few aspects of our criminal justice system have deeper roots, with the right to bail dating back to "the struggle to implement the Magna Carta's 39th chapter which promised due process safeguards for all arrests and detentions." *Sistrunk*, 646 F.2d at 68. As explained above, the right to bail reflects the same "deep-rooted commitment to freedom before conviction" in this country. *Id.* The right to bail was recognized in the Massachusetts Body of Liberties in 1641 and other fundamental documents of the Founding Era-including in New Mexico. *See id.* at 69; *State v. Mairs*, 1 N.J.L. 335, 336 (1795). The right to bail has been "unequivocally" protected by federal law since the Northwest Ordinance of 1787 and the Judiciary Act of 1789. *Stack*, 342 U.S. at 4. And, of critical importance here, the overwhelming consensus of States-including all but two to join the Union after its Founding-is that pre-trial defendants have a right to bail. *See Cobb*, 643 F.2d at 958 n.7; Verrilli, *Right to Bail*, 82 Colum. L. Rev. at 337, 351; Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L.  Rev. 909, 920-27 (2013). If the right to bail as an alternative to deprivations of pre-trial liberty does not qualify as "deeply rooted in this Nation's history and tradition," *McDonald*, 561 U.S. at 767, it is difficult

to imagine what would.

The New Mexico Supreme Court Rule plainly violates the deeply rooted and fundamental due process right to bail as an alternative to deprivations of pre-trial liberty. The Foundation's Tool is the Bernalillo Stakeholder's implementation of that rule and its deprivations. Indeed, as explained above, the law expressly forbids a court from offering bail— and thereby allowing defendants to secure their pre-trial liberty—unless the court first finds that conditions that severely diminish pre-trial liberty, such as home detention and electronic monitoring through an ankle bracelet, would not reasonably ensure the defendant's future appearance. The New Mexico Supreme Court Rule thus replaces the liberty-preserving option of bail with liberty-restricting conditions of release. That approach runs counter to centuries of tradition and undermines the fundamental purposes of bail. Unlike bail, which vindicates the presumption of innocence by providing the accused with the same liberty as other presumptively innocent members of society, New Mexico Supreme Court Rule subjects the accused to severe restrictions of liberty that could never be imposed on members of the general public—and that sharply limit the ability to the accused to prepare a defense. New Mexico Supreme Court Rule is thus incompatible with deeply-rooted principles of liberty that remain fundamental to our system of law. Plaintiffs are accordingly likely to succeed on their substantive due process claim.

**C.    The New Mexico Supreme Court Rule Violates Plaintiffs' Fourth Amendment Rights.**

The New Mexico Supreme Court Rule violates the Fourth Amendment right of Plaintiff Collins and other presumptively innocent criminal defendants—including those served by Plaintiff Bail Bond Association of New Mexico—to be free from "unreasonable searches and seizures." Just as a presumptively innocent criminal defendant does not lose his constitutional right to freedom of movement, a defendant who has been released before trial "does not lose his

or her Fourth Amendment right to be free of unreasonable" searches and seizures. *United States v. Scott*, 450 F.3d 863, 868 (2006). A defendant's consent to Fourth Amendment searches or seizures as a condition of release does not immunize those restrictions from constitutional scrutiny. *Id.* at 866.

There can be no real dispute that non-monetary restrictions on Plaintiff and others situated as she, constitutes a seizure. *Grady v. North Carolina*, 135 S. Ct. 1368, 1369 (2015) (ankle bracelet is a search); *United States v. Jones*, 565 U.S. 400, 404 (2012) (attaching GPS tracker to vehicle is a Fourth Amendment search); *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984) (a "meaningful interference, however brief, with an individual's freedom of movement" is a Fourth Amendment seizure). The only question is whether the search and seizure are reasonable.

