## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DARLENE COLLINS, individually and
on behalf of all others similarly situated;
BAIL BOND ASSOCIATION OF
NEW MEXICO; SENATOR RICHARD
MARTINEZ; SENATOR BILL SHARER;
SENATOR CRAIG BRANDT;
REPRESENTATIVE BILL REHM; and
REPRESENTATIVE CARL TRUJILLO,

      Plaintiffs,

v.                                                          1:17-cv-00776-RJ-KK

CHARLES W. DANIELS, Individually and in
His Official Capacity; EDWARD L. CHAVEZ,
Individually and in His Official Capacity;
PETRA JIMENEZ MAEZ, Individually and in
Her Official Capacity; BARBARA J. VIGIL,
Individually and in Her Official Capacity;
JUDITH K. NAKAMURA, Individually and in
Her Official Capacity; THE NEW MEXICO
SUPREME COURT; NAN NASH, Individually
and in Her Official Capacity; JAMES NOEL,
Individually and in His Official Capacity;
THE SECOND JUDICIAL DISTRICT COURT;
HENRY A. ALANIZ, Individually and in His
Official Capacity; ROBERT L. PADILLA,
Individually and in His Official Capacity;
BERNALILLO COUNTY METROPOLIAN COURT;
JULIE MORGAS BACA, Individually and in Her
Official Capacity; and BERNALILLO COUNTY,

      Defendants.

_____

## NEW MEXICO JUDICIAL DEFENDANTS' RULE 12 MOTION TO DISMISS

The New Mexico Judicial Defendants (all Defendants other than Bernalillo County and its County Manager Julie Morgas Baca) hereby move the Court to dismiss this action in its entirety for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and on grounds of immunity from suit.

The Amended Complaint is patently meritless.  To accord it any further consideration would require, among other unprecedented actions, overruling *United States v. Salerno*, 481 U.S. 739 (1987) (holding that the Eighth Amendment protects only against excessive bail and does not guarantee release on money bonds or any other specific release conditions), and would require invalidating the federal bail statutes in effect since 1966, upon which New Mexico's rules have always been based.  The federal statutes and New Mexico rules alike create presumptions of releasability on nonfinancial conditions and permit imposition of financial security only as a last resort, and require those conditions to be individually determined at an arrestee's first appearance before a judicial officer.

In addition, permitting this action to proceed any further would authorize individual-capacity damages lawsuits against federal and state justices for promulgation of procedural rules, and against lower court judges for applying those rules; would invent a supposed constitutional right for bail bondsmen to sue judges for failing to require a criminal defendant to purchase a money bond from a private vendor; and would disregard ironclad principles of standing and federal court jurisdiction.  Accordingly, the Court should grant Judicial Defendants' instant motion and dismiss the Amended Complaint in its entirety.  Plaintiffs oppose this motion.

## I.      THE AMENDED COMPLAINT

Plaintiffs are the Bail Bond Association of New Mexico ("Bail Bond Association"), Amended Complaint ¶ 19; three members of the New Mexico Senate and two members of the New Mexico House of Representatives, *id*. ¶¶ 20-24; and Darlene Collins, a criminal defendant who

has been charged in New Mexico state court with aggravated assault, a fourth-degree felony, and released on nonmonetary conditions pending trial after her first appearance before a Bernalillo County Metropolitan Court judge, *id.* ¶ 18.  They sue the New Mexico Supreme Court and all of its Justices, the Second Judicial District Court and its Chief Judge and Court Executive Officer, the Bernalillo County Metropolitan Court and its former Chief Judge[1] and Court Executive Officer, all in their individual as well as official capacities (the "Judicial Defendants"), despite the lack of any allegations of acts performed outside their official functions.  *See id.* ¶¶ 25-36. Plaintiffs also sue Bernalillo County and its County Manager.  *See id.* ¶¶ 37-38.

In their Amended Complaint (filed August 3, 2017) Plaintiffs allege that in promulgating revised Rules of Criminal Procedure governing pretrial release and detention in New Mexico (the "2017 Rules"), the New Mexico Supreme Court violated the Eighth Amendment's guarantee against excessive bail, Fourth Amendment protections against unreasonable searches and seizures, and the Due Process Clause of the Fourteenth Amendment.  *Id.* ¶¶ 120-130, 132-148, and 150-161.  In addition, Plaintiffs assert that the implementation of a pretrial release risk assessment tool in Bernalillo County which was authorized by the New Mexico Supreme Court violates the Eighth Amendment by prioritizing nonmonetary conditions of release.  *Id.* ¶ 127.

On the basis of those allegations, Plaintiffs ask this Court to declare the 2017 Rules unconstitutional and to enjoin enforcement of the Rules on a preliminary and permanent basis, *id.* at 31-32; to award all Plaintiffs money damages against all Judicial Defendants individually for their judicial rule-making and rule-enforcing actions pursuant to 42 U.S.C. § 1983, *id.* ¶ 10, along

---

[1] Plaintiffs incorrectly state that "Defendant Henry A. Alaniz is the Chief Judge of the Bernalillo County Metropolitan Court."  Amended Complaint ¶ 34.  Several months before Plaintiffs initiated this lawsuit, the Honorable Edward Benavidez was elected as Chief Judge.  *See* https://metro.nmcourts.gov/judges.aspx.

with attorney's fees under 42 U.S.C. § 1988, *id*. at 32; and to certify this lawsuit as a class action on behalf of "[a]ll New Mexico criminal defendants who are or will be subject to the liberty-restricting conditions of pre-trial release permitted by the [2017] Rules … without having the opportunity to be considered for release on secured bond."  Amended Complaint at 31, and ¶ 87.

## II.   APPLICABLE LAW

### A.   Subject Matter Jurisdiction

"Federal courts are courts of limited jurisdiction; they are empowered to hear only those cases authorized and defined in the Constitution which have been entrusted to them under a jurisdictional grant by Congress."  *Henry v. Office of Thrift Supervision,* 43 F.3d 507, 511 (10th Cir. 1994) (citations omitted).  "Because the jurisdiction of federal courts is limited, there is a presumption against jurisdiction, and the party invoking federal jurisdiction bears the burden of proof."  *Marcus v. Kan. Dep't of Revenue*, 170 F.3d 1305, 1309 (10th Cir. 1999).

Dismissal under Rule 12(b)(1) is mandatory once the Court determines that it lacks subject matter jurisdiction over particular claims.  *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *see also Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013) ("A court lacking jurisdiction cannot render judgment but must dismiss the cause").  "Because subject matter jurisdiction cannot be waived, or conferred by agreement of the parties," motions addressing the Court's subject matter jurisdiction "may be raised at any time."  *Tesh v. U.S. Postal Serv.*, 215 F. Supp. 2d 1220, 1226 (N.D. Okla. 2002) (citing *Okla. City Assocs. v. Wal-Mart Stores, Inc*., 923 F.2d 791, 794 (10th Cir. 1991); other citation omitted).

### B.   Failure to State a Claim

Rule 12(b)(6) empowers the Court to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  "The legal sufficiency of a complaint is a

question of law." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003).  "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint . . ." *A.M. ex rel. Youngers v. N.M. Dep't of Health*, 117 F. Supp. 3d 1220, 1241 (D.N.M. 2015) (citation omitted).  All well-pleaded factual allegations are "viewed in the light most favorable to the nonmoving party." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014).  The Tenth Circuit has clarified that while courts in this district must "accept all factual allegations in the complaint as true," they do not take as true "the complaint's legal conclusions." *In re Zagg, Inc. Sec. Litig.*, 797 F.3d 1194, 1201 (10th Cir. 2015) (citation omitted).  To survive dismissal, a complaint must plead facts sufficient "to state a 'claim of relief that is plausible on its face.'" *Aschcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Sufficient factual allegations "require more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555-56.

### III.    ARGUMENT AND AUTHORITIES

### A.    Plaintiffs Fail to State a Claim upon Which Relief can be Granted.

The Amended Complaint contains three counts:  "Count One Violation of Right to Bail (Eighth and Fourteenth Amendments)," "Count Two Deprivation of Liberty Without Due Process of Law (Fourteenth Amendment)," and "Count Three Unreasonable Search and Seizure (Fourth and Fourteenth Amendments)."  Amended Complaint at 24-31.  Plaintiffs' claims derive wholly from Collins – that is, neither Bail Bond Association nor the five individual legislators claim that their constitutional rights under the Fourth, Eighth or Fourteenth Amendment have been violated by Judicial Defendants.  Plaintiffs' failure to state a claim upon which relief can be granted with respect to Collins mandates dismissal of the Amended Complaint.

4

### 1. Neither the Eighth Amendment nor any Other Source of Law Guarantees a "Right" to Money Bail.

New Mexico's Constitution, like the United States Constitution, forbids "excessive bail." N.M. Const., art. II, § 13.  Article II, Section 13 of the New Mexico Constitution enshrines the principle that a person accused of a crime is presumptively entitled to retain her or his personal freedom pending trial, with limited exceptions.  *State v. Brown*, 2014-NMSC-038, ¶ 19, 338 P.3d 1276 (citing *Tijerina v. Baker*, 1968-NMSC-009, ¶ 9, 78 N.M. 770).  "Once released, a defendant's continuing right to pretrial liberty is conditioned on the defendant's appearance in court, compliance with the law, and adherence to the conditions of pretrial release imposed by the court." *Id*. ¶ 21.

The central premise of Plaintiffs' lawsuit is their belief that the New Mexico Supreme Court "may not … restrict the liberty of presumptively innocent defendants without offering the one alternative to substantial pre-trial deprivations that the Constitution expressly protects – monetary bail."  Amended Complaint ¶ 9 (emphasis added).  Plaintiffs, in other words, argue that the Constitution requires that a criminal defendant must always have the option to purchase a commercial bail bond from a private vendor, even if that defendant is entitled to pretrial release on his or her own recognizance or on nonmonetary conditions, and even if a court determines that defendant should not be released at all due to dangerousness or risk of nonappearance.  That argument is bereft of any support in the text of the Constitution, caselaw, or any other authority.

Plaintiffs distort the Constitution's guarantee against "excessive bail" into an invented requirement that so long as it is not "excessive" in amount, access to money bail is mandatory. But the United States Supreme Court has repeatedly made clear that the Constitution does not confer an absolute right to bail, let alone money bail.  *See United States v. Salerno*, 481 U.S. 739, 752 ("The Eighth Amendment addresses pretrial release by providing merely that 'excessive bail

shall not be required.'  This Clause, of course, says nothing about whether bail shall be available at all."); *see also Carlson v. Langdon*, 342 U.S. 524, 545-46 (1952) (holding that the Eighth Amendment does not provide for an absolute "right to bail."); *United States v. Acevedo-Ramos*, 600 F. Supp. 501, 506 (D.P.R. 1984) ("The right to bail has been a statutory tradition, not an absolute constitutional right.").

Plaintiffs present money bail as the only mechanism available to rescue criminal defendants from incarceration.  But that approach to pretrial detention was abolished more than 50 years ago by the federal Bail Reform Act of 1966.  *See United States v. Leathers*, 412 F.2d 169, 171 (D.C. Cir. 1969) (Under the Bail Reform Act, "imposition of a money bond is proper only after all other nonfinancial conditions have been found inadequate."); *United States v. Kirkman*, 426 F.2d 747, 749 (4th Cir. 1970) (Bail Reform Act "had the goal of eliminating the evils which are inherent in a system predicated solely upon monetary bail … The statute does not simply suggest to … judicial officers that they may depart from the entrenched bail bond practice.  It commands that the practice be abandoned, except as a next to last alternative.") (citation and internal quotation marks omitted).  The federal Bail Reform Act has passed constitutional muster in the face of a wide range of challenges.  *See, e.g.*, *Salerno*, 481 U.S. at 755; *United States v. Edwards*, 430 A.2d 1321 (D.C. Ct. App. 1981), *cert. denied*, 455 U.S. 1022 (1982).

No published decision of a federal court has ever found that the Eighth Amendment guarantees the "option" of monetary bail, and four states – Illinois, Kentucky, Oregon and Wisconsin – have outlawed the practice entirely.[2]  New Mexico is not among them, and the 2017 Rules explicitly contemplate that courts may require secured bonds for a defendant's release.  *See*

---

[2] *See* 725 Ill. Comp. Stat. Ann. 5/110-13 (1964); Ky. Rev. Stat. Ann. § 431.510 (2004); Or. Rev. Stat. §§ 135.245 (2009) and 135.265 (2011); Wis. Stat. Ann. § 969.12 (2014).

Rule 5-401(E) NMRA.  The concept animating Plaintiffs' lawsuit –failure to offer money bond as an immediate option to every defendant, rather than as a last resort if nonmonetary conditions of release are insufficient, violates the Eighth Amendment – is an invention of the commercial bail industry completely unmoored from the Constitution or any other source of law.

### 2. *Judicial Defendants have not Conducted any Unreasonable Search and Seizure of any of the Plaintiffs.*

The Amended Complaint alleges that "pre-trial release conditions such as home detention and mandatory reporting to pre-trial services constitute a Fourth Amendment 'seizure.'"  Amended Complaint ¶ 153 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984)).[3]  From that starting point, Plaintiffs conclude that because the 2017 Rules prioritize nonmonetary conditions, the Rules necessarily "violate[ ] the Fourth Amendment."  Amended Complaint ¶ 160.

Plaintiffs' threshold assumption is incorrect as a matter of law.  The Tenth Circuit has expressly declined to adopt a "continuing seizure" analysis under which routine pretrial release conditions may constitute a "search" or "seizure" for purposes of constitutional liability.  *See Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007) ("To extend liability in cases without a traditional seizure would expand the notion of seizure beyond recognition …. '[I]f the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually every criminal defendant will be deemed to be seized pending the resolution of the charges against him.'") (citing *Nieves v. McSweeney*, 241 F.3d 46, 55 (1st Cir. 2001)).  Because Plaintiffs cannot even meet the prerequisite of showing that Collins's pretrial release constitutes a "search" or a "seizure," their Fourth Amendment claim must be immediately dismissed.

---

[3] The *Jacobsen* case, which Plaintiffs reference in their Amended Complaint, involved the examination by Drug Enforcement Administration agents of a damaged parcel which contained traces of a white powdery substance later demonstrated to be cocaine, and says nothing about pretrial release conditions. 466 U.S. at 111-112.

### 3. *Plaintiffs Fail to State a Claim for Any Due Process Violation.*

In generic fashion, Plaintiffs allege a procedural due process claim that "[b]y subjecting Plaintiff Collins and other presumptively innocent criminal defendants to denial of pre-arraignment release, restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty." Amended Complaint ¶ 138. But Plaintiffs never allege that any actual condition of Collins's release is unconstitutional; in fact, they state that "[u]ltimately, <u>no conditions</u> were imposed upon [Collins's] release post-arraignment and pre-trial other than a verbal order from the Court that she was being released." *Id.* ¶ 75 (emphasis added). If Collins was not subject to home detention or GPS monitoring, she cannot serve as a vehicle for Plaintiffs to attack the constitutionality of those specific conditions of release.[4]

Even if Collins were subject to conditions of release she believed to be unconstitutional, a lawsuit for constitutional due process violations via Section 1983, like this one, is premature at best. As the Tenth Circuit has explained, under United States Supreme Court precedent, "[A] cause of action under § 1983 is premature if an award for the plaintiff would necessarily imply the invalidity of a conviction or sentence through a direct appeal, order of expungement, decree of collateral relief, or writ of habeas corpus." *Ippolito v. Justice Serv. Div.*, 562 F. App'x 690 (10th Cir. ) (unpublished mem.) (citing *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994)). In *Ippolito*, the plaintiff was released pending trial in Colorado, and was subjected to sobriety testing as part

---

[4] Plaintiffs' claim that Collins was entitled to immediate (pre-arraignment) release, Amended Complaint ¶ 138, fares no better. There is no authority for the proposition that the Constitution entitles criminal defendants to immediate (pre-arraignment or -first appearance) release. *See United States v. Romero*, 511 F.3d 1281, 1284 (10th Cir. 2008) ("Parolees … have no legal right to receive an immediate hearing on their supervised release revocation"); *Grant v. Dane County Jail Staff*, 2009 WL 151187 at *2 (W.D. Wis. Jan. 15, 2009) (finding that criminal defendant received adequate process "regarding his right to pretrial release" by having an appearance before a judge, who ordered the defendant released on a signature bond).

of his release conditions.  *Id*.  The plaintiff sued for under Section 1983, asserting, *inter alia*, denial of due process and equal protection violations.

Relying on *Heck*, the Tenth Circuit affirmed the district court's dismissal of  the plaintiff's Section 1983 lawsuit challenging his pretrial release conditions as well as revocation of his release. *Id*.; *see also Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007) (a habeas petition pursuant to 28 U.S.C. § 2241 "is the proper avenue by which to challenge pretrial detention."); *Meechaicum v. Fountain*, 696 F.2d 790, 791 (10th Cir. 1983) (deeming denial of bail properly reviewed through habeas petition).  Collins, who was released on her own recognizance, may not bypass the habeas process to challenge the conditions of her release through this Section 1983 action.  Collins, of course, could also file a motion in her criminal case seeking review or modification of her conditions of release.  *See* Rule 7-401(H)(4).

Plaintiffs also assert a substantive due process claim on Collins's behalf on the ground that "the option of non-excessive bail for a bailable offense is 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'"  Amended Complaint ¶ 141 (citation omitted).  As a threshold matter, it is doubtful that Plaintiffs can even obtain substantive due process review of their challenge to the New Mexico Supreme Court's rule-making authority in pretrial release and detention proceedings.  "[W]here a particular [constitutional] Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims."  *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion) (citations omitted).  Applying *Albright*, the Tenth Circuit determined that because "the Fourth Amendment governed pretrial deprivations of liberty … Fourteenth Amendment substantive due process standards have no applicability" to such claims.  *Taylor v.*

9

*Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) (reviewing claims only in a Fourth Amendment context).

Even if Plaintiffs' allegations could properly be analyzed under substantive due process law, they still fail to state a claim. "The doctrine of substantive due process extends protections to fundamental rights 'in addition to the specific freedoms protected by the Bill of Rights.'" *Kitchen v. Herbert*, 755 F.3d 1193, 1208 (10th Cir. 2014) (citing *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Recognized fundamental rights include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 499-500 (6th Cir. 2007) (citing *Glucksberg*, 521 U.S. at 720 (internal citations omitted)). The United States Supreme Court has cautioned that it has "always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Glucksberg*, 521 U.S. at 720 (citation omitted). Purchasing pretrial release with money bail, however, has never been construed as a fundamental right. In *Broussard v. Parish of Orleans*, 318 F.3d 644, 657 (5th Cir. 2003), the Fifth Circuit specifically rejected the claim that access to bail implicated fundamental rights under a substantive due process analysis.

Since Plaintiffs cannot establish the existence of a fundamental right, and do not allege that Collins is a member of a suspect class, to make out a claim for violations of substantive due process, they must allege facts showing that Collins was deprived of a "liberty interest warranting due process protection, and that the deprivation was 'arbitrary and capricious.'" *Crider v. County Comm'rs, County of Boulder*, 246 F.3d 1285, 1289 (10th Cir. 2001). Government action is only arbitrary and capricious if it is "unrelated to a legitimate governmental interest." *Anglemyer v.*

*Hamilton County Hosp.*, 848 F. Supp. 938, 941 (D. Kan. 1994).  "In other words, the decision must meet the rational basis test."  *Id.*  Here, as discussed above, Plaintiffs cannot show that Collins has a protected liberty interest in obtaining release through a commercial bail bond as opposed to through nonmonetary conditions.  In addition, the United States Supreme Court has made clear that the government has a legitimate interest in regulating pretrial release and detention.  *Salerno*, 481 U.S. at 753, 749 (rejecting "the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release," and noting that the government's interest in public safety "is both legitimate and compelling.").  For all of these reasons, Plaintiffs fail to state a claim for violation of Collins's (or any other Plaintiff's) procedural or substantive due process rights.  Dismissal should follow.

### 4.   *Plaintiffs Fail to State a Claim on their Vague "Separation of Powers" Allegations.*

The Amended Complaint alleges in passing that by promulgating the 2017 Rules, the New Mexico Supreme Court has "infringe[d] upon the power of the Legislature to make law," Amended Complaint ¶ 81, and that the "authority of the New Mexico Legislature to pass laws preserving the public peace," *id.* at 31-32.  The burden is on Plaintiffs to specifically identify their causes of action, along with sufficient facts showing they are entitled to relief.  *See Twombly*, 550 U.S. at 570; *see also Coates v. Heartland Wireless Commc'ns, Inc.*, 26 F. Supp. 2d 910, 914 (N.D. Tex. 1998) ("To survive Rule 12(b)(6) dismissal, plaintiffs must allege facts entitling them to relief <u>for their substantive causes of action</u>.") (emphasis added).

Plaintiffs' statement that the 2017 Rules violate separation-of-powers principles (apparently because five legislators have joined this lawsuit) is not a cause of action; Plaintiffs' only stated causes of action are for alleged violations of Collins's Eighth, Fourth and Fourteenth Amendment rights.  *See* Amended Complaint at 24-31. Nor can Plaintiffs rely on their demand for

declaratory relief as a substitute for an actual cause of action.  Even if they raised a claim under the Declaratory Judgment Act, which they do not, the Declaratory Judgment Act "does not confer any 'substantive rights' or create a cause of action."  *Cheyenne and Arapaho Tribes v. First Bank & Trust Co.*, 560 F. App'x 699, 708 (10th Cir. 2014) (unpublished) (citing *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978)).

Plaintiffs are also wrong on the substance of their separation-of-powers argument.  Their view that the Legislature has sole dominion over "laws preserving the public peace," Amended Complaint at 32, would require the nullification of the New Mexico Rules of Criminal Procedure in their entirety, an absurd outcome.  The New Mexico Supreme Court retains "ultimate rule-making authority" to enact procedural rules for New Mexico state courts. *Albuquerque Rape Crisis Ctr. v. Blackmer*, 2005-NMSC-032, ¶ 5, 138 N.M. 398. The Supreme Court's rule-making authority also has long been recognized by the New Mexico Legislature.  *See* NMSA 1978, § 38-1-1(A) ("The supreme court of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico").

Finally, it is doubtful whether federal courts have jurisdiction to adjudicate purported separation-of-powers disputes between two or more branches of state government, and even if they do have that jurisdiction, they should decline to exercise it.  *See Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) ("[S]eparation of powers between branches of state government is a matter of state law."); *United States v. Delaporte*, 42 F.3d 1118, 1120 (7th Cir. 1994) ("The refusal of the executive branch of state government to enforce a law enacted by the legislative branch is, in general, no business of a federal court … [but rather] a matter of state prerogative.").

### 5. *Plaintiffs Fail to Allege how the Use of a Risk Assessment Tool in Bernalillo County Courts Violates Their Constitutional Rights.*

Plaintiffs state in conclusory fashion that "the implementation of the Arnold [Public Safety Assessment] Tool violate[s] the Eighth Amendment by permitting judges to consider secured bond only when it is determined that no other conditions of release will reasonably assure the eligible defendant's appearance in court when required."  Amended Complaint ¶ 127.  As set forth above, there is no Eighth Amendment right to money bail, so there can be no legal basis for a suit against Judicial Defendants for providing judges with the results of a pretrial risk assessment.

Rule 5-401(C) and its equivalents for the lower courts provide that in evaluating the least restrictive conditions of release that will reasonably ensure the appearance of a criminal defendant, the court "shall consider any available results of a pretrial risk assessment instrument approved by the Supreme Court for use in the jurisdiction," along with the defendant's financial resources and an extensive list of additional factors.  The risk assessment tool does not displace the evaluative work of the presiding judge.  To permit Plaintiffs' claims to withstand this Motion to Dismiss would require the incredible conclusion that simply providing judges with information is unconstitutional. The Amended Complaint offers only the most threadbare of allegations about the risk assessment tool, and literally <u>no</u> allegations (beyond identification of Judicial Defendants under the "Parties" heading) about Judge Nash, Judge Alaniz, Mr. Noel and Mr. Padilla.  *See* Amended Complaint ¶¶ 31, 32, 34.  Therefore, Plaintiffs fail to state any claim with respect to the purportedly unconstitutional use of the risk assessment tool in the Second Judicial District Court and Bernalillo County Metropolitan Court.

### 6. *Plaintiffs Cannot State a Claim for Money Damages Against any Judicial Defendant.*

To establish a violation of civil rights actionable under Section 1983, "a plaintiff must allege that (1) he was deprived of a right secured by the Constitution or laws of the United States,

and (2) the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan,* 52 U.S. 40, 49-50 (1999). Because Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," *Albright*, 510 U.S. at 271 (citation omitted), a plaintiff requesting relief under Section 1983 must "identify the specific constitutional right allegedly infringed." *Id.* "Constitutional rights allegedly invaded, warranting an award of damages, must be specifically identified. Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).

As explained above, Plaintiffs cannot state a claim for any violation of Collins's Eighth, Fourth or Fourteenth Amendment rights. That immediately ends Plaintiffs' efforts to extract money damages from and injunctive relief against Judicial Defendants through Section 1983. *See Duvall v. Cabinet for Human Res.*, 920 F. Supp. 111, 114 (E.D. Ky. 1996) ("If there is no constitutional right violated, then the question of whether the right is clearly established is irrelevant."). Plaintiffs' Section 1983 claims are also dead on arrival because the Amended Complaint contains no specific allegations of fact about any constitutional violations (or indeed any actions at all) on the part of the Supreme Court Justices, Judge Nash, Judge Alaniz, Mr. Noel and Mr. Padilla. The only time Plaintiffs even <u>mention</u> most of the individual Defendants is in the Amended Complaint's recitation of parties. *See* Amended Complaint ¶¶ 25-35. Plaintiffs' abject failure to back up their legal claims with allegations of fact should result in immediate dismissal.

**B.      Plaintiffs Lack Standing to Sue.**

Beyond Plaintiffs' inability to articulate any legal claim upon which they may obtain relief, the Amended Complaint must be dismissed as a matter of law because none of the Plaintiffs can establish standing to maintain this action. Lack of standing is treated as a defect in subject matter jurisdiction. *See Colo. Envtl. Coal. v. Wenker*, 353 F.3d 1221, 1227 (10th Cir. 2004); *see also*

*Cascade Fund, LLLP v. Absolute Capital Mgmt. Holdings Ltd.*, 707 F. Supp. 2d 1130, 1137 (D. Colo. 2010) ("The issue of standing to bring a claim is considered a component of subject-matter jurisdiction and analyzed under Fed. R. Civ. P. 12(b)(1)"). "Constitutional standing involves three elements: (1) injury in fact; (2) causation; and (3) redressability." *Citizen Ctr. v. Gessler*, 770 F.3d 900, 909 (10th Cir. 2014) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)). Injury in fact is the "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.

### 1. *Bail Bond Association of New Mexico*

Bail Bond Association states that it is "a professional membership organization comprised of bail bond businesses" doing business in New Mexico.  Amended Complaint ¶ 19.  It complains that the 2017 Rules "created [a] hierarchy effectively prohibiting the lower courts from considering secured bonds without placing untenable work requirements on the lower court judges therein effectively removing the option from consideration by judges and a de facto situation wherein jailhouse bonds where [sic] completely extinguished as an option for pre-arraignment release." *Id*. ¶ 52. Bail Bond Association purports to represent an undefined population of potential customers who prefer pretrial release purchased with money bonds to release on nonfinancial conditions. *Id*. ¶ 63.

Bail Bond Association cannot maintain a viable cause of action on behalf of its member companies' "prospective clients." *Id*. ¶ 14.  In general, a litigant "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc*., 454 U.S. 464, 474 (1982) (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *see also Flast v. Cohen*, 392 U.S. 83, 99 n.20 (1968) ("[A] general standing limitation imposed by federal courts is that a litigant will ordinarily not be permitted to assert the rights of absent third parties.").

The United States Supreme Court has recognized a limited right of litigants to bring actions on behalf of third parties only when the following three criteria are met: (1) the litigant has suffered an injury in fact giving it a sufficiently concrete interest in the outcome of the issue; (2) the litigant has a close relation to the absent third party; and (3) there exists some hindrance to the third party's ability to protect his own interests. *Powers v. Ohio*, 499 U.S. 400, 410 (1991). Plaintiffs fails to allege that the Bail Bond Association meets any, let alone all, of these criteria, and accordingly the Association lacks standing to pursue this suit on behalf of hypothetical customers or anyone else.

Conspicuously, Bail Bond Association and its member companies lack the requisite close relationship to "potential customers." Many courts, including the Tenth Circuit, have found that particular relationships, such as the physician-patient relationship, are "sufficiently close for third-party standing." *Aid for Women v. Foulston*, 441 F.3d 1101, 1112 (10th Cir. 2006). A limited exception to the general rule against third-party standing permits businesses to advocate on behalf of their clients "against discriminatory actions that interfere with that business relationship." *Young Apartments, Inc. v. Town of Jupiter*, 529 F.3d 1027, 1041 (11th Cir. 2008) (emphasis added); *see also Barrows v. Jackson*, 346 U.S. 249, 258, 254-55 (1953) (where a racially restrictive covenant would effectively "punish respondent for not continuing to discriminate against non-Caucasians in the use of her property," United States Supreme Court found white landowner had standing to sue on behalf of black purchasers to attack racial discrimination).

In contrast to *Young Apartments* and *Barrows*, most ordinary business relationships between companies and their customers are simply too attenuated to create third-party standing. *See, e.g.*, *W.R. Huff Asset Mgm't Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 110 (2d Cir. 2008) (rejecting third-party standing based on relationship of investment advisor and client). That

is particularly true for hypothetical, as opposed to actual, business relationships. *See Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004) (rejecting standing where attorneys sought to challenge a statute on behalf of "yet unascertained [indigent criminal defendants] who will request, but be denied, the appointment of appellate counsel," because the attorneys had "no relationship at all" with those defendants).

Nor can Bail Bond Association show that criminal defendants preferring surety-backed bail bonds over release on their own recognizance are uniquely hindered in their ability to vindicate their own legal interests, requiring Bail Bond Association to advocate here on their behalf. Determining the existence of a "hindrance" under the *Powers* test requires examining "the likelihood and ability of the third parties … to assert their own rights." *Powers*, 499 U.S. at 414. Courts have found deterrence from filing suit due to privacy concerns, imminent mootness of a case, or systemic practical challenges to pursuing one's own rights to constitute the requisite hindrance. *See id.* at 414 (permitting criminal defendants to raise equal-protection challenges to race-based peremptory strikes due to the limited potential relief, small financial stake, and cost of litigation, all of which keep jurors from raising the claim themselves). Crucially, "[n]o practical barriers exist if the third party actually asserts his own rights." *Hodak v. City of St. Peters*, 535 F.3d 899, 904 (8th Cir. 2008). For all of these reasons, Bail Bond Association cannot maintain this action on behalf of unnamed third parties.

Bail Bond Association's standing on its own behalf is just as deficient. The Association charges that its member bail bond companies "have been severely harmed by the drastic reduction in the number of defendants given the option of jailhouse bonds or secured bonds" under the 2017 Rules. Amended Complaint ¶ 61. Its claim to relief rests on a series of speculative developments: "[T]he jailhouse could have set a reasonable, non-excessive monetary bail to ensure Plaintiff

Collin's [sic] appearance at arraignment and then for trial," *id*. ¶ 70, and then "[i]f such a bond had been allowed, Plaintiff Collin's [sic] family was prepared to use their own financial resources with the assistance of a member of [Bail Bond Association] to pay the required amount," *id*. ¶ 71.

The crux of Bail Bond Association's claim is that one of its member companies gladly would have issued a money bond to a defendant criminal proceeding, <u>if</u> it had the opportunity to do so, and that if the 2017 Rules had not been promulgated, it <u>might</u> have had such an opportunity. That chain of contingencies cannot satisfy the requirement that to obtain standing a plaintiff must claim "an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *United States v. Hays*, 515 U.S. 737, 743 (1995).

In addition, under prudential standing considerations, a litigant must demonstrate that its interests are "arguably … within the zone of interests to be protected by the statute or constitutional guarantee." *Sac and Fox Nation of Mo. v. Pierce*, 213 F.3d 566, 573 (10th Cir. 2000) (citation omitted). This prudential standing requirement "denies a right of review if the plaintiff's interests are … marginally related to or inconsistent with the purposes implicit in the [relevant constitutional provision]." *City of Los Angeles v. County of Kern*, 581 F.3d 841, 847 (9th Cir. 2009) (citation omitted) (alterations in original). The Eighth Amendment's prohibition on excessive bail is directed at individuals detained for alleged criminal offenses before trial, and the Fourth Amendment is directed at individuals who may be subject to such searches and seizures by the government; making money by selling commercial bail bonds is not even remotely related to the purposes of either of those constitutional provisions. *See Fleck & Assocs., Inc. v. City of Phoenix*, 471 F.3d 1100, 1104, 1106 (9th Cir. 2006) (holding that membership club lacked standing to assert

the rights of its customers where the customers' purported claim was for invasion of privacy but "corporations have no such privacy rights," and corporation's purpose "is to turn a profit").

Bail Bond Association is not an advocacy organization for criminal defendants' constitutional rights; rather, it is a business membership association, Amended Complaint ¶ 19, by its own admission suing here to advance the commercial interests of its member companies. Yet the Amended Complaint rests entirely on the claims that the 2017 Rules violate criminal defendants' constitutional rights and poorly articulated separation-of-powers principles, not that the Rules constitute an improper taking or otherwise unlawfully deprive the Association or commercial bail bond companies of their profits, or deny commercial bail bondsmen any due process protections to which <u>they</u> are entitled. Under the zone-of-interests test, Bail Bond Association lacks standing to proceed in this action, whether in its own right or on behalf of third parties.

### 2. *Criminal Defendant Darlene Collins*

Plaintiffs assert that "[b]y subjecting Plaintiff [Darlene] Collins and other presumptively innocent criminal defendants to … restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty." Amended Complaint ¶ 138. But the Amended Complaint acknowledges that after Collins was arrested for aggravated assault, *id*. ¶ 64, she was thereafter released on purely nonmonetary conditions, *id*. ¶ 75. Plaintiffs never allege that Collins actually was subjected to home detention or required to undergo GPS monitoring through an ankle bracelet. Rather, she was released on the least restrictive terms available as outlined under the 2017 Rules (Rule 5-401(D) NMRA and its equivalent for the Metropolitan Courts, Rule 7-401(D)). Plaintiffs cannot challenge "home detention and GPS monitoring through an ankle bracelet" using a criminal defendant who was never subjected to either of those release conditions. *See Brown v. Livingston*, 524 F. App'x

111, 115 (5th Cir. 2013) (unpublished) (parolee lacked standing to challenge GPS monitoring because that condition had not been imposed on him, rendering his claims "hypothetical and conjectural").

Plaintiffs assert that "[u]nder the system of jailhouse bonds and secured bonds that existed for a century in New Mexico before July 1, 2017, the jailhouse could have set a reasonable, non-excessive monetary bail to ensure Plaintiff Collin's [sic] appearance at arraignment and then for trial." Amended Complaint ¶ 70. The 2017 Rules, however, did not change the fundamental requirement that pretrial release determinations are the province of judicial officers, not "the jailhouse." *See* Amended Complaint, Ex. B (redline showing 1972 Rules, which required that defendants "shall be ordered released pending trial on the person's personal recognizance or upon the execution of an unsecured appearance bond <u>in an amount set by the court</u> … unless <u>the court</u> makes a written finding that such release will not reasonably assure the appearance of the person as required.") (emphases added). To the extent jails may have claimed the authority to set bonds and release defendants absent appearance before a judge or authorized designee – and Plaintiffs offer no specific allegations of any such action – they did so in violation of Supreme Court rules that have been on the books in New Mexico for 40 years.

Similarly, Plaintiffs cannot point to any provision of law, constitutional or otherwise, that entitles criminal defendants to bail <u>prior to</u> their appearance before a judge, and indeed federal law affords no such guarantee. *See* 18 U.S.C. § 3142(a) (mandating that pretrial release conditions be evaluated "[u]pon the appearance before a judicial officer of a person charged with an offense"). Collins, on whose behalf Bail Bond Association purportedly speaks, herself fails to meet the prerequisites for maintaining this lawsuit.

### 3. *Individual New Mexico State Legislators*

Plaintiffs concede that the New Mexico Constitution invests the New Mexico Supreme Court with the authority "to write rules for the administration of justice in the lower courts." Amended Complaint ¶ 78. Nonetheless, Plaintiffs claim that because the Legislature has "exercised its legislative authority to pass laws to preserve the public peace," the Supreme Court cannot promulgate procedural rules for pretrial release and detention. *Id.* ¶ 81.

Like Bail Bond Association and Collins, the legislator Plaintiffs also lack standing to sue. "[A] threshold question in the legislator standing inquiry is whether the legislator-plaintiffs assert an institutional injury." *Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016). Institutional injuries "are those that do not zero in on any individual Member," but instead are "widely dispersed" and necessarily impact all members of a legislative body equally. *Id.* (discussing and citing *Arizona State Legis. v. Ariz. Indep. Redistricting Comm'n*, __ U.S. __, 135 S. Ct. 2652, 2664 (2015)). In other words, "an institutional injury constitutes some injury to the power of the legislature as a whole rather than harm to an individual legislator. An individual legislator cannot 'tenably claim a personal stake' in a suit based on such an institutional injury." *Id.* (citing *Arizona State Legis.*, 135 S. Ct. at 2664).

Here, the legislator Plaintiffs complain, however sketchily, of just such an institutional injury, arguing that the Supreme Court's promulgation of the 2017 Rules and the lower courts' enforcement of those Rules somehow intrudes upon the authority of the Legislature. The legislator Plaintiffs do not allege that they have any specific interest separate and apart from their numerous legislative colleagues who have not lent their names to the Amended Complaint. *See, e.g.*, *Baird v. Norton*, 266 F.3d 408, 412 (6th Cir. 2001) ("For legislators to have standing as legislators … they must possess votes sufficient to have either defeated or approved the measure at issue."). A legislator does not hold any legally protected interest in the application (or enjoinment) of law that

is distinct from the interest held by every member of the public.  *See Campbell v. Clinton*, 203 F.3d 19, 22 (D.C. 2000) (Congressional plaintiffs do not "have standing anytime a President allegedly acts in excess of statutory authority"). Under Tenth Circuit law, the allegations of the Amended Complaint are plainly insufficient to permit standing for the legislator Plaintiffs.

C.     **Plaintiffs' Claims are Barred by Sovereign Immunity, Judicial Immunity and Legislative Immunity.**

1.     *Plaintiffs May not Maintain Official-Capacity Claims for Damages against the New Mexico Judicial Defendants.*

"Sovereign immunity is a limitation on the Court's subject matter jurisdiction," and a motion to dismiss on grounds of immunity should be "considered as a challenge to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."  *Owens v. Oklahoma ex rel. Bd. of Regents of Univ. of Okla.*, 2013 WL 6492838 at *1 (N.D. Okla. Dec. 10, 2013) (citing *Clymore v. United States*, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005)); *see also Vallo v. United States*, 298 F. Supp. 2d 1231, 1234 (D.N.M. 2003) ("If there is no waiver of sovereign immunity, the government is immune from suit, and the court has no subject-matter jurisdiction to hear the case.").

The Eleventh Amendment to the United States Constitution provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.   "The Eleventh Amendment bars suits for damages against a state or state agency absent congressional abrogation or waiver and consent by the state." *Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010).

It is beyond dispute that the New Mexico Supreme Court is a component part of the State of New Mexico, and therefore immunized from any suit for damages.  *See* N.M. Const., art. VI,  § 1 ("The judicial power of the state shall be vested in … a supreme court," and enumerated lower courts); *see also Russillo v. Scarborough*, 727 F. Supp. 1402, 1409 (D.N.M. 1989) (Supreme Court

and other state courts are state agencies and, absent their consent, "are immune from federal suits brought by [the state's] own citizens").  Similarly, Second Judicial District Court and Bernalillo Country Metropolitan Court unquestionably are agencies of the State.  *See* NMSA 1978, § 34-6-21 ("The district courts are agencies of the judicial department of the state government."); § 34-8A-8(B) ("The metropolitan court is an agency of the judicial branch of state government.").

State officials and employees, like the judges and court administrators sued here, "are likewise provided immunity as 'an arm of the state.'"  *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1992 (D.N.M. 2013) (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280-81 (1977)); *see also Ysais v. N.M. Judicial Standard Comm'n*, 616 F. Supp. 2d 1176, 1186 (D.N.M. 2009) ("The Eleventh Amendment bars a suit for damages in federal court against a State, its agencies, and its officers acting in their official capacities"); *see also Wojdacz v. Blackburn*, 2014 WL 4243798 at *12 (D. Colo. Aug. 25, 2014) (Absent a specific waiver, official-capacity claims against judges are barred by sovereign immunity).  Plaintiffs' demand for "damages to compensate for the injuries they have suffered as a result of Defendants' unconstitutional conduct," Amended Complaint at p. 32, thus fails as a matter of law.

### 2. *Plaintiffs May not Maintain Individual-Capacity Claims of any Sort against the New Mexico Judicial Defendants.*

It is well-established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly."  *Stump v. Sparkman*, 435 U.S. 349, 355-5 (1978) (emphasis added). "The primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decisionmaking." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citations omitted).  "Judicial immunity

applies only to personal capacity claims." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011).

Where judges act in a rule-making capacity rather than an adjudicative capacity, the United States Supreme Court has indicated that the applicable immunity is legislative rather than judicial. *See Supreme Court of Va. v. Consumers Union of U.S., Inc*., 446 U.S. 719, 731 (1980) (determining that Virginia Supreme Court's issuance of State Bar Code "was a proper function of the Virginia court," but "was not an act of adjudication but one of rulemaking"); *id*. at 734 (Where lawsuits against State Supreme Court are premised on "issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit"); *see also Abick v. Michigan*, 803 F.2d 874, 877-78 (6th Cir. 1986) (concluding that the Michigan Supreme Court's promulgation of rules of practice and procedure was a legislative activity and therefore the justices of that court were entitled to legislative immunity); *Lewis v. N.M. Dep't of Health*, 275 F. Supp. 2d 1319, 1325 (D.N.M. 2003) ("[O]fficials outside the legislative branch," including judges, "are entitled to immunity when they perform legislative functions.") (citation omitted).

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The purpose of legislative immunity is to "enable[ ] officials to serve the public without fear of personal liability. Not only may the risk of liability deter an official from proper action, but the litigation itself 'creates a distraction and forces legislators [or other state officials entitled to legislative immunity] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Sable v. Myers*, 563 F.3d 1120, 1123-24 (10th Cir. 2009) (quoting *Supreme Court of Va*., 446 U.S. at 733). The Amended Complaint alleges wrongdoing by New Mexico Supreme Court Justices in their rule-making capacity. *See, e.g*., Amended Complaint ¶ 9 (claim that New Mexico Supreme Court's

enactment of 2017 Rules violates an invented right of criminal defendants to opt for money bail before being offered other conditions of release); *id*. ¶ 81 (claim that Supreme Court intruded on the exclusive province of the New Mexico Legislature in promulgating 2017 Rules). Legislative immunity, therefore, is the applicable protection from suit that United States Supreme Court precedent has guaranteed to state court justices for decades.

Plaintiffs appear to aim somewhat different allegations against the Second Judicial District Court, Bernalillo County Metropolitan Court, and those courts' chief judges and court executive officers.[5] Those Judicial Defendants apparently find themselves defending this lawsuit because they "adopted and implemented the Public Safety Assessment court-based pretrial risk assessment tool," which Plaintiffs assert "effectively eliminated pre-trial release pursuant to a secured bond denying [criminal defendants] the pre-trial liberty option of a secured bond." *Id*. ¶ 5 (symbol omitted); *see also id*. ¶ 50 ("The use of the Arnold [Public Safety Assessment] Tool … infringe[s] upon a person's pretrial liberty just as the Supreme Court Rules do.").

Judge Nash and Judge Alaniz (or any other judges of their courts whom Plaintiffs might attempt to sue) unequivocally are protected by judicial immunity in connection with their implementation of the 2017 Rules. *See Hyland v. Davis*, 149 F.3d 1183, 1998 WL 384556 at *2 (6th Cir. 1998) (unpublished table decision) ("Providing direction on the enforcement of a court rule, although somewhat administrative in nature, is still a judicial act for which the judge is immune because the parties' rights and liabilities are thereby affected.") (citing *Mann v. Conlin*, 22 F.3d 100, 104 (6th Cir.), *cert. denied*, 513 U.S. 870 (1994)).

---

[5] As noted above, Plaintiffs fail to offer any particularized allegations about any actions or omissions of Judge Nash, Judge Alaniz, Mr. Noel and Mr. Padilla.

Mr. Noel and Mr. Padilla are just as clearly protected by quasi-judicial immunity.  The absolute immunity available to judges is "extended, under the rubric of quasi-judicial immunity, to other officials who perform functions closely associated with the judicial process." *Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014) (unpublished); *see also Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (Quasi-judicial immunity exists to protect court staff from "the danger that disappointed litigants blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reports, and other judicial adjuncts.").  Where, as here, court staff are sued only because they have implemented court rules and orders, they are entitled to protection from suit.  *See Penn v. United States*, 335 F.3d 786, 790 (8th Cir. 1982) (Absolute quasi-judicial immunity applies to public officials who are required to act under a court order or at a judge's direction).  Under black-letter law, all of the individual Judicial Defendants are immunized from individual-capacity claims, and those claims must be dismissed.

**D.    The Court need not Consider Plaintiffs' Putative Class Action Claims at this Stage.**

Plaintiffs style their Amended Complaint as a putative class action assertedly brought on behalf of "[a]ll New Mexico criminal defendants who are or will be subject to the liberty-restricting conditions of pre-trial release permitted by the Supreme Court Rules or under the implementation of the Arnold Tool without having the opportunity to be considered for release on secured bond." *Id*. ¶ 87.[6]  "Given the early nature of most motions to dismiss, courts will often handle them prior to deciding a motion for class certification." *Polsky v. United States*, 844 F.3d 170, 172 n.2 (3d

---

[6] Plaintiffs purport to bring this action on behalf of an overlapping but different category of individuals for damages purposes:  "All New Mexico criminal defendants who were denied the opportunity for pre-arraignment liberty and criminal defendants who are or who were (but are no longer) subject to the liberty-restricting conditions of pre-trial release permitted by the Supreme Court Rules or the Arnold Tool…".  *Id*. ¶ 88.

Cir. 2016) (quoting 3 William B. Rubenstein, *Newberg on Class Actions* § 7:9 (5th ed. 2013)); *see also Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474-76 (7th Cir. 1997) (deciding dispositive motion prior to ruling on class certification was an appropriate way to deal with meritless litigation); *Webster v. Royal Caribbean Cruise Lines, Ltd*., 124 F. Supp. 2d 1317, 1321 (S.D. Fla. 2000) ("The vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification.") (citation omitted).

At this point in time, no class has been certified, and Plaintiffs have not even filed a motion for class certification.  Accordingly, the Court should consider only the claims of the named plaintiffs in ruling on Judicial Defendants' Motion to Dismiss.  *See Speyer v. Avis Rent a Car Sys., Inc*., 415 F. Supp. 2d 1090, 1094 (S.D. Cal. 2005) ("[C]ourts generally consider only claims of named plaintiffs in ruling on [a] motion to dismiss prior to class certification") (ellipsis omitted).

## IV.    CONCLUSION

For the foregoing reasons, the New Mexico Judicial Defendants respectfully request that the Court dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted, lack of standing and immunity from suit.

Respectfully Submitted,

HECTOR H. BALDERAS
New Mexico Attorney General

By: */s/ Ari Biernoff*

Ari Biernoff
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4058 telephone
(505) 490-4881 facsimile
abiernoff@nmag.gov

*Counsel for New Mexico Judicial Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I certify that I filed the foregoing *Motion to Dismiss* on August 18, 2017 using the ECF System, which will send notification to all counsel of record.

*/s/ Ari Biernoff*