UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARLENE COLLINS, individually and
on behalf of all others similarly situated, et al.,

**EXHIBIT B**

Plaintiffs,

v.                                                            1:17-cv-0076-RJ-KK

CHARLES DANIELS, individually and
in his official capacity, et al.,

Defendants.

## DECLARATION OF DORI E. RICHARDS

I, Dori E. Richards, state and declare as follows:

1. I received a Juris Doctorate degree from Vermont Law School in 1996. While in Law School, I received several awards for Best Oralist and Best Briefing from the Moot Court Advisory Board, and was also a competitor in nationwide Moot Court competitions.

2. I was admitted to practice in Arizona in 1997 and in Colorado in 2015. I have also been admitted to, and practice in the United States District Courts for the Districts of New Mexico, Arizona, Colorado, Western District of Texas, and Northern District of Texas. I am additionally licensed to practice in the United States Court of Appeals for the Federal Circuit and the Tenth Circuit.

3. I served as a federal attorney with the U.S. Department of the Interior, Office of the Solicitor from 1997 through 2014, as well as a Special Assistant United States Attorney from 2000-2012. There, I represented numerous federal Agency-clients, federal employees and appointees in complex matters and in litigation, including land use proceedings, NEPA, Indian County jurisdictional challenges, Natural Resource Damages cases, Comprehensive

Environmental Response, Compensation and Liability Act (CERCLA), Constitutional Claims, Bivens actions, as well complex federal administrative matters and employment litigation. In such capacity, I practiced in various courts and before federal administrative bodies and have managed multi-million-dollar litigation and settlements.

4. In 2003, I was given the award for the Special Assistant United States Attorney of the Year by the District of New Mexico. I also regularly received performance and STAR awards for my legal work in the Department of the Interior.

5. Since 2014, I have been a managing partner in Western Agriculture, Resources and Business Advocates, LLP (WARBA, LLP). Our practice is a general law practice and consists of offensive litigation in numerous federal and state courts involving environmental matters, Federal and state land use proceedings, water rights, agricultural and ranching industries, FOIA/IPRA and constitutional challenges involving federal, state and local governmental action.

6. WARBA, LLP often represents clients who have been marginalized by governmental action, including a violation of personal or constitutional rights. Because of the nature of such suits, their difficulty and possibility of drawing government hostility, these clients have a difficult time finding attorneys to bring governmental action cases. Our practice strives to provide legal counsel or the opportunity for legal consultation to many clients who would otherwise be denied representation.

7. Clients in the above action, suffered from similar challenges. Many attorneys were fearful of taking on a government challenge that include the judiciary. Our agreement to represent these clients ensured they would have legal representation to seek a clarification and decision regarding the breadth and intent of the Eighth Amendment to the Constitution as to the

right to bail and whether the actions of the State Judiciary impermissibly tread on the protections afforded by the constitutionally enacted separation of powers.

8. Prior to preparing the *Collins* Complaint, my law partner and I discussed the case at length. We met with clients over the telephone and in person on at least 2 occasions, lasting several hours, to review factual assertions and bases.

9. We also reviewed filings in a companion case proceeding in the District of New Jersey and contacted counsel in that case to discuss the proceedings and the factual differences in the cases.

10. We reviewed the legislative activity that resulted in the refusal of the Legislature to adopt the wholesale changes to bonding, that Justice Daniels initiated with the legislature - the proper means to effect a change in laws. We also reviewed the background of the recent Constitutional amendment and discussed the background and intent with client legislators and others appearing in the legislature.

11. We reviewed the rules issued by the state Supreme Court that decimated and destroyed the bond industry in New Mexico that were spearheaded by Justice Daniels.

12. Legal review of the Eight Amendment to the federal and state Constitutions was undertaken, as well as the historical application of right to bail.

13. Constitutionally mandated separation of powers is a legal doctrine of which we have experience and have briefed in the past. Legal consideration and review of the requisite separation of powers between the state branches of government was also undertaken in the context of this case and known facts, as we developed the Complaint.

14. By initiation of the *Collins* case, our clients hoped to place a spotlight on impermissible changes in the law that impacted the State and its citizens under the guise of

merely implementing ministerial rules by the Judiciary, instead of through a properly vetted legislative process with existing abuse protections.

15. In addition, and as evidenced by the disparate positions taken in this case, clarification of the breadth of the Eighth Amendment and the language preventing imposition of excessive bail was desired from the Federal Court's in initiating this suit, *i.e.* that the right to bail is a necessary component of the Amendment if excessive bail is prohibited. This position is consistent with other constitutional interpretations, such as the right to not be deprived of property without due process, which necessarily assumes a right to property in the first place.

16. Also increasingly important in New Mexico is legal clarification regarding the breadth and permissible scope of each branch of state government, to give effect to a "separation of powers." This clarification is important to the State and its citizens, as there has been an increasing overstepping of authority from the Executive Branch (primarily from the Attorney General's office) and the Judiciary (as seen by this suit) into the purview of the Legislative Branch. These issues were vetted before filing the complaint in this case and are important questions to be vetted in the Courts.

17. In Biernoff's Rule 11 Motion, he references several other cases that he alleges were without merit and which he suggests forms the basis of a sanctions motion in this case. Primarily, Biernoff suggests that since the cases were not ultimately successful, they lacked any merit and were frivolous. Such assertion represents a fundamental misapprehension of the practice of law as well as what is a rule 11 sanctionable act. Rule 11 of the Federal Rules of Civil Procedure provides for sanctions of an attorney in limited circumstances who certifies to the court "a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it." Thus, an attorney certifies by his/her singing and/or filing of such pleading

or paper that its content is based on "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances" and:

> **(1)** it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> **(2)** the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> **(4)** the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11. Rule 11 sanctions are not considered based on winning or losing a case, but rather, whether an attorney has a good faith basis in the facts and law to bring an action, which includes seeking a clarification of the law or change of law in appropriate instances.

18. Each case referenced by Biernoff had a good faith basis in fact and law. Each case was well-researched, and each complaint and their averments went well beyond most to ensure well-developed factual bases, fully understanding the challenges to suit if immunity defenses were raised. Simply because a case was not ultimately successful does not equate with frivolity in the context of Fed. R. Civ. Pro., Rule 11. If such was the case, lawyers would not seek changes in the law if any case were on-point or risk affirmative suits, as in litigation (absent settlement) one party wins and another loses. Such loss, under Biernoff's theory, should result in sanctions for brining a non-meritorious case.

19. Ari Biernoff has been an assigned attorney or has otherwise become involved in several cases involving my business partner, A. Blair Dunn. Mr. Biernoff has obvious personal and ideologically differences with Mr. Dunn and has engaged in a pattern of denigration and harassment of him, aimed at destroying his business, impair his right to engage as an attorney as well as seeking to impact his domestic proceedings. In this vein, Biernoff's legal and litigation

actions are appear taken primarily with the intent to retaliate and harass. This conduct has been personally observed, has been displayed in Court proceedings and has been reduced to a variety of writings including emails as well as the tenor of Mr. Biernoff's motion practice.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

_____
Dori E. Richards