## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DARLENE COLLINS, et al.,**

     **Plaintiffs,**

**v.**                                            **1:17-cv-00776-RJ-KK**

**CHARLES W. DANIELS, Individually and in**
**His Official Capacity, et al.,**

     **Defendants.**

---

## JUDICIAL DEFENDANTS' REPLY IN FURTHER SUPPORT OF THEIR MOTION FOR SANCTIONS PURSUANT TO RULE 11 OF THE FEDERAL RULES OF CIVIL PROCEDURE

New Mexico Judicial Defendants submit this reply memorandum of law in further support of their motion to impose sanctions on Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure (the "Rule 11 Motion").

Plaintiffs concede that "sanctions are clearly appropriate whenever a reasonable inquiry has or would have indicated that the legal or factual basis of a claim is untenable."  Plaintiffs' Response to Rule 11 Motion ("Response") at 2.  Judicial Defendants agree.  Plaintiffs' conduct in filing and failing to withdraw the Amended Complaint consistently meets that standard, and therefore sanctions should be imposed sufficient "to deter repetition of the[ir] conduct or comparable conduct by others similarly situated."  Fed. R. Civ. P. 11(c)(4); *see also Dodd Ins. Servs., Inc. v. Royal Ins. Co. of Am.*, 935 F.2d 1152, 1159 (10th Cir. 1991) ("Deterrence is … the primary goal of [Rule 11] sanctions.") (citation and brackets omitted).

## I.      ARGUMENT AND AUTHORITIES

### A. Plaintiffs' Counsel Asserted Unsupportable Claims, and Failed to Argue at Any Point for a Modification or Reversal of Existing Law.

An attorney may avoid a Rule 11 sanction by demonstrating that a pleading's "claims, defenses and other legal contentions are warranted … by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(b)(2).  That principle, however, requires the attorney to actually advance an argument for changing existing law or establishing new law, not simply to state after-the-fact that he or she has done so as a defense to a Rule 11 motion.  "[P]ost-hoc sleight of hand does not justify, for Rule 11 purposes, an empty or misleading presentation in the first instance."  *In re Ronco, Inc.*, 105 F.R.D. 493, 498 (N.D. Ill. 1985).

In opposing the Rule 11 Motion,[1] Plaintiffs for the first time embrace the notion that they are pursuing a wholesale change to virtually every facet of law addressed in Judicial Defendants' Motion to Dismiss.  *See* Response at 2-3 (Plaintiffs describing their Amended Complaint as "seeking to change or clarify the law which is the very lifeblood of the law"); *id.* at 9 (Plaintiffs characterizing their position in this case as "seeking to make 'new law' [which] falls squarely outside of Rule 11 sanctionable conduct.").  Plaintiffs' revisionist account of their own conduct, though, is easily discredited by a review of the key arguments Judicial Defendants asserted in support of dismissal and Plaintiffs' responses to those arguments:

### 1.  *Fourth Amendment Claims*

In their Motion to Dismiss [ECF Dkt. #11, at 7] and Response in Opposition to Plaintiffs' Corrected Motion for Preliminary Injunction [ECF Dkt. #15, at 10-11] Judicial Defendants

---

[1] Plaintiffs generally address the constitutional arguments in their reply in further support of their Motion for Preliminary Injunction [ECF Dkt. #24], and arguments regarding standing and immunity in their response to Judicial Defendants' Motion to Dismiss [ECF Dkt. #23].

explained how governing law, *Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007), precludes Plaintiffs' Fourth Amendment claims. Plaintiffs did not even acknowledge that decision, which determined that challenges to conditions of pretrial release should not be analyzed as an unreasonable search or seizure under the Fourth Amendment. *See* Plaintiffs' Reply to Corrected Motion for Preliminary Injunction [ECF Dkt. #24] at 9-10. Instead, Plaintiffs resorted to empty rhetoric, *see id*. at 9 ("The Judicial Defendants' disregard of plaintiffs' rights is disappointing"), and conclusory statements, *id*. at 9-10 ("It is beyond dispute that restrictive pretrial release conditions like electronic monitoring, mandatory drug and alcohol testing, and home detention constitute Fourth Amendment searches or seizures."). Plaintiffs do not offer a single citation to any authority permitting a challenge to conditions of pretrial release through the Fourth Amendment. And at no point in several rounds of briefing did Plaintiffs argue that *Becker* should be modified or reversed, or even attempt to distinguish that decision.

### 2. *Fourteenth Amendment Claims*

Plaintiffs' Amended Complaint claimed that "[b]y subjecting Plaintiff Collins and other presumptively innocent criminal defendants to denial of pre-arraignment release, restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty." Amended Complaint [ECF Dkt. #7] ¶ 138; *id*. ¶ 158 (alleging that Judicial Defendants imposed "intrusive electronic monitoring" on Darlene Collins). In the very same pleading, Plaintiffs confirmed the falsity of those statements, admitting that "[u]ltimately, no conditions were imposed upon [Collins's] release post-arraignment and pre-trial other than a verbal order from the Court that she was being released." *Id*. ¶ 75 (emphasis added).

Accordingly, in moving to dismiss and opposing Plaintiffs' Motion for Preliminary

Injunction, Judicial Defendants made clear that Plaintiffs cannot state a claim for any procedural due process violation.  Plaintiffs utterly failed to even mention procedural due process in either their response to Judicial Defendants' Motion to Dismiss or in their reply in support of their Motion for Preliminary Injunction, effectively conceding that they have no basis for asserting such a claim. *See Mulford v. Altria Grp., Inc*., 242 F.R.D. 615, 622 n.5 (D.N.M. 2007) ("Simply stating that an argument is not conceded is, in effect, a failure to respond.  Failure to respond to an argument is generally deemed an acquiescence.").

Similarly, Judicial Defendants demonstrated that Plaintiffs' substantive due process claim lacks any arguable basis in law for a variety of reasons.[2]  Under Tenth Circuit precedent, where a constitutional amendment provides an explicit source of protection, that amendment – rather than a generalized notion of substantive due process – must guide the analysis of the plaintiff's claims. *See* Motion to Dismiss at 9-10, Response in Opposition to Motion for Preliminary Injunction at 14-15 (citing *Taylor v. Meacham*, 82 F.3d 1556, 1560 (10th Cir. 1996) and *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (plurality opinion)).  Plaintiffs' response is limited to pointing out that *United States v. Salerno*, 481 U.S. 739 (1987), analyzed both Eighth Amendment and substantive due process claims, an argument that is essentially non-responsive given that *Albright* followed *Salerno* by nearly a decade.

In addition, Plaintiffs fail to show that immediate access to commercial bail bonds is a fundamental right under a substantive due process analysis, do not allege that Collins is a member of a suspect class, and cannot plausibly argue that regulating pretrial release and detention fails to qualify as a legitimate governmental interest.  *See* Motion to Dismiss at 10-11, Response in

---

[2] Plaintiffs agree that a frivolous claim is one that "is utterly implausible and lacks any arguable basis, or is characterized by abuse or egregiousness."  Response at 5.

Opposition to Motion for Preliminary Injunction at 15-16.  Once again, in their responses Plaintiffs simply intone that they are right and Judicial Defendants are wrong. *See* Reply in Support of Motion for Preliminary Injunction at 12 ("Yet here the Judicial Defendants without support and without authority announce that the deprivations of pre-arraignment and pre-trial liberty suffered at the hands of the Supreme Court Rules and Arnold Tool are not 'arbitrary and capricious.'"). Conspicuously, Plaintiffs never identify any support in law for their viewpoint that the 2017 Rules violated Collins's or any other Plaintiff's substantive due process rights, and never ask the Court to modify existing law governing a substantive due process analysis or to establish new law.

### 3.  *Eighth Amendment Claims*

*Salerno* and other United States Supreme Court decisions make clear that there is no *per se* right to bail, let alone to money bail.  *See* Motion to Dismiss at 5-7, Response to Motion for Preliminary Injunction at 7-9.  Plaintiffs do not argue that *Salerno* should be modified or reversed, or that this Court should create new law; nor do they identify a single authority from any jurisdiction that supports their claim that every criminal defendant has the constitutional right to the "option" of commercial bail in all cases, and that commercial bail bondsmen in turn have the right to sue judges in federal court to vindicate that right on behalf of unknown prospective customers.  Instead of confronting *Salerno* and other precedent, Plaintiffs resort to bromides, stating that "New Mexico has no … authority to repeal the Eighth Amendment." Response to Motion to Dismiss at 6.  A pleading, claim or argument is frivolous if it has "no factual and legal support in the record."  *Indus. Risk Insurers v. M.A.N. Gutehoffnungshutte GmbH*, 141 F.3d 1434, 1448 (11th Cir. 1998) (citation omitted).  It is difficult to see how Plaintiffs can plausibly argue that their Eighth Amendment claim is not frivolous where they failed to make any effort to identify support for that claim or to argue for a change in existing law.

### 4.  *Legislators' Standing and Separation-of-Powers Claim*

Among other incurable defects with the Amended Complaint's separation-of-powers claims, Tenth Circuit law bars those claims as a matter of law because they only seek redress for an institutional injury.  *See* Motion to Dismiss at 21 (citing *Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016)).  Plaintiffs do not argue for the modification or reversal of *Kerr* and the other authorities Judicial Defendants identified, or request the creation  of new law, but simply state that case is "not on point with the type of legislative action issue [sic] in those cases [cited by Judicial Defendants] and as such, they are not factually or procedurally on point."  Response to Motion to Dismiss at 14.  Plaintiffs' attempt to distinguish the cases cited by Judicial Defendants is limited to arguing that those cases involved different facts; but perfect identity of facts is never a prerequisite for a prior appellate decision to control.  *See Casey v. City of Federal Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007) (the law does not require a "scavenger hunt for prior cases with precisely the same facts").

Here, it does not matter that Plaintiffs believe they are challenging "a complete usurpation of power in violation of the separation of powers," *id*. at 15; they are seeking to vindicate an alleged injury that affects the Legislator Plaintiffs in exactly the same fashion as all other legislators, and therefore their claims are unquestionably barred by *Kerr*.  Plaintiffs simply ignore *Kerr* rather than arguing for its modification or reversal, and again fail to identify a single authority from any court that permits legislators to sue judges for a purely institutional injury.

### 5.  *Standing of Other Plaintiffs*

Ironclad precedent requires a plaintiff to connect her claimed injury to a wrongful act undertaken by a defendant.  *See Green v. Haskell County Board of Comm'rs*, 568 F.3d 784, 793 (10th Cir. 2009).  Plaintiffs could have, but did not, argue for a change in that law to permit them

to challenge electronic monitoring and home detention through Darlene Collins, even though she was never subjected to either of those conditions of release and therefore suffered no cognizable injury even assuming the truth of the all factual allegations in the Amended Complaint.   In Plaintiffs' view, Judicial Defendants' undisputed showing that Collins lacks standing is a mere "quibble" because "all of Collin's [sic] liberty was deprived," Response to Motion to Dismiss at 5-6.   But Plaintiffs never identify any condition of release actually imposed on Collins that even allegedly violated her (or the bail industry's, or the Legislator Plaintiffs') constitutional rights.

Similarly, Judicial Defendants explained that a litigant like Bail Bond Association typically lacks third-party standing to sue on behalf of prospective future customers like Darlene Collins. *See* Motion to Dismiss at 17 (citing *Kowalski v. Tesmer*, 543 U.S. 125, 131 (2004)). Plaintiffs never identified any contrary law or any reason why *Kowalski's* application should be limited, distinguished or overruled.   Instead, they changed horses midstream and began asserting that Bail Bond Association appears in this action by virtue of associational standing.   *See* Response to Motion to Dismiss at 7-11.

But even if Bail Bond Association has standing to sue on behalf of its member companies, a point Judicial Defendants dispute, that does not eliminate the requirement that Plaintiffs must establish a meaningful connection between Bail Bond Association and the alleged injuries to Collins; in other words, associational standing is not a magic wand that confers third-party standing where it otherwise does not exist.  *See Pennell v. City of San Jose*, 485 U.S. 1, 7 (1988) ("[A]n association has standing on behalf of its members only when its members would otherwise have standing to sue in their own right") (citation and internal quotation marks omitted).; *see also A Helping Hand v. Baltimore County*, 515 F.3d 356, 363 n.3 (4th Cir. 2008) (distinguishing third-party standing, which "permits a plaintiff to bring suit on behalf of a third party *for injury done to*

7

*the third party* in certain circumstances when the third party cannot effectively protect its own interest," from associational standing, which "permits an organization to bring suit on behalf of its members *for injury done to its members* when … its members would have standing to sue in their own right.").  In the face of Plaintiffs' inability to identify any legal authority for their theory of Bail Bond Association's standing, the Court may properly conclude that no such support exists.

### 6.   *Money Damages Claims Against Judicial Defendants*

There is no dispute that the New Mexico Supreme Court has the authority under state law to promulgate rules governing state court proceedings.  Similarly, there is no dispute that the New Mexico Supreme Court validly promulgated the 2017 Rules.  Those facts should end the inquiry into whether Plaintiffs may continue to demand an award of monetary damages against the New Mexico judiciary, regardless of what grievance Plaintiffs might nurse against the judiciary's (and the legislature's, and the voters') support of bail reform.  But Plaintiffs persist in these groundless claims not by identifying a single decision that supports a lawsuit for damages like this one, or by arguing for a change in the well-established law of immunity, but by comparing Judicial Defendants' promulgation of the 2017 Rules to a judge who orders an attorney to be beaten.  Response to Rule 11 Motion at 12.

Plaintiffs also make the false statement that the *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980), "provided that declaratory and injunctive relief are available where the [state supreme court's] legislative authority over bail was not completely vested in another branch of government."  Response to Rule 11 Motion at 14.  That decision had nothing to do with bail, but with the Virginia Supreme Court's authority to promulgate disciplinary rules for the Virginia state bar.  The United States Supreme Court found the justices absolutely immune from suit for claims relating to their enactment of court rules, which the Court determined were actions

taken in the justices' legislative capacity. *Supreme Court of Virginia*, 446 U.S. at 731. No decision of the United States Supreme Court or any other court has overruled or revisited that holding.

Of no application whatsoever to this case, the Supreme Court also concluded that because Virginia law gave the Virginia Supreme Court the "independent authority of its own to initiate [disciplinary] proceedings against attorneys," that court and its justices were proper defendants in a suit for purely declaratory and injunctive relief in their enforcement capacity only. *Id*. at 736. Even if that determination did apply here, *Supreme Court of Virginia* gives no support to Plaintiffs' claim for <u>money damages</u>. In the presence of United States Supreme Court precedent barring their claims, and in the absence of any argument for a modification or reversal of that law, Plaintiffs' demand for money damages against individual New Mexico Supreme Court justices, state court judges, and court personnel can only be characterized as frivolous.

### 7. *Absence of Specific Allegations Against All Individual Judicial Defendants*

Judicial Defendants pointed out that in addition to numerous and fatal legal shortcomings, the Amended Complaint fails to offer any "specific allegations of fact about any constitutional violations (or indeed any actions at all) on the part of the Supreme Court Justices, Judge Nash, Judge Alaniz, Mr. Noel or Mr. Padilla," and only mentions the individual Judicial Defendants in the initial recitation of parties. Motion to Dismiss at 14. Such a failure of pleading requires dismissal. *See Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042, 1047-48 (9th Cir. 2008) (complaint that did not answer the basic questions of "who, did what, to whom" failed to state a claim); *see also Ledbetter v. City of Topeka*, 318 F.3d 1183, 1188 (10th Cir. 2003) (affirming dismissal where complaint "fails to allege how the individual defendants participated in the alleged violation" of the plaintiffs' rights). Although they had at least two opportunities to do so, Plaintiffs never responded to this showing.

In sum, Plaintiffs now claim that they initiated this action to obtain a modification or reversal of existing law, or the creation of new law, but their briefing demonstrates otherwise. Plaintiffs state they "have always been aware that the claims brought here would likely move to the Circuit Court for further determination."  Response at 9.  The bare fact that Plaintiffs intend to pursue an appeal if they receive an adverse ruling does not *ipso facto* constitute "a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law."  Rather, Plaintiffs need to actually articulate a reason why existing law should be reversed or modified.  *See Fox v. Acadia State Bank*, 937 F.2d 1566, 1570 (11th Cir. 1991) (plaintiffs did not make a good-faith argument to modify or reverse binding appellate law because "they did not refer to it at all"); *Thrush v. Morrison*, 665 F. Supp. 372, 377 (M.D. Pa. 1987) (Where the plaintiff mentioned a desire to modify or reverse existing law "[o]nly *after* the filing of the Rule 11 motion," sanctions properly imposed); *Sada v. City of Altamonte Springs*, 2012 WL 503840 at *9 n.10 (M.D. Fla. Feb. 15, 2012) (same).

Plaintiffs cannot plausibly defeat a Rule 11 motion simply by stating, without any explanation or analysis, that binding precedent is inapplicable or incorrect.  *See Knipe v. Skinner*, 146 F.R.D. 58, 61 (N.D.N.Y. 1993) (Rule 11 sanctions properly imposed where counsel "simply insists that [prior decisions] are wrong," without providing the court with any support for his point of view).  Yet that is all Plaintiffs offer now that Judicial Defendants have laid bare the absolute lack of legal support for every claim advanced in the Amended Complaint.

### B. The First Amendment Does Not Save Plaintiffs From Appropriate Rule 11 Sanctions.

In opposing the Rule 11 Motion, Plaintiffs repeatedly, albeit tangentially, invoke the First Amendment, apparently claiming a constitutional right to litigate as recklessly as they please without any consequences.  *See* Response at 21 (assailing Judicial Defendants' "displeasure with

Plaintiff's [sic] suit or … as to the exercise of Plaintiff's First Amendment rights"); *id.* (complaining that Judicial Defendants' actions to defend themselves in this action are "impacting the exercise of appropriate First Amendment rights"). Contrary to Plaintiffs' suggestion, the First Amendment does not immunize everyone who sues a governmental actor from Rule 11. "Just as false statements are not immunized by the First Amendment right to freedom of speech … baseless litigation is not immunized by the First Amendment right to petition." *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 743 (1983); *see also In re Harper*, 725 F.3d 1253, 1261 (10th Cir. 2013) (because "the First Amendment does not protect the filing of frivolous motions," the sanctioned attorney's argument that his actions were constitutionally protected was "meritless"); *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 208 F.3d 885, 891 (10th Cir. 2000) ("[T]he right to petition is not an absolute protection from liability.").

In addition, in this lawsuit Judicial Defendants' role is as a party defendant, not an adjudicator, and in such capacity Judicial Defendants are entitled to the same rights as any other litigant, including the right to defend themselves against unwarranted claims and to seek sanctions for frivolous pleadings. *See Thomas v. Capital Sec. Servs., Inc.*, 836 F.2d 866, 874 (5th Cir. 1988) ("Rule 11 was promulgated … to check abuses in the signing of pleadings") (citation omitted). "The focus of Rule 11 is narrow. It … imposes an affirmative duty on each attorney and on each party, represented or pro se, to conduct a reasonable inquiry into the validity and accuracy of a document before it is signed." *Eisenberg v. Univ. of N.M.*, 936 F.2d 1131, 1134 (10th Cir. 1991). Plaintiffs offer no authority for their intimation that the First Amendment affords a special exemption to otherwise-available Rule 11 sanctions when the frivolous claim or pleading happens to be asserted against the state or state officials.

### C. Even if the Court Concludes That Some Subset of Plaintiffs' Claims are Non-Frivolous, Sanctions Remain Appropriate.

11

"A pleading containing both frivolous and nonfrivolous claims may violate Rule 11. To conclude otherwise 'would allow a party with one or more … meritorious claims to pepper his complaint with one or more highly advantageous, yet wholly frivolous, claims, for that party would be assured that … his meritorious claim(s) would shield him from sanctions.'" *Dodd Ins. Servs.*, 935 F.2d at 1158 (citation omitted); *see also Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 664 (11th Cir. 2004) ("[I]n the ordinary Rule 11 context, where a complaint contains multiple claims, one nonfrivolous claim will not preclude sanctions for frivolous claims."); *Holgate v. Baldwin*, 425 F.3d 671, 677 (9th Cir. 2005) (same) (citation omitted). Plaintiffs' Amended Complaint contains so many baseless claims that even if the Court finds some portion of that pleading to be non-frivolous, sanctions are still required to deter Plaintiffs, their counsel and other parties from filing dramatic but utterly unsupportable lawsuits.

## II.    CONCLUSION

For the reasons set forth above and in their initial Motion, Judicial Defendants respectfully request that the Court enter an order imposing sanctions against Plaintiffs' counsel pursuant to Federal Rule of Civil Procedure 11 for filing and pursuing this frivolous cause.

Respectfully Submitted,
HECTOR H. BALDERAS
New Mexico Attorney General

By: */s/ Ari Biernoff*

Ari Biernoff
Assistant Attorney General
Post Office Drawer 1508
Santa Fe, NM 87504-1508
(505) 490-4058 telephone
(505) 490-4881 facsimile
abiernoff@nmag.gov

*Counsel for New Mexico Judicial Defendants*

12

## <u>CERTIFICATE OF SERVICE</u>

I further certify that I filed the foregoing *Reply* on October 31, 2017 using the ECF system, which will send notification to all counsel of record.

*/s/ Ari Biernoff*