The conditions imposed on the accused Class Plaintiffs are not based on reasonable suspicion or probable cause that she will commit a crime. There is no "special needs" doctrine applied to her nor others generally denied bail in lieu of personal rights restrictions as a result of the New Mexico Supreme Court Rule. *See Scott*, 450 F.3d at 868. Here, the degree to which the New Mexico Supreme Court Rule results in a search and seizure, is severe. As one Judge explained, wearing "an electronic bracelet, every minute of every day, with the government capable of tracking a person not yet convicted as if he were a feral animal" can only "be considered a serious limitation on freedom." *United States v. Polouizzi*, 697 F. Supp. 2d 381, 389 (2010). Such devices disclose a massive amount of private information about a person and their lives to the state. "GPS monitoring generates a precise, comprehensive record of a person's public movements that reflects a wealth of detail about her familial, political, professional, religious, and sexual associations." *Jones*, 565 U.S. at 415 (Sotomayor, J., concurring). The intrusion is

particularly severe when it reaches into ones' home, where privacy is "at its zenith." *Scott*, 450

F.3d at 871; *see United States v. Karo*, 468 U.S. 705, 714 (1984).

While a state, such as New Mexico may have a "legitimate governmental interest[]" in

securing a Plaintiff's appearance at trial (*Houghton*, 526 U.S.at 300), in this instance the state

did not pass the subject law, nor has the legislature or citizenry endorsed the New Mexico

Supreme Court Rule. There is thus no legitimate governmental interest here to protect.

Moreover, the Supreme Court Justices cannot, given the lack of state action, possibly show that

intrusive electronic monitoring of the kind imposed is "*needed* for the promotion of" that

interest when the when it alone prohibits courts from considering the mechanism that Anglo-

American law has used to promote that interest for most of the past millennium. *Id.* at 300

(emphasis added). It is especially unreasonable to prohibit consideration of monetary bail to

fulfill that interest when monetary bail is *expressly protected by the Constitution*. "[S]urely a

[search or] seizure of a person that violates another provision of the Constitution … must be

viewed as constitutionally unreasonable within the meaning of the Fourth Amendment."  Akhil

Reed Amar, *Sixth Amendment First Principles*, 84 Geo. L.J. 641, 664-65 (1996). Plaintiffs are

accordingly likely to succeed on the merits of their Fourth Amendment challenge.

> **D.    The New Mexico Supreme Court Rule Violates the Mandate of Separation of Powers.**

Finally, Plaintiffs are likely to win on the merits given that the New Mexico Supreme

Court Rule goes beyond housekeeping and Court management, violating the mandate of the

separation of powers provided for in the state and federal constitutions. The New Mexico

Constitution, Art. III, sec. 1, provides:

> The powers of the government of this state are divided into three distinct
> departments, the legislative, executive and judicial, and *no person or collection
> of persons charged with the exercise of powers properly belonging to one of*

> *these departments, shall exercise any powers properly belonging to either of the others*, except as in this constitution otherwise directed or permitted. Nothing in this section, or elsewhere in this constitution, shall prevent the legislature from establishing, by statute, a body with statewide jurisdiction other than the courts of this state for the determination of rights and liabilities between persons when those rights and liabilities arise from transactions or occurrences involving personal injury sustained in the course of employment by an employee. The statute shall provide for the type an organization of the body, the mode of appointment or election of its member and such other matters as the legislature may deem necessary or proper. (Adopted by the people November 4,1986.)

This provision vests state legislative power in "a senate and house of representatives which shall be designated by the legislature of the state of New Mexico, and shall hold its sessions at the seat of government." *Id.* With the powers of the State government being vested in three distinct departments - legislative, executive and judicial - "no person or collection of persons charged with the exercise of powers properly belonging to one of these departments, shall exercise any powers properly belonging to either of the others." *State of New Mexico v. The Hon. Gary Johnson*, 904 P.2d 11, 22 (July 13, 1995). This doctrine, the separation of powers, flows from the recognition that the accumulation of too much power in one governmental entity presents a threat to liberty. *See generally*, *Gregory v. Ashcroft*, 501 U.S. 452, 459 (1991). While an absolute separation of powers may not be completely realistic, Art. III, sec. 1 must be accorded its intended effect, which is to ensure that another branch of government does not unduly "interfere with or encroach on the authority or within the province" of the other governmental branches. *See Smith v. Miller*, 384 P.2d 738, 741 (Colo. 1963).

Article III, sec. 1 mandates that the Legislature creates law, while the judiciary interprets such laws based on the intent of the People, through the Legislature. "Deeply rooted in American Jurisprudence is the doctrine that state constitutions are not grants of power to the legislative, to the executive and to the judiciary, but are limitations on the powers of each."

*State of New Mexico v. The Hon. Gary Johnson*, 904 P.2d at 19. In this regard, the New

Mexico Constitution, Article II, Section 14 does not expressly limit the Legislature's power to

legislate to [ ] enumerated items." *Jones v. Murdoch, et al.*, 200 P.3d 523, 532 (NM 2009),

*citing Varney v. Albuquerque,* 40 N.M. 90, 94, 55 P.2d 40, 43 (1936)(recognizing that "when

an act of the Legislature is assailed, the court looks to the state Constitution only to ascertain

whether any limitations have been imposed upon such power") (internal quotation marks and

citation omitted); *cf. State ex rel. Capitol Addition Bldg. Comm'n v. Connelly,* 39 N.M. 312,

321, 46 P.2d 1097, 1102 (1935) (ruling that "the enumeration of subjects of taxation contained

in article 8, § 2, as originally adopted, was merely confirmatory of the Legislature's inherent

power to tax, and not a limitation thereon").

　　　Contrary to the broad powers committed to the legislature, the Executive branch[7] and

Judicial powers are limited. It is the Legislature, not the Executive or Judicial branches, that

declare the policies of the state and establishes primary standards and governing laws. *See*

*State ex rel. State Park & Recreation Comm'n v. New Mexico State Authority,* 76 N.M. 1, 13,

411 P.2d 984, 993 (1966).  either the Executive branch or Judicial branch's discretion justify

altering, modifying or extending the reach of a law created by the Legislature. *See, e.g.,*

*Chalamidas v. Environmental Improvement Div. (In re Proposed Revocation of Food and*

*Drink Purveyor's Permit),* 102 N.M. 63, 66, 691 P.2d 64, 67 (Ct.App.1984) (stating that an

"agency cannot amend or enlarge its authority through rules and regulations"); *Rainbo Baking*

*Co. v. Commissioner of Revenue,* 84 N.M. 303, 306, 502 P.2d 406, 409 (Ct.App.1972).

　　　Thus, the powers inured to each branch are not only limited, but functionally identifiable.

---

[7] "A governor's proper role is the execution of the laws." New Mexico Const. Art. V, sec. 4. In the administration of authorized programs, Executive branch discretion is not boundless. *State ex. Rel. Taylor v. Johnson*, 961 P.2d 768, 775-6 (NM 1998).

*Old Abe Co. v. New Mexico Mining Commission*, 908 P.2d 776, 787 (1995) (Article III provides for the division of government into three distinct branches, the legislative, executive, and judicial branches, each responsible for performing a different function. The separation of powers provision of Article III, Section 1, generally bars one branch of government from performing a function reserved for another branch of government. *Citing State ex rel. Clark v. Johnson,* 904 P.2d 11, 22 (1995)).

Infringement upon legislative power occurs when one of the other branches do not give effect to "existing New Mexico statutory or case law [and rather attempts] to create new law." *State ex rel. Clark,* 120 N.M. at 573, 904 P.2d at 22. In this instance, the Judiciary's action in issuing the Supreme Court Rule "disrupts the proper balance" between the branches of government. *See generally State ex rel. Clark,* 904 P.2d at 23.

"[I]n determining whether the Act disrupts the proper balance between the coordinate branches, the proper inquiry focuses on the extent to which [the action by one branch prevents another branch] from accomplishing its constitutionally assigned functions. *United States v. Nixon*, 418 U.S. at 711-12 [94 S.Ct. at 3109-10]." *Id*. Such undue disruption is demonstrated if an action "would be an attempt to foreclose legislative action in areas where legislative authority is undisputed." *State of New Mexico v. The Hon. Gary Johnson*, 904 P.2d at 23. It is the legislature that directly represents state citizens and has broad plenary powers. "If a state constitution is silent on a particular issue, the legislature should be the body of government to address the issue …" *Clark*, at 24.  Here, the New Mexico Supreme Court Justices -- in passing a rule contrary to the will of the people and one that has the effect of modifying the state Constitution and legislative enactments - have acted in the clear absence of

all jurisdiction[8] and tread into the authority vested in the state Legislature. The Bernalillo

Stakeholders have acted similarly.

## II.      PLAINTIFFS WILL SUFFER IRREPARABLE HARM ABSENT INJUNCTIVE RELIEF.

As discussed above, in instances of constitutional challenges, the first factor generally

weighs heaviest or absolute in determining whether a preliminary injunction should issue. The

second factor here, also supports such issuance, as Plaintiffs (and those similarly situated) "will

be irreparably harmed by denying the injunction." Absent relief, Plaintiff Collins and other

presumptively innocent criminal defendants, including those served by the membership of

Plaintiffs Bail Bond Association Of New Mexico will continue to be subjected to severe

restrictions of liberty without being offered the constitutionally required alternative of monetary

bail. The membership of Plaintiffs Bail Bond Association Of New Mexico will continue to lose

business and revenue, the public will be harmed by the diminishment in tax revenue and Senator

Richard Martinez, Senator Bill Sharer, Senator Craig Brandt, Representative Bill Rehm and

Representative Carl Trujillo are harmed as their constitutionally confirmed powers continue to

be usurped. No further showing of injury is required.

"When an alleged deprivation of a constitutional right is involved, … most courts hold

that no further showing of irreparable injury is necessary." 11A Wright & Miller, Federal

Practice & Procedure §2948.1 (West 3d ed. 2017). The Ninth Circuit, for example, reiterated the

point earlier this year, concluding that "the deprivation of constitutional rights 'unquestionably

constitutes irreparable injury.'" *Washington v. Trump*, 847 F.3d 1151, 1169 (9th Cir. 2017).  Other

---

[8] A judge acts impermissibly if he acts in the "clear absence of all jurisdiction. *McClain v. Brown*, 587 F.2d 389, 390 (8th Cir. 1978); *Stump v. Sparkman*, 435 U.S. 349, 355-57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351, 20 L.Ed. 646 (1872); *Kelsey v. Fitzgerald*, 574 F.2d 443, 444 (8th Cir. 1978).

courts have reached similar conclusions.  *See, e.g.*, *Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("'[A] prospective violation of a constitutional right constitutes irreparable injury.'"); *Lynch v. City of New York*, 589 F.3d 94, 99 (2d Cir. 2009) ("The parties do not dispute that, assuming the breathalyzer program violates the Fourth Amendment, plaintiffs have demonstrated 'irreparable harm.'").

Nor should there be any relaxation of this principle when it comes to the right to bail—a constitutional guarantee that protects liberty during the critical period while the accused is awaiting trial -- or the usurpation of legislative powers.  "Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning." *Stack*, 342 U.S. at 4.  Indeed, denials of bail are among the few orders that can appealed immediately rather than after a final judgment—a recognition that improper denial of bail creates irreparable injury. *Id.* at 6.

If there were any doubt about the gravity of the harm at issue, Both Plaintiff Collin's experience and the usurpation of Plaintiffs Senator Richard Martinez, Senator Bill Sharer, Senator Craig Brandt, Representative Bill Rehm and Representative Carl Trujillo illustrates the "intangible" and "unquantifiable" injuries that result when individuals are denied the constitutionally required option of monetary bail and/or when the elected legislators are deprived of their right to represent the interests of their constituents. *See Ezell v. City of Chicago*, 651 F.3d 684, 699 (7th Cir. 2011). There is no way to repair the injury inflicted on Plaintiffs Bail Bond Association Of New Mexico by having its business severely reduced or completely eliminated. *See* Madrid Decl. ¶ 8, attached to the Complaint. The citizens of New Mexico are in turn harmed by their shrinking tax income. The second factor in the preliminary injunction analysis is plainly met here.

## III.        THE BALANCE OF EQUITIES FAVORS PLAINTIFFS.

The third factor in determining whether to grant a preliminary injunction is the balance of equities.  In a constitutional case such as this, balancing the equities is straightforward. Granting the relief requested by Plaintiffs would end the denial of their constitutional rights, while it would require the state to do no more than act in compliance with the Constitution (namely, to afford presumptively innocent defendants the option of monetary bail before imposing severe restrictions of their liberty) as well as in compliance with state legislation.  It is well established, both as a matter of common sense and precedent, that requiring the government to comply with the Constitution and existing law does "not result in a greater harm to the State because the State does not have an interest in the enforcement of an unconstitutional law." *New Jersey Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 388-89 (3d Cir. 2012); ("[I]n the context of a motion for preliminary injunction, the Government does not have an interest in the enforcement of an unconstitutional law."); and see *Def. Distributed v. United States Dep't of State*, No. 15-50759, 2017 WL 1032309, at *1 (5th Cir. Mar. 15, 2017); *citing Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[I]t may be assumed that the Constitution is the ultimate expression of the public interest.").

Nor could defendants justifiably contend that a preliminary injunction here would threaten any interest in preventing flight or protecting public safety. The injunction sought by Plaintiffs requires only that pre-trial defendants be given the option of a non-excessive amount of monetary bail that will reasonably assure their appearance at trial. If a court reasonably concludes that no such amount of bail exists, then—just as under the bail system that exists per legislative passage and before July 1, 2017, there would be no constitutional violation.

Finally, and importantly, the injunctive relief requested here will not undermine the

state's objective of releasing a greater number of indigent criminal defendants—a goal with which Plaintiffs have no quarrel. Plaintiffs seek only the constitutionally required *option* of monetary bail.  Requiring that option would in no way prevent the state from also offering the alternative of non-monetary conditions, including home detention and an ankle bracelet. In other words, the options for indigent defendants who cannot afford *any* monetary bail would not change at all as a result of the relief requested here.

## IV.    INJUNCTIVE RELIEF SERVES THE PUBLIC INTEREST.

For many of the reasons discussed *infra.*, a preliminary injunction would also serve the public interest, as Courts have noted in assessing this factor. *Am. Civil Liberties Union v. Ashcroft*, 322 F.3d 240, 247 (3d Cir. 2003), *aff'd and remanded*, 542 U.S. 656, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004). Just as the balance of equities never favors enforcement of an unconstitutional law, "the public interest [is] not served by the enforcement of an unconstitutional law." *New Jersey Retail Merchs. Ass'n*, 669 F.3d at 389. Thus, a preliminary injunction is in the public interest as a matter of law when the injunction is designed to safeguard constitutional rights—precisely what Plaintiffs seek here. *Am. Civil Liberties Union v. Johnson*, 194 F.3d 1149, 1163 (10th Cir. 1999)(threatened injury to plaintiffs' constitutionally protected speech outweighed whatever damage preliminary injunction might cause to defendants' inability to enforce what appeared to be unconstitutional statute); *Quinly,* 446 F.Supp.2d at 1237 (no injury to municipality prevented from enforcing unconstitutional statute).

## CONCLUSION

For the foregoing reasons, this Court should grant a preliminary injunction enjoining the provisions of the New Mexico Supreme Court Rule that impose liberty-restricting conditions on Plaintiff Collins and other presumptively innocent criminal defendants, including those served

by the membership of Bail Bond Association of New Mexico without providing the constitutionally required option of monetary bail, and application of a rule issued in contravention of the separation of powers. This Court should enjoin the use of the Foundation Tool as it implements the New Mexico Supreme Court Rule and deprives presumptively innocent criminal defendants of their liberty interests by formulaic implementation.

Given the severe but temporary nature of Plaintiffs' injury, Plaintiffs respectfully request expedited briefing and argument on this Motion.

**WESTERN AGRICULTURE, RESOURCE AND BUSINESS ADVOCATES, LLP**

*/s/ Dori E. Richards*
Dori E. Richards, Esq.
dorierichards@gmail.com

*/s/ A. Blair Dunn*
A. Blair Dunn, Esq.
abdunn@ablairdunn-esq.com

400 Gold Ave. SW, Suite 1000
Albuquerque, NM 87102
(505) 750-3060

**PRESTON LAW OFFICES**

*/s/ Ethan Preston*
Ethan Preston, Esq.
ep@eplaw.us
4054 McKinney Avenue, Suite 310
Dallas, Texas 75204
(972) 564-8340

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

   I HEREBY CERTIFY a true and correct copy of the foregoing was filed electronically with the District Court and served on counsel by the Court's CM/ECF system on this 5th day of August 2017.

       */s/ A. Blair Dunn*_____
       A. Blair Dunn, Esq.