IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DARLENE COLLINS, *et al.*,
     *Plaintiffs,*

v.
                        No. 1:17-CV-00776-RJ

CHARLES W. DANIELS,[1] *et al.*,
     *Defendants.*

## ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

BEFORE THE COURT are Defendants Charles W. Daniels, Edward L. Chavez, Petra Jimenez Maez, Barbara J. Vigil, Judith K. Nakamura, the New Mexico Supreme Court, Nan Nash, James Noel, the Second Judicial District Court, Henry A. Alaniz, Robert L. Padilla, Bernalillo County Metropolitan Court, and Board of County Commissioners of the County of Bernalillo's (collectively, "Defendants") Motions to Dismiss (Docs. 14, 59), and Plaintiffs Darlene Collins, Bail Bond Association of New Mexico, Richard Martinez, Bill Sharer, Craig Brandt, and Carl Trujillo's (collectively, "Plaintiffs") Opposed Motion to Amend Complaint (Doc. 31). After due consideration, Defendants' Motions to Dismiss shall be **GRANTED** (Docs. 14, 59), and Plaintiffs' Motion to Amend shall be **DENIED** (Doc. 31).

## I.    BACKGROUND

This dispute centers on the constitutionality of the New Mexico Supreme Court Rules regarding pretrial release and detention in criminal proceedings adopted pursuant to Supreme Court Order No. 17-8300-005 effective on July 1, 2017 ("2017 Rules"). Plaintiffs are the Bail Bond Association of New Mexico, three New Mexico Senators, one member of the New Mexico House of Representatives, and Darlene Collins, a criminal defendant who has been charged in New Mexico state court with aggravated assault, a fourth-degree felony, and released on nonmonetary conditions pending trial after her first appearance before a Bernalillo County Metropolitan Court judge. (Doc.

---

[1] Plaintiffs incorrectly identify Justice Charles Daniels of the New Mexico Supreme Court as "Charles W. Daniel" in the caption of their Complaint. (Doc. 56 at 1).

56 at ¶ 18).  Defendants are the New Mexico Supreme Court and all of its Justices, the Second Judicial District Court and its Chief Judge and Court Executive Officer, the Bernalillo County Metropolitan Court and its former Chief Judge and Court Executive Officer, and the Board of County Commissioners of the County of Bernalillo.[2] (*Id.*).

Plaintiffs allege that in promulgating the 2017 Rules, the New Mexico Supreme Court violated the Eighth Amendment's guarantee against excessive bail, Fourth Amendment protections against unreasonable searches and seizures, and the Due Process Clause of the Fourteenth Amendment.  (*Id.* at ¶¶ 119–29, 131–47, 149–61).  In addition, Plaintiffs assert that the implementation of a pretrial release risk assessment tool in Bernalillo County which was authorized by the New Mexico Supreme Court violates the Eighth Amendment by prioritizing nonmonetary conditions of release.  (*Id.* at ¶ 126).  Plaintiffs ask the Court to declare the 2017 Rules unconstitutional and enjoin enforcement of the 2017 Rules, to award Plaintiffs monetary damages against all Defendants individually pursuant to 42 U.S.C. § 1983, along with attorney's fees under 42 U.S.C. § 1988, and to certify this lawsuit as a class action on behalf of "[a]ll New Mexico criminal defendants who are or will be subject to the liberty-restricting conditions of pre-trial release permitted by the [2017] Rules. . . without having the opportunity to be considered for release on secured bond." (*Id.* at ¶ 86).

On August 18, 2017, the New Mexico Judicial Defendants (all defendants except Bernalillo County) filed their Rule 12 Motion to Dismiss.  (Doc. 14).  On August 28, 2017, Bernalillo County adopted the Motion to Dismiss filed by the New Mexico Judicial Defendants.  (Docs. 18, 59).  On September 1, 2017, Plaintiffs filed their Response to the Motion to Dismiss.  (Doc. 23).  On September 14, 2017, Defendants filed their Reply in support of the Motion to Dismiss.  (Doc. 29).

---

[2] The Court previously granted Defendant Julie Morgas Baca's Rule 12(b)(6) Motion to Dismiss (Doc. 54) on October 25, 2017, and ordered Plaintiffs to properly name the Board of County Commissioners of the County of Bernalillo as a Defendant in this case (Doc. 53).

On September 19, 2017, Plaintiffs filed their Opposed Motion to Amend Complaint. (Doc. 31). On October 3, 2017, the New Mexico Judicial Defendants filed their Response in opposition to the Motion to Amend. (Doc. 34). On October 6, 2017, Bernalillo County filed its Response in opposition to the Motion to Amend. (Doc. 40). On October 17, 2017, Plaintiffs filed their Reply in support of the Motion to Amend. (Doc. 44). The Court heard oral argument at a hearing held on November 27, 2017. This matter is now ready for disposition.

A.    **Historical Perspective on Bail in New Mexico**

Originating in medieval England, bail allowed untried prisoners to remain free before conviction in criminal cases:

> In 1275, the English Parliament enacted the Statute of Westminster, which defined bailable offenses and provided criteria for determining whether a particular person should be released, including the strength of the evidence against the accused and the accused's criminal history. *See* Note, *Bail: An Ancient Practice Reexamined*, 70 Yale L.J. 966, 966 (1961); June Carbone, *Seeing Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 Syracuse L. Rev. 517, 523–26 (1983). In 1679, Parliament adopted the Habeas Corpus Act to ensure that an accused could obtain a timely bail hearing. In 1689, Parliament enacted an English Bill of Rights that prohibited excessive bail. *See* Carbone, *supra*, at 528. Early American constitutions codified a right to bail as a presumption that defendants should be released pending trial. *See* Note, *Bail, supra*, at 967.

*ODonnell v. Harris Cty., Tex.*, — F. Supp. —, 2017 WL 1735456, at *11 (S.D. Tex. 2017). New Mexico's Constitution, like the United States Constitution, forbids "excessive bail." N.M. Const., art. II, § 13. Article II, Section 13 enshrines the principle that a person accused of a crime is entitled to retain personal freedom "until adjudged guilty by the court of last resort." *State v. Brown*, 338 P.3d 1276, 1282 (N.M. 2014) (internal quotation marks and citations omitted). "Once released, a defendant's continuing right to pretrial liberty is conditioned on the defendant's appearance in court, compliance with the law, and adherence to the conditions of pretrial release imposed by the court." *Id.* at 1282.

"At the federal level, the Judiciary Act of 1789 provided an absolute right to bail in noncapital cases and bail at the judge's discretion in capital cases." *ODonnell*, 2017 WL 1735456, at

*15.   The first Congress also proposed the Eighth Amendment to the United States Constitution, which, like the New Mexico Constitution and the English Bill of Rights, prohibits excessive bail. U.S. Const. amend. VIII; N.M. Const., art. II, § 13.  However, neither the United States Constitution nor the New Mexico Constitution explicitly guarantees a right to bail.  *Id.*  Rather, the United States Constitution and the New Mexico Constitution only forbid "excessive bail."  *Carlson v. Landon*, 342 U.S. 524, 545–46 (1952) (the Eighth Amendment does not provide a "right to bail").

The Bail Reform Act of 1966 became "the first major reform of the federal bail system since the Judiciary Act of 1789."  *Brown*, 338 P.3d at 1286; Bail Reform Act of 1966, 80 Stat. 214 (repealed 1984).  The stated purpose of the Bail Reform Act of 1966 was "to assure that all persons, regardless of their financial status, shall not needlessly be detained pending their appearance to answer charges. . . when detention serves neither the ends of justice nor the public interest."  *Id.* at Sec. 2.  The Act included the following key provisions to govern pretrial release in noncapital criminal cases in federal court: (1) a presumption of release on personal recognizance unless the court determined that such release would not reasonably assure the defendant's appearance in court, (2) the option of conditional pretrial release under supervision or other terms designed to decrease the risk of flight, and (3) a prohibition on the use of money bail in cases where nonfinancial release options such as supervisory custody or restrictions on "travel. . . or place of abode" are sufficient to reasonably assure the defendant's appearance.  *Id.* at Sec. 3.  As stated by the New Mexico Supreme Court in *State v. Brown*:

> By emphasizing nonmonetary terms of bail, Congress attempted to remediate the array of negative impacts experienced by defendants who were unable to pay for their pretrial release, including the adverse effect on defendants' ability to consult with counsel and prepare a defense, the financial impacts on their families, a statistically less-favorable outcome at trial and sentencing, and the fiscal burden that pretrial incarceration imposes on society at large.

338 P.3d at 1287.

Congress again revised federal bail procedures with the Bail Reform Act of 1984, enacted as part of the Comprehensive Crime Control Act of 1984. *See* Bail Reform Act of 1984, Pub. L. No. 98–473, § 202, 98 Stat. 1837, 1976 (codified at 18 U.S.C. §§ 3141–3150 (2012)).   The legislative history of the 1984 Act states that Congress wanted to "address the alarming problem of crimes committed by persons on release" and to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released."   S. Rep. 98–225, at 3 (1983), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3185.   The 1984 Act, as amended, retains most of the 1966 Act but "allows a federal court to detain an arrestee pending trial if the Government demonstrates by clear and convincing evidence after an adversary hearing that no release conditions 'will reasonably assure... the safety of any other person and the community.'" *United States v. Salerno*, 481 U.S. 739, 741 (1987) (omission in original) (quoting the Bail Reform Act of 1984) (upholding the preventive detention provisions in the 1984 Act).

The New Mexico Rules of Criminal Procedure provide the mechanism through which a person may effectuate the right to pretrial release afforded by Article II, Section 13 of the New Mexico Constitution. *See* Rule 5–401 NMRA (providing procedures for district courts); Rule 6–401 NMRA (providing procedures for magistrate courts); Rule 7–401 NMRA (providing procedures for metropolitan courts); Rule 8–401 NMRA (providing procedures for municipal courts).   New Mexico modeled its bail rules, which were first adopted in 1972, on the federal Bail Reform Act of 1966. *See* NMSA 1978, Crim. P. Rule 22 (Repl. Pamp. 1980; including the May 1972 New Mexico Supreme Court order); *see also* Committee commentary to Rule 5–401 NMRA (explaining that the rule is modeled on the Bail Reform Act of 1966).   Like the Bail Reform Act of 1966, the New Mexico bail rules establish a presumption of release by the least restrictive conditions and emphasize methods of pretrial release that do not require financial security. *See* Rule 5–401(A) NMRA; *Brown*, 388 P.3d at 1288; *State v. Gutierrez*, 140 P.3d 1106, 1110 (N.M. 2006) (recognizing "that the purpose of the

Federal Bail Reform Act of 1966, from which [the New Mexico] rule is derived, was to encourage more releases on personal recognizance").

Originally, the only valid purpose of bail in New Mexico was to ensure the defendant's appearance in court. *State v. Ericksons*, 746 P.2d 1099, 1100 (N.M. 1987) ("[T]he purpose of bail is to secure the defendant's attendance to submit to the punishment to be imposed by the court."). To further incentivize appearance in court, in the early 1970s, the New Mexico Legislature granted courts statutory authority to order forfeiture of bail upon a defendant's failure to appear, *see* NMSA 1978, § 31–3–2(B)(2) (1972, as amended through 1993), and enacted separate criminal penalties for failure to appear, *see* NMSA 1978, § 31–3–9 (1973, as amended through 1999). Following recognition in the federal Bail Reform Act of 1984 that public safety is a valid consideration in pretrial release decisions, the New Mexico Supreme Court amended the rules to require judges to consider not only the defendant's flight risk but also the potential danger that might be posed by the defendant's release to the community in fashioning conditions of release. *See* Rule 5–401 NMRA (1990) (prescribing that judges consider "the appearance of the person as required" and "the safety of any other person and the community").

The 1972 New Mexico rules specifically incorporated the evidence-based, rather than money-based, procedures that are statutorily required for federal courts. (Doc. 15-1 at 2). Significantly, the New Mexico rules since 1972 have: (a) required release conditions to be set during and not before the defendant's initial court appearance; (b) required release on nonfinancial conditions unless the court makes specific findings that no nonfinancial conditions will reasonably assure court appearance; and (c) directed courts to impose various restrictions of liberty on released defendants that are appropriate in the circumstances of particular cases. (*Id.* at 3). Relying on the money-bond industry, many New Mexico courts routinely required money bonds without judicial determinations of individual risk or ability to pay, in apparent violation of Rule 5–401 and New Mexico's Constitution, and in contrast to the practice of federal courts. *Brown*, 338 P.3d at 1289.

**B.      The 2017 New Mexico Pretrial Release Rules**

In 2014, bail reform was sparked in New Mexico by the *State v. Brown*, 338 P.3d 1276 (N.M. 2014) decision of the New Mexico Supreme Court holding that the use of bail to detain a defendant when less restrictive conditions of release would protect the public violated New Mexico's constitution. *Brown*, 338 P.3d at 1278. As a result of the *Brown* litigation, the New Mexico Supreme Court formed a broad-based *ad hoc* pretrial release advisory committee (the "Committee") to study pretrial release and detention practices in New Mexico and to make recommendations both for improving compliance with existing law and for making remedial changes in the law. (Doc. 15-1 at Ex. 2). On recommendation of the Committee in August 2015, the New Mexico Supreme Court submitted to the New Mexico Legislature a proposed amendment to Article II, Section 13 of the New Mexico Constitution that would facilitate a shift from money-based to risk-based release and detention. (*Id*. at Exs. 3 & 4).

New Mexico voters amended the New Mexico Constitution in 2016 to enshrine the *Brown* holding, with Justice Charles Daniels lending active support to the campaign. (Doc. 15-1 at 6). State constitutional amendments in New Mexico require passage by both houses of the New Mexico Legislature and passage by a majority of New Mexico voters in a general election. (*Id*. at 5). After both chambers of the New Mexico Legislature considered and passed the proposed constitutional amendment and placed it on the general election ballot, an overwhelming majority of New Mexico voters approved the constitutional amendment. (*Id*. at 6).

Following the passage of the amendments to Article II, Section 13 of the New Mexico Constitution, the Committee recommended and the New Mexico Supreme Court agreed that the procedural rules governing release and detention in New Mexico must be updated to comply with and effectuate the new constitutional mandates. (*Id*. at 6). Consistent with its rulemaking procedure, the New Mexico Supreme Court published all proposed rules for public comment in early 2017, and

unanimously promulgated on June 5, 2017, the 2017 Rules that are the subject of this lawsuit with an effective date of July 1, 2017.  (*Id.*).

## C.     The Challenged Risk Assessment Instrument

Plaintiffs seek to prevent the application of the 2017 Rules that allegedly violate Plaintiffs' constitutional rights through the use of the Public Safety Assessment court-based pretrial risk assessment tool developed by the Laura and John Arnold Foundation (the "Public Safety Assessment Tool").  (Doc. 56).  Although the fundamental provisions of Rule 5–401, requiring judges to set conditions of release based on assessments of individual danger and flight risk remained unchanged, the New Mexico Supreme Court promulgated several new procedural rules in 2017:

- Rule 5–409 administers the new detention-for-dangerousness authority that the constitutional amendment conferred on the district courts.
- Rule 5–408 provides early release mechanisms for low-risk defendants in place of the fixed bail schedules that had been created in various localities in apparent violation of the individual judicial risk assessment required by Rule 5–401 and principles of constitutional law.
- The rules were amended to clarify unequivocally that local courts had no authority to create fixed money bail schedules in violation of Rule 5–401 and equal protection requirements.
- Rule 5–403 clarifies and strengthens the authority of courts to amend conditions of release or revoke release entirely for defendants who commit new crimes on release or otherwise will not abide with release conditions.
- Other rules provide expedited appeals by both the prosecution and the defense to review release and detention rulings.
- The New Mexico Supreme Court promulgated equivalent rules for the Magistrate Courts, the Metropolitan Courts, and the Municipal Courts.

(Doc. 15-1 at 6–7).

The 2017 Rules contain two provisions authorizing use of validated risk assessment instruments in determining the likelihood of a particular defendant's risk for committing new offenses on release or failing to appear at future court appearances.  Rule 5–401(C) provides in relevant part:

> In determining the least restrictive conditions of release that will reasonably ensure the appearance of the defendant as required and the safety of any other person and the community, the court shall consider any available results of a pretrial risk assessment

> instrument approved by the Supreme Court for use in the jurisdiction, if any, and the
> financial resources of the defendant. In addition, the court may take into account the
> available information concerning [reciting a list of additional factors the court should
> consider taken from the 1972 federal pretrial release statutes].

(*Id.* at Ex. 10).   Currently, Bernalillo County is the only county in New Mexico authorized by the New Mexico Supreme Court to use a risk assessment instrument in order to conduct a pilot project to determine the effectiveness of the Arnold Foundation Public Safety Assessment Tool.   (*Id.* at 7–8). Following completion of this pilot project, the New Mexico Supreme Court will decide whether to authorize statewide use of the Public Safety Assessment Tool or any other risk assessment instrument under Rule 5–401 as an additional discretionary tool in pretrial release decisions. (*Id.*).

Rule 5–408(C), which authorizes early release of low-risk defendants, may also allow the future use of a risk assessment instrument.  (*Id.* at 8).  The New Mexico Supreme Court has not yet approved any risk assessment instrument for use under that rule and is not expected to consider such an authorization until after it has a chance to assess Bernalillo County's completed experience with the Arnold Foundation Public Safety Assessment Tool pilot project.  (*Id.*).  Importantly, like the federal release and detention provisions on which New Mexico's rules are modeled, New Mexico has not precluded consideration of financially-secured bonds, including commercial bail bonds, where a court determines a money bond is necessary in a particular case to reasonably assure a defendant's return to court, as provided textually in Rule 5–401.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) applies to challenges to a plaintiff's standing. Federal courts are courts of limited jurisdiction and, as the party seeking to invoke federal jurisdiction, the plaintiff bears the burden of proving such jurisdiction is proper.  *See Southway v. Cent. Bank of Nigeria*, 328 F.3d 1267, 1274 (10th Cir. 2003).  A court lacking jurisdiction "cannot render judgment but must dismiss the case at any stage of the proceedings in which it becomes

apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974). Motions to dismiss under Rule 12(b)(1) "generally take one of two forms. The moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell,* 363 F.3d 1072, 1074 (10th Cir. 2004) (internal citation and quotations omitted). Here, Defendants facially attack the sufficiency of the complaint's allegations as to the existence of subject matter jurisdiction. Where a motion to dismiss is based on a facial attack, courts "apply the same standards under Rule 12(b)(1) that are applicable to a Rule 12(b)(6) motion to dismiss for failure to state a cause of action." *Muscogee (Creek) Nation v. Okla. Tax Comm'n,* 611 F.3d 1222, 1227 n.1 (10th Cir. 2010).

**B.      Rule 12(b)(6)**

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994). The sufficiency of a complaint is a question of law, and when considering a Rule 12(b)(6) motion, a court must accept as true all well-pled factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007) ("[O]nly if a reasonable person could not draw. . . an inference [of plausibility] from the alleged facts would the defendant prevail on a motion to dismiss."); *Smith v. United States,* 561 F.3d 1090, 1098 (10th Cir. 2009) ("[F]or purposes of resolving a Rule 12(b)(6) motion, we accept as true all well-pled factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff.").

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555.

To survive a motion to dismiss, a plaintiff's complaint must contain sufficient facts that, if assumed to be true, state a claim to relief that is plausible on its face. *Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). According to the United States Court of Appeals for the Tenth Circuit:

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).

### III.   DISCUSSION

Defendants argue that the Court should dismiss this action in its entirety for lack of subject matter jurisdiction, for failure to state a claim upon which relief can be granted, and on grounds of immunity from suit. (Docs. 14, 59). As a preliminary matter, the Court addresses whether Plaintiffs'

claims are appropriately presented under 42 U.S.C. § 1983, rather than 28 U.S.C. § 2241. Defendants contend that "[e]ven if Collins were subject to conditions of release she believed to be unconstitutional, a lawsuit for constitutional due process violations via § 1983, like this one, is premature at best." (Doc. 14 at 9). "Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Relief under § 2241 requires a plaintiff to exhaust state remedies before seeking federal relief while § 1983 has no exhaustion requirement.

The Court concludes that § 1983 is an appropriate basis for this action. In *Preiser v. Rodriguez*, the Court found that a plaintiff could only seek a federal remedy via the writ of habeas corpus, and not § 1983, when that person "is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment." 411 U.S. 475, 500 (1973). While the Supreme Court of the United States has previously held that a petitioner is sufficiently "in custody" for purposes of habeas corpus even when released on his or her own recognizance, *Justices of Boston Mun. Court v. Lydon*, 466 U.S. 294, 300–01 (1984), the availability of § 1983 as a vehicle to seek relief for an alleged violation of a constitutional right depends, primarily, on the relief sought.

In *Wolff v. McDonald*, 418 U.S. 539, 554–55 (1974), the Court held that although an action seeking restoration of good time credits could be brought only as a petition for habeas corpus, a litigant could sue for damages and injunction under § 1983 based on a claim that good time credits were lost without proper procedural protections. In *Gerstein v. Pugh*, 420 U.S. 103, 107 n.6 (1975), the Court noted that where the relief sought was a hearing, not release from confinement, the action need not be brought as a habeas corpus petition. In *Gerstein*, the constitutional validity of a method of pretrial procedure, rather than its application to any particular case, was the focus of the challenge. Thus, the validity of the criminal conviction of the plaintiff would not be affected by the unconstitutionality of the pretrial procedure in question.

The Supreme Court has further stated that where a petitioner does not seek an "injunction ordering... immediate or speedier release into the community... and a favorable judgment would not necessarily imply the invalidity of their convictions or sentences," he or she may "properly invoke... § 1983." *Skinner v. Switzer*, 562 U.S. 521, 533–34 (2011) (citing *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)) (internal quotations omitted). The Court finds that Plaintiffs do not seek the immediate or speedier release of Collins into the community nor would a favorable judgment in this case imply the invalidity of any subsequent conviction or sentence. For this reason, the Court finds that Plaintiffs have properly invoked § 1983 and need not proceed exclusively through a petition for a writ of habeas corpus.

A.     **Rule 12(b)(1) Motion to Dismiss for Lack of Standing**

Next, the Court considers jurisdictional issues, such as whether Plaintiffs have standing to bring their constitutional claims. Defendants argue that this suit should be dismissed because Plaintiffs lack standing. (Doc. 14). The Court will address the standing of each plaintiff in turn. Article III restricts federal courts to the adjudication of "cases or controversies." U.S. Const. art. III, § 2, cl. 1. "The standing inquiry ensures that a plaintiff has a sufficient personal stake in a dispute to ensure the existence of a live case or controversy which renders judicial resolution appropriate." *Tandy v. City of Wichita*, 380 F.3d 1277, 1283 (10th Cir. 2004). To establish Article III standing, the plaintiff must establish that: (1) he has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of defendants; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by the relief requested. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000); *Tandy*, 380 F.3d at 1283. The party seeking to invoke federal jurisdiction bears the burden of establishing all three elements of standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

1.      **Bail Bond Association of New Mexico**

Bail Bond Association of New Mexico states that it is "a professional membership organization comprised of bail bond businesses" doing business in New Mexico. (Doc. 56 at ¶ 19). The Bail Bond Association of New Mexico complains that the 2017 Rules "created [a] hierarchy effectively prohibiting the lower courts from considering secured bonds without placing untenable work requirements on the lower court judges therein effectively removing the option from consideration by judges and a de facto situation wherein jailhouse bonds where [sic] completely extinguished as an option for pre-arraignment release." (*Id.* at ¶ 51). The Bail Bond Association of New Mexico purports to represent an undefined population of potential customers who prefer pretrial release purchased with money bonds to release on nonfinancial conditions. (*Id.* at ¶ 62).

i.      **First-Party Standing**

The Bail Bond Association of New Mexico does not, in the Complaint, allege a violation of its own rights. Specifically, the Complaint alleges a violation of the right to monetary bail under the Eighth Amendment (as applied to the states through the Fourteenth Amendment), a violation of due process under the Fourteenth Amendment based on an alleged deprivation of liberty to criminal defendants, and a violation of the right against unreasonable searches and seizures under the Fourth Amendment (as applied to the states through the Fourteenth Amendment). (Doc. 56). None of these claims directly addresses the rights of the Bail Bond Association of New Mexico or its member companies.

Defendants assert that the Bail Bond Association of New Mexico cannot maintain a viable cause of action on behalf of its member companies' prospective clients. (Doc. 14). The Court finds that the Bail Bond Association of New Mexico does not, in fact, assert violations of its own constitutional rights. The injury-in-fact requirement mandates that there be "an invasion of a legally protected interest." *Lujan*, 504 U.S. at 560. While the business of the Bail Bond Association of New Mexico's member companies may have been harmed economically by a reduction in the number of

defendants given the option of monetary bail, this harm is not alleged to be the result of an invasion of the Bail Bond Association of New Mexico's legally-protected interest. *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 392 (1988) ("Even if an injury in fact is demonstrated, the usual rule is that a party may assert only a violation of its own rights").

The Eighth Amendment's bail clause protects the interests of criminal defendants, not corporations who seek to provide bail bonds to them. *See Johnson Bonding Co., Inc. v. Com. of Ky.*, 420 F. Supp. 331, 337 (E.D. Ky. 1976) (a bail bond company "does not seek to vindicate its right to be free from excessive bail. A corporation cannot go to jail. Rather, plaintiff seeks to continue in the bail bonding business") (citing *United States v. Raines*, 362 U.S. 17, 22 (1960) ("a litigant may only assert his own constitutional rights or immunities")). Significantly, no member company of the Bail Bond Association of New Mexico has been named as a criminal defendant, has been confined, or has identified a constitutional right that it holds as a corporation that is seeks to vindicate. Likewise, the Due Process and Fourth Amendment claims in Plaintiffs' Complaint do not constitute an invasion of the Bail Bond Association of New Mexico's legally-protected interests, despite the economic harm to the Bail Bond Association of New Mexico's member companies that may allegedly result from the application of the 2017 Rules to their potential customers. Because the Bail Bond Association of New Mexico does not assert its own constitutional rights, the Court finds that the Bail Bond Association of New Mexico lacks first-party standing.

### ii.     Third-Party Standing

Next, Defendants argue that the Bail Bond Association of New Mexico lacks third-party standing. (Doc. 14). The Tenth Circuit recognizes third-party standing. *Aid for Women v. Foulston*, 441 F.3d 1101, 1112 (10th Cir. 2006) (finding that particular relationships, such as the physician-patient relationship, are "sufficiently close for third-party standing."). Third-party standing requires the satisfaction of three preconditions: (1) the plaintiff must suffer injury; (2) the plaintiff and the third party must have a "close relationship"; and (3) the third party must face some obstacles that

prevent it from pursuing its own claims. *Campbell v. Louisiana*, 523 U.S. 392, 397 (1998); *Powers v. Ohio*, 499 U.S. 400, 410–11 (1991).

Assuming that criminal defendants are prevented from entering into a contractual relationship with a bail bond company like those belonging to the Bail Bond Association of New Mexico, and that those defendants have a constitutional entitlement to that monetary bail, the Bail Bond Association of New Mexico still does not articulate how it can satisfy the third necessary precondition to third-party standing.   There are no factual allegations to establish a "close relationship" in the colloquial or commonsense meaning of the phrase. The Bail Bond Association of New Mexico does not allege an existing contractual relationship with any criminal defendant whose rights have been violated.   Regardless, the Court does not see how criminal defendants face obstacles or that there is some hindrance in pursuing their own claims. *Campbell*, 523 U.S. at 397.

In fact, Plaintiffs have named a criminal defendant, Darlene Collins, in this lawsuit and she has faced no obstacle or hindrance in asserting her claims that her constitutional rights were violated. As such, the Court cannot discern a basis to allow for third-party standing for the Bail Bond Association of New Mexico where the "third party" is a named plaintiff actively participating in this lawsuit.   Accordingly, the Court finds that the Bail Bond Association of New Mexico has not satisfied the necessary preconditions to establish third-party standing in this action.   Therefore, the Bail Bond Association of New Mexico's claims against Defendants shall be **DISMISSED**.

### 2.     Criminal Defendant Darlene Collins

Plaintiffs claim by subjecting Plaintiff Darlene Collins "and other presumptively innocent criminal defendants to... restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty." (Doc. 56 at ¶ 139).   Defendants assert Collins was released on the least restrictive terms available as outlined under the 2017 Rules. *See* Rule 5–401(D) NMRA; Rule 7–401(D) NMRA. Defendants argue that Plaintiffs cannot use Collins to challenge "home detention and GPS

monitoring through an ankle bracelet" as she was never subjected to either of those release conditions. *See Brown v. Livingston*, 524 F. App'x 111, 115 (5th Cir. 2013) (parolee lacked standing to challenge GPS monitoring because that condition had not been imposed on him, rendering his claims "hypothetical and conjectural").

The Court is mindful of the requirement under Article III that the plaintiff must show that "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561. After Collins's arrest for aggravated assault, she was released on purely nonmonetary conditions. (Doc. 56 at ¶ 74). Plaintiffs do not allege that Collins was subjected to home detention or required to undergo GPS monitoring through an ankle bracelet. (*Id.*). However, Collins claims that her injury does not solely result from restrictions on her liberty, but rather, an arraignment hearing that violated her rights under the Fourth, Eighth, and Fourteenth Amendments. (*Id.*). Collins alleges she was injured by the holding of a hearing that did not afford her constitutional rights, including the alleged right to have "a non-excessive secured bond" considered on an equal footing with other conditions of release. (Doc. 56 at 5). The Court finds Collins has standing to assert these claims. The redress she seeks is a process to set conditions of release where monetary bail is given equal consideration as nonmonetary conditions. Accordingly, the Court finds Collins has adequately pled the necessary elements of Article III standing.

### 3.     Individual New Mexico State Legislators

Plaintiffs claim that because the New Mexico Legislature has "exercised its legislative authority to pass laws to preserve the public peace," the New Mexico Supreme Court cannot promulgate procedural rules for pretrial release and detention. (Doc. 56 at ¶ 80). "[A] threshold question in the legislator standing inquiry is whether the legislator-plaintiffs assert an institutional injury." *Kerr v. Hickenlooper*, 824 F.3d 1207, 1214 (10th Cir. 2016). Institutional injuries "are those that do not zero in on any individual Member," but instead are "widely dispersed" and necessarily impact all members of a legislative body equally. *Id.* In other words, "an institutional

injury constitutes some injury to the power of the legislature as a whole rather than harm to an individual legislator. An individual legislator cannot 'tenably claim a personal stake' in a suit based on such an institutional injury." *Id.*

Plaintiffs concede that the New Mexico Constitution gives the New Mexico Supreme Court the authority "to write rules for the administration of justice in the lower courts." (Doc. 56 at ¶ 77). Yet, Plaintiffs complain that the New Mexico Supreme Court's promulgation of the 2017 Rules and the lower courts' enforcement of those Rules intrude upon the authority of the New Mexico Legislature. (*Id.*). These alleged injuries are to the New Mexico Legislature as a whole and not to Senator Richard Martinez, Senator Bill Sharer, Senator Craig Brandt, and Representative Carl Trujillo as individual legislators.

The Court is of the opinion that a single legislator, acting individually, does not have standing to prosecute an injury to the entire legislature. Plaintiffs do not claim they have been authorized to prosecute this action on behalf of the New Mexico Legislature. Further, the legislator Plaintiffs do not allege they have any specific interest separate and apart from their legislative colleagues who have not joined this lawsuit. Because the legislator Plaintiffs claim an institutional injury, the Court finds they do not have standing. *See Kerr*, 824 F.3d at 1214 ("[I]ndividual legislators may not support standing by alleging only an institutional injury."). Accordingly, the legislator Plaintiffs' claims against Defendants shall be **DISMISSED**.

**B.    Rule 12(b)(6) Motion to Dismiss for Failure to State a Claim**

Plaintiffs' Amended Complaint contains three counts: "Count One Violation of Right to Bail (Eighth and Fourteenth Amendments)," "Count Two Deprivation of Liberty Without Due Process of Law (Fourteenth Amendment," and "Count Three Unreasonable Search and Seizure (Fourth and Fourteenth Amendments)." (Doc. 56). During oral argument at the hearing held on November 27, 2017, Plaintiffs also asserted a separation of powers claim, although no such claim is specifically delineated in their Complaint. (*Id.*). Plaintiffs' claims derive from Collins's constitutional rights

under the Fourth, Eighth, and Fourteenth Amendments. (*Id*.). Defendants assert that because Plaintiffs fail to state a claim for any violation of Collins's rights, this action should be dismissed in its entirety. (Docs. 14, 59).

At the outset, the Court notes that the Complaint does not contain specific allegations against each defendant. For example, the only substantive allegations against Bernalillo County are contained in paragraph 49 of the Complaint. (Doc. 56 at ¶ 49). There, Plaintiffs state that Bernalillo County entered into an agreement with the Arnold Foundation to implement the Public Safety Assessment Tool authorized by the 2017 Rules, which allegedly denied criminal defendants "the opportunity to secure their pre-trial release through a secured bond[.]" (*Id*.). These allegations, without more, fail to establish any constitutional violation on behalf of Bernalillo County.

Plaintiffs fail to explain how each individual defendant allegedly committed separate § 1983 violations. Instead, in a conclusory fashion, Plaintiffs lump together Defendants with no effort to distinguish them. Such general, global allegations of fault are not permissible pleading practice under the Federal Rules of Civil Procedure and are insufficient to allege a constitutional violation against any individual defendant. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249–50 (10th Cir. 2008) ("In § 1983 cases, defendants often include the government agency and a number of government actors sued in their individual capacities," and for that reason "it is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state.").

### 1.    Excessive Bail

First, Plaintiffs argue that the 2017 Rules violate the Eighth Amendment rights of Collins and other presumptively innocent criminal defendants. (Doc. 56). Plaintiffs claim the New Mexico Supreme Court "may not. . . restrict the liberty of presumptively innocent defendants without offering the one alternative to substantial pre-trial deprivations that the Constitution expressly

protects—monetary bail." (Doc. 56 at ¶ 9). In simple terms, Collins believes she is entitled under the Eighth Amendment to have monetary bail prioritized above nonmonetary options in the pretrial release decision.

In relevant part, the Eighth Amendment of the U.S. Constitution provides that "[e]xcessive bail shall not be required." U.S. Const. amend. VIII. The Eighth Amendment's prohibition against excessive bail is applicable to the states through the due process clause of the Fourteenth Amendment. *Kennedy v. Louisiana*, 554 U.S. 407, 419 (2008). Plaintiffs argue the Eighth Amendment's prohibition of "excessive bail" presupposes a right to bail as an alternative to pretrial deprivation of liberty for bailable offenses, and the 2017 Rules impermissibly foreclose monetary bail as an option. In other words, Plaintiffs contend that if the Bail Clause of the Eighth Amendment is to have any meaning, it must create a constitutional right to bail.

The Excessive Bail Clause was derived from the English Bill of Rights of 1688 and the 39th chapter of the Magna Carta, which required that "no freeman shall be arrested, or detained in prison. . . unless. . . by the law of the land." *Cobb v. Aytch*, 643 F.2d 946, 959 n.7 (3d Cir. 1981). When Congress considered adoption of the Bill of Rights in 1789, the Excessive Bail Clause "was a noncontroversial provision that provoked very little discussion." *United States v. Edwards*, 430 A.2d 1321, 1328 (D.C. 1981) (en banc), *cert. denied*, 455 U.S. 1022 (1982). As the *Edwards* Court found, "neither the historical evidence nor contemporary fundamental values implicit in the criminal justice system requires recognition of the right to bail as a 'basic human right,' which must then be construed to be of constitutional dimensions." *Id.* at 1331 (citations omitted).

Notably, Plaintiffs fail to explain why the Court should find an implied right to ***monetary*** bail in the Eighth Amendment, as opposed to a general right to be free from any conditions of release pending trial. Traditionally, bail has been defined a multitude of ways, including:

> (1) a security such as cash, a bond, or property; esp., security required by a court for the release of a criminal defendant who must appear in court at a future time;

    (2) *the process by which a person is released from custody either on the undertaking of a surety or on his or her own recognizance;*

    (3) release of a criminal defendant on security for a future court appearance; esp., the delivery of a person in custody to a surety; and

    (4) one or more sureties for a criminal defendant.

Bail, *Black's Law Dictionary* (9th ed. 2009) (emphasis added).   Some of these bail definitions involve money but others do not, such as the one applicable here, release on a criminal defendant's own recognizance.

    While the United States Constitution and the New Mexico Constitution forbid excessive bail, they do not guarantee an absolute right to bail or money bail.  *See* U.S. Const., amend. VIII; N.M. Const., art. II, § 13; *United States v. Salerno*, 481 U.S. 739, 752 (1987) ("The Eighth Amendment addresses pretrial release by providing merely that 'excessive bail shall not be required.'  This Clause, of course, says nothing about whether bail shall be available at all."); *Carlson v. Langdon,* 342 U.S. 524, 545–46 (1952) (holding the Eighth Amendment does not provide for an absolute "right to bail.").  In the landmark case of *United States v. Salerno*, 481 U.S. 739 (1987), the Supreme Court held that the Eighth Amendment "says nothing about whether bail shall be available at all." *Salerno*, 481 U.S. at 752.  Accordingly, the Court concludes that there is no right to money bail implied within the Eighth Amendment.

    Next, Plaintiffs argue that the 2017 Rules violate the Eighth Amendment because New Mexico cannot impose deprivations of liberty, like home detention and electronic monitoring, without first offering money bail.  Plaintiffs complain that the State does not allow monetary bail unless all other nonmonetary options have been exhausted.  *Salerno* articulates the constitutional principles governing the use of preventive detention in the pretrial context, and provides support for the constitutionality of the 2017 Rules.  481 U.S. at 739.

    *Salerno* concerned a facial attack on the federal Bail Reform Act of 1984.  The Bail Reform Act requires courts to detain arrestees charged with certain serious felonies prior to trial when considering the safety of the community under 18 U.S.C. § 3142(f), if the Government demonstrates

21

by clear and convincing evidence after an adversary hearing that no release conditions "will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). The Bail Reform Act is silent as to the level of proof required to establish risk of flight and circuit courts across the country have ruled that flight risk need only be supported by a "preponderance of the evidence." *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) ("The government must prove risk of flight by a preponderance of the evidence, *see, e.g., United States v. Xulam,* 84 F.3d 441, 442 (D.C. Cir. 1996) (per curiam); *United States v. Quartermaine,* 913 F.2d 910, 917 (11th Cir. 1990), and it must prove dangerousness to any other person or to the community by clear and convincing evidence, 18 U.S.C. § 3142(f).")

In upholding the constitutionality of the Bail Reform Act, the *Salerno* Court emphasized that preventative detention that is "regulatory, not penal" does not constitute "impermissible punishment before trial." *Id.* at 746–47. The test for determining whether a preventive detention policy is regulatory or punitive depends, first, on whether there was an express legislative intent to punish; if not, the inquiry turns to whether there is a rational connection between the policy and a non-punitive justification, and then, whether the policy is proportional to that justification. *Id.* at 747. The Court found that the Bail Reform Act was more regulatory in nature, as it "carefully limits the circumstances under which detention may be sought to the most serious of crimes." *Id.* at 739–40. The Court then decided that the restrictions the statute imposed on pretrial liberty could be adequately justified by the compelling government interest in preventing danger to the community. *Id.* at 747.

Notably, the Court "reject[ed] the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly-compelling interests through regulation of pretrial release." *Id.* at 753. The Court explained, "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." *Id.* at 747. Additionally, "[n]othing in the text of the Bail Clause limits permissible considerations solely to questions of flight." *Id.* at 754. Thus, the

Supreme Court in *Salerno* recognized that the legislature can identify interests, such as assuring the safety of the community and persons, including victims or witnesses, which are considered in determining conditions of release aside from the setting a monetary bail.

The 2017 Rules do not forbid commercial bail. In fact, the 2017 Rules explicitly contemplate that courts may require secured bonds for a criminal defendant's release. Rule 5–401(E) & (F), Rule 5–401.2 NMRA. The 1972 Rules presumptively required that a criminal defendant "shall be released pending trial on [her or his] personal recognizance or upon the execution of an unsecured appearance bond," unless the court made written findings that those conditions would be insufficient to ensure the defendant's appearance. (Doc. 15-1 at Exhibit 1). Only if the court made a written determination that release on personal recognizance or an unsecured appearance bond would not ensure the defendant's appearance or would endanger the safety of another person or the community, would the court proceed to consider a secured bond requirement prior to the 2017 Rules. (*Id.*).

The Court is of the opinion that there is no provision in the 1972 Rules, or any other source of law, guaranteeing the option of money bail to criminal defendants in New Mexico. Plaintiffs do not cite a single post-*Salerno* bail case mandating monetary bail, let alone one finding that non-monetary conditions cannot be utilized by a judicial officer when considering the pretrial release of a criminal defendant. Accordingly, the Court finds that Plaintiffs fail to state a claim for any violation of the Eighth Amendment.

### 2.    Due Process

Plaintiffs allege that "[b]y subjecting Plaintiff Collins and other presumptively innocent criminal defendants to denial of pre-arraignment release, restrictive conditions of release, including home detention and GPS monitoring through an ankle bracelet, Defendants intrude on the constitutionally protected right to liberty." (Doc. 56 at 137). Unquestionably, the Due Process Clause applies to pretrial detention. *See United States v. Cos*, 198 F. App'x 727, 732 (10th Cir. 2006) ("[A]t some point due process may require a release from pretrial detention"); *United States v.*

*Theron*, 782 F.2d 1510, 1516 (10th Cir. 1986) ("Although pretrial detention is permissible when it serves a regulatory rather than a punitive purpose, we believe that valid pretrial detention assumes a punitive character when it is prolonged significantly."). Criminal defendants routinely assert their due process rights in arguing for pretrial release as opposed to continued detention. *See, e.g., United States v. Gonzales*, 995 F. Supp. 1299, 1303–04 (D.N.M. 1998).

i.     **Procedural Due Process**

First, Plaintiffs argue the 2017 Rules violate Collins's due process rights because liberty-restricting conditions were considered before monetary bail in her pretrial release determination. The Court has serious doubts that Collins is the appropriate plaintiff to advance a due process claim based on home detention or GPS monitoring since she was not subjected to those specific conditions of release. However, the Court addresses the merits of Plaintiffs' due process claims to avoid the possibility of needlessly prolonging this lawsuit simply by substituting plaintiffs.

Procedural due process requires the balancing of three familiar factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). For any preventive detention decision, the procedural due process inquiry turns on whether a criminal defendant enjoys "procedures by which a judicial officer evaluates the likelihood of future dangerousness [that] are specifically designed to further the accuracy of that determination." *Salerno*, 481 U.S. at 751.

Plaintiff Collins was arrested on charges of aggravated assault, a violent fourth-degree felony, on Sunday, July 2, 2017 at 5:54 a.m. (Doc. 15-3 at ¶ 3). Because Collins was charged with a violent felony, she was required to appear before a Metropolitan Court judge. *See* Rules 5–408 NMRA, 7–408 NMRA. Collins appeared before Metropolitan Judge Courtney Weaks on July 5,

2017. (Doc. 15-3 at ¶ 4). Judge Weaks ordered Collins released on her own recognizance, subject to certain limited conditions set forth in a written order, conditions to which Collins affirmatively agreed. (*Id.*). The 2017 Rules required the court to conduct a hearing and issue an order setting conditions of release within "three. . . days after the date of arrest if the defendant is being held in the local detention center." Rule 7–401(A) NMRA. Collins's hearing was held and the order of release was issued within the required timeframe. (Doc. 15-3).

A condition of release can violate due process if it prevents the courts from evaluating and setting relevant conditions of pretrial release for criminal defendants on an individual basis. *United States v. Torres*, 566 F. Supp. 2d 591, 596 (W.D. Tex. 2008). Yet, the 2017 Rules require courts to evaluate and set appropriate conditions of release on a case-by-case basis. Significantly, Plaintiffs never allege that any actual condition of Collins's release is unconstitutional. (Doc. 56). Further, Plaintiffs do not argue that Collins's conditions of release are vague or unintelligible. (*Id.*). In fact, Plaintiffs state that "[u]ltimately, no conditions were imposed upon [Collins's] release post-arraignment and pre-trial other than a verbal order from the Court that she was being released." (*Id.* at ¶ 74). Since Collins had a pretrial detention hearing on July 5, 2017, with the opportunity to afford herself all of the protections under New Mexico law and the Constitution, and Collins consented on the record to the nonmonetary conditions in exchange for her release from jail, the Court finds that Plaintiffs fail to state a claim for any violation of procedural due process.

### ii.   Substantive Due Process

Plaintiffs also assert a substantive due process claim on Collins's behalf on the ground that "the option of non-excessive bail for a bailable offense is 'fundamental to our scheme of ordered liberty' and 'deeply rooted in this Nation's history and tradition.'" (Doc. 56 at ¶ 140). The substantive component of the Due Process Clause limits what government may do regardless of the fairness of procedures that it employs in order to "guarantee protect[ion] against government power arbitrarily and oppressively exercised." *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998)

(citing *Daniels v. Williams*, 474 U.S. 327, 331 (1986)).   Substantive due process "prevents the government from engaging in conduct that 'shocks the conscience'. . . or interferes with rights 'implicit in the concept of ordered liberty.'"   *Salerno*, 481 U.S. at 746.   "In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception."   *Id.* at 755.

Plaintiffs argue Collins's substantive due process rights were violated because the 2017 Rules prevent her from having the option of posting monetary bail sufficient to ensure her future appearance before being subjected to severe deprivations of pretrial liberty.   (Doc. 56).   Defendants contend that the option of monetary bail is not a fundamental right and need not be considered before nonmonetary conditions of pretrial release are implemented.   (Doc. 14).   "[B]ail is the mechanism employed for centuries by our legal system to preserve the 'axiomatic and elementary' presumption that a person accused but unconvicted of a crime is innocent until proven guilty."   *Coffin v. United States*, 156 U.S. 432, 453 (1895).   However, the Court is of the opinion that purchasing pretrial release with monetary bail does not implicate fundamental rights under a substantive due process analysis.   *See Broussard v. Parish of Orleans*, 318 F.3d 644, 657 (5th Cir. 2003).

As noted above, Plaintiffs' argument fails to distinguish between money bail and nonmonetary conditions of bail, especially in light of *Salerno*.   Plaintiffs do not cite a single post-*Salerno* bail case describing monetary bail as a "fundamental" right.   In *Salerno*, the Court made clear that the government has a legitimate interest in regulating pretrial release and detention.   481 U.S. at 753, 749 (rejecting "the proposition that the Eighth Amendment categorically prohibits the government from pursuing other admittedly compelling interests through regulation of pretrial release," and noting that the government's interest in public safety "is both legitimate and compelling.").

In the present case, the fact that Collins was released on her own recognizance with minimal conditions does not shock the Court's conscience, nor does the absence of a monetary bail option in lieu of, or in addition to, any potential restrictions that are aimed at deterring dangerousness.   (Doc.

15-3 at ¶ 4). Moreover, Collins failed to challenge any nonmonetary conditions of release when she had the opportunity to do so at her pretrial detention hearing. Either way, Plaintiffs present no grounds for finding that a criminal defendant's option to obtain monetary bail is a fundamental right or implicit in the concept of ordered liberty. The Court therefore finds Plaintiffs fail to state a claim for any violation of substantive due process.

### 3. Fourth Amendment

Plaintiffs claim that the 2017 Rules violate the Fourth Amendment rights of Collins and other presumptively innocent criminal defendants to be free from unreasonable searches and seizures. The Amended Complaint alleges that "pre-trial release conditions such as home detention and mandatory reporting to pre-trial services constitute a Fourth Amendment 'seizure.'" (Doc. 56 at ¶ 152 (quoting *United States v. Jacobsen*, 466 U.S. 109, 113 n.5 (1984)). Plaintiffs assert that because the 2017 Rules prioritize nonmonetary conditions, the Rules necessarily "violate[ ] the Fourth Amendment." (*Id.* at ¶ 159).

> The Fourth Amendment mandates that:
>
> [t]he right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. The Fourth Amendment only prohibits "unreasonable" searches and seizures. *Id.* "Reasonableness" is analyzed by a "totality of the circumstances" test, "assessing on the one hand, the degree to which [the search or seizure] intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate governmental interests." *Samson v. California*, 547 U.S. 843, 848 (2006) (internal citations and quotation marks omitted).

While the conditions complained of in this case, such as electronic monitoring or home detention, were not actually imposed on Collins, the Court agrees that under normal circumstances such conditions would likely constitute an intrusion upon an individual's reasonable expectation of

privacy. However, as the Supreme Court has explained, "[o]nce an individual has been arrested on probable cause for a dangerous offense that may require detention before trial, his or her expectations of privacy. . . are reduced." *Maryland v. King*, 569 U.S. 435, 133 S.Ct. 1958, 1978 (2013). Moreover, the state's interest in ensuring a potentially-dangerous defendant's appearance at trial is strong. *Salerno*, 481 U.S. at 749 ("The government's interest in preventing crime by arrestees is both legitimate and compelling."). Thus, in the pretrial-release context, pretrial release conditions such as electronic monitoring and home arrest may well be "reasonable" under the circumstances.

The Supreme Court has held that a judicial officer's determination of the reasonableness of significant intrusions into the liberty or property of an individual under all the circumstances protects the right to be free from unreasonable searches and seizures, as preserved by the Fourth Amendment. *Michigan v. Summers*, 452 U.S. 692, 704–05 (1981); *Johnson v. United States*, 333 U.S. 10, 15 (1948). Likewise, where conditions of pretrial release in a criminal case restrict freedom of movement and can be regarded to that extent as a seizure of the individual, the safeguard of a judicial determination upon the record protects against unreasonable seizures by examining the totality of the relevant circumstances. *Id.*

Again, the Court cannot overlook the fact that Collins was not subjected to any conditions requiring electronic monitoring or home detention. Thus, Collins has not been subjected to any severe restrictions of her liberty as a result of the 2017 Rules. Faced with the risk of pretrial detention, Collins was released on her own recognizance with minimal conditions. (Doc. 15-3 at ¶ 4). Within this context, the Court does not find the pretrial conditions imposed on Collins to be unreasonable. Moreover, the Tenth Circuit has expressly declined to adopt a "continuing seizure" analysis that would deem pretrial release conditions a "seizure" under the Fourth Amendment. *See Becker v. Kroll*, 494 F.3d 904, 915 (10th Cir. 2007) ("To extend liability in cases without a traditional seizure would expand the notion of seizure beyond recognition. . . . [I]f the concept of a seizure is regarded as elastic enough to encompass standard conditions of pretrial release, virtually

every criminal defendant will be deemed to be seized pending the resolution of the charges against him."). As a result, the Court finds Plaintiffs fail to state a claim for any violation of the Fourth Amendment.

### 4.    Separation-of-Powers Claim

Plaintiffs cite to New Mexico's rules of pleading, practice and procedure as the legislative enactment upon which Defendants have encroached. Specifically, NMSA § 38-1-1 states:

> The supreme court of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico for the purpose of simplifying and promoting the speedy determination of litigation upon its merits. Such rules shall not abridge, enlarge or modify the substantive rights of any litigant.

At the hearing held on November 27, 2017, Plaintiffs' counsel argued that the 2017 Rules violate this statute by abridging or modifying the substantive rights of criminal defendants.

As previously discussed, Plaintiffs have not shown that the 2017 Rules violate any constitutional rights of criminal defendants under the Fourth Amendment, Eighth Amendment, or Fourteenth Amendment. The 1972 Rules in existence prior to the 2017 Rules directed courts to apply a presumption of release on nonfinancial conditions, unless a court made specific findings that no non-financial conditions would assure court appearance. Thus, criminal defendants have never been guaranteed the option of monetary bail under New Mexico law in existence before or after the 2017 Rules. Accordingly, Plaintiffs have not identified any "substantive rights" that the 2017 Rules allegedly "abridge, enlarge or modify[.]" NMSA § 38-1-1. Therefore, Plaintiffs fail to state a viable separation-of-powers claim.

Next, Plaintiffs claim by promulgating the 2017 Rules, the New Mexico Supreme Court has "infringe[d] upon the power of the Legislature to make law." (Doc. 56 at ¶ 80). Plaintiffs assert the 2017 Rules "infringe[ ] upon the authority of the New Mexico Legislature to pass laws preserving the public peace." (Doc. 56 at 31–32). However, under New Mexico law, the New Mexico Supreme Court retains "ultimate rule-making authority" to enact procedural rules for the New Mexico state

courts. *Albuquerque Rape Crisis Ctr. v. Blackmer*, 120 P.3d 820, 822 (N.M. 2005); *State v. Roy*, 60 P.2d 646, 660 (N.M. 1936) (discussing the New Mexico Supreme Court's "exercise of an inherent power. . . to prescribe such rules of practice, pleading, and procedure as will facilitate the administration of justice"). The New Mexico Legislature has long recognized the New Mexico Supreme Court's rule-making authority, which encompasses the authority to promulgate rules of criminal procedure. NMSA 1978, § 38-1-1(A) (providing that "[t]he supreme court of New Mexico shall, by rules promulgated by it from time to time, regulate pleading, practice and procedure in judicial proceedings in all courts of New Mexico."). Thus, Plaintiffs' claims that the New Mexico Supreme Court modified statutory law without legislative authority are meritless.

    **5.**    **Public Safety Assessment Tool Claims**

Plaintiffs also claim the Public Safety Assessment Tool developed by the Laura and John Arnold Foundation authorized by the New Mexico Supreme Court for use in a pilot program in Bernalillo County "deprive[s] presumptively innocent pre-trial defendants of their liberty rights. . . [and] provides no room for discretion and consideration of bail instead of such deprivations." (Doc. 11 at 21). Plaintiffs mischaracterize the 2017 Rules and the purpose of the Public Safety Assessment Tool. As previously discussed, there is no constitutionally-protected liberty interest in securing release from pretrial detention through a commercial bond.

Moreover, the 2017 Rules provide that the court "shall consider any available results of a pretrial risk assessment instrument approved by the Supreme Court for use in the jurisdiction," in evaluating the least restrictive conditions of release that will reasonably ensure the appearance of a criminal defendant. Rule 5–401(C) NMSA. The careful process of gathering reliable information and risk assessments, as contemplated by the 2017 Rules and the Public Safety Assessment Tool implemented in Bernalillo County, provides a valuable tool for the judge in determining the issue of detention and release, including the stringency of conditions of release. The use of such a tool further supports the likelihood of a reasonable level of detention or release upon a spectrum of

intrusion on freedom while awaiting trial.   While trial courts may consider the Public Safety Assessment Tool, it does not displace the discretion of judges.   Therefore, Plaintiffs fail to state a claim that the Public Safety Assessment Tool in Bernalillo County is unconstitutional.

###### 6.   Money Damages

To establish a violation of civil rights actionable under § 1983, "a plaintiff must allege that (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation was committed under color of state law." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 52 U.S. 40, 49–50 (1999).   Because § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred," a plaintiff requesting relief under § 1983 must "identify the specific constitutional right allegedly infringed." *Albright v. Oliver,* 510 U.S. 266, 271 (1994).   "Conclusory allegations will not suffice." *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir. 1981).   As explained above, Plaintiffs cannot state a claim for any violation of Collins's Eighth, Fourth, or Fourteenth Amendment rights.   As a result, Plaintiffs cannot seek money damages from Defendants through § 1983. *Duvall v. Cabinet for Human Res.*, 920 F. Supp. 111, 114 (E.D. Ky. 1996) ("If there is no constitutional right violated, then the question of whether the right is clearly established is irrelevant.").   Therefore, Plaintiffs fail to state a claim for money damages.

#### C.   Immunity

###### 1.   Sovereign Immunity

"[S]uits against States and their agencies . . . are barred regardless of the relief sought" by the Eleventh Amendment to the United States Constitution. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993).   "If there is no waiver of sovereign immunity, the government is immune from suit, and the court has no subject-matter jurisdiction to hear the case." *Vallo v. United States*, 298 F. Supp. 2d 1231, 1234 (D.N.M. 2003); *Clymore v. United States*, 415 F.3d 1113, 1118 n.6 (10th Cir. 2005).   The Eleventh Amendment to the United States Constitution provides that the "Judicial power of the United States shall not be construed to extend to any suit in law or equity,

commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Eleventh Amendment bars suits for damages against a state or state agency absent congressional abrogation or waiver and consent by the state." *Ross v. Bd. of Regents of the Univ. of N.M.*, 599 F.3d 1114, 1117 (10th Cir. 2010).

The New Mexico Supreme Court is a component part of the State of New Mexico, and therefore immunized from any suit for damages. *See* N.M. Const., art. VI, § 1 ("The judicial power of the state shall be vested in. . . a supreme court," and enumerated lower courts); *see also Russillo v. Scarborough*, 727 F. Supp. 1402, 1409 (D.N.M. 1989) (Supreme Court and other state courts are state agencies and, absent their consent, "are immune from federal suits brought by [the state's] own citizens"). Similarly, Second Judicial District Court and Bernalillo County Metropolitan Court are agencies of the State. *See* NMSA 1978, § 34-6-21 ("The district courts are agencies of the judicial department of the state government."); § 34-8A-8(B) ("The metropolitan court is an agency of the judicial branch of state government."). State officials and employees, like the judges and court administrators sued here, "are likewise provided immunity as 'an arm of the state.'" *Hunt v. Cent. Consol. Sch. Dist.*, 951 F. Supp. 2d 1136, 1992 (D.N.M. 2013) (quoting *Mt. Healthy City Sch. Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280–81 (1977)); *Ysais v. N.M. Judicial Standard Comm'n*, 616 F. Supp. 2d 1176, 1186 (D.N.M. 2009) ("The Eleventh Amendment bars a suit for damages in federal court against a State, its agencies, and its officers acting in their official capacities").

While "[s]tates enjoy sovereign immunity from suit under the Eleventh Amendment," that "immunity is not absolute." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012). Under *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief." *Id.*; *see also Quern v. Jordan*, 440 U.S. 332, 337 (1979) (under *Ex parte Young*, "a federal court, consistent with the Eleventh Amendment, may enjoin

state officials to conform their future conduct to the requirements of federal law."). To determine whether "*Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002). "[T]he exception is narrow: It applies only to prospective relief, [and it] does not permit judgments against state officers declaring that they violated federal law in the past[.]" *P.R. Aqueduct & Sewer Auth.*, 506 U.S. at 146.

Because Plaintiffs' claims for damages against Defendants Charles W. Daniels, Edward L. Chavez, Petra Jimenez Maez, Barbara J. Vigil, Judith K. Nakamura, the New Mexico Supreme Court, Nan Nash, James Noel, the Second Judicial District Court, Henry A. Alaniz, Robert L. Padilla, and Bernalillo County Metropolitan Court are barred by sovereign immunity, Plaintiffs fail to state a claim for "damages to compensate for the injuries they have suffered as a result of Defendants' unconstitutional conduct." (Doc. 56 at 32). Furthermore, as explained above, Plaintiffs fail to state a claim for an ongoing violation of federal law under the Fourth Amendment, Eighth Amendment, or Fourteenth Amendment.   Therefore, the *Ex parte Young* exception to Eleventh Amendment immunity does not apply and Plaintiffs fail to state official-capacity claims against the Judicial Defendants.

## 2.   Judicial Immunity and Legislative Immunity

It is well-established that "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Stump v. Sparkman*, 435 U.S. 349, 355 (1978). "The primary policy of extending immunity to judges and to prosecutors is to ensure independent and disinterested judicial and prosecutorial decisionmaking." *Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir. 1986) (citations omitted).   "Judicial immunity applies only to personal capacity claims." *Crowe & Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1156 (10th Cir. 2011).

Where judges act in a rule-making capacity rather than an adjudicative capacity, the Supreme Court has indicated that the applicable immunity is legislative rather than judicial. *See Supreme Court of Va. v. Consumers Union of U.S., Inc.*, 446 U.S. 719, 731 (1980) (determining that Virginia Supreme Court's issuance of State Bar Code "was a proper function of the Virginia court," but "was not an act of adjudication but one of rulemaking"); *id.* at 734 (Where lawsuits against the State Supreme Court are premised on "issuance of, or failure to amend, the challenged rules, legislative immunity would foreclose suit"); *Abick v. Michigan*, 803 F.2d 874, 877–78 (6th Cir. 1986) (concluding the Michigan Supreme Court's promulgation of rules of practice and procedure was a legislative activity and therefore the justices of that court were entitled to legislative immunity); *Lewis v. N.M. Dep't of Health*, 275 F. Supp. 2d 1319, 1325 (D.N.M. 2003) ("[O]fficials outside the legislative branch," including judges, "are entitled to immunity when they perform legislative functions.") (citation omitted).

"Absolute legislative immunity attaches to all actions taken in the sphere of legitimate legislative activity." *Bogan v. Scott-Harris*, 523 U.S. 44, 54 (1998). The purpose of legislative immunity is to "enable[ ] officials to serve the public without fear of personal liability. Not only may the risk of liability deter an official from proper action, but the litigation itself 'creates a distraction and forces legislators [or other state officials entitled to legislative immunity] to divert their time, energy, and attention from their legislative tasks to defend the litigation." *Sable v. Myers*, 563 F.3d 1120, 1123–24 (10th Cir. 2009) (quoting *Sup. Ct. of Va.*, 446 U.S. at 733). The absolute immunity applies both to claims for damages and to those for prospective relief. *Sup. Ct. of Va.*, 446 U.S. at 732–33.

Here, the Complaint alleges wrongdoing by the New Mexico Supreme Court Justices in their rule-making capacity. (Doc. 56 at ¶ 9). Specifically, Plaintiffs claim that the New Mexico Supreme Court's enactment of the 2017 Rules violates criminal defendants' right to opt for money bail before being offered other conditions of release. (*Id.* at ¶ 80). Further, Plaintiffs allege that the New

Mexico Supreme Court intruded on the exclusive province of the New Mexico Legislature in promulgating the 2017 Rules. (*Id.*). Legislative immunity, therefore, protects the state court justices from suit.

Plaintiffs also sue the Second Judicial District Court, Bernalillo County Metropolitan Court, and those courts' chief judges and court executive officers on the basis that they "adopted and implemented the Public Safety Assessment court-based pretrial risk assessment tool," which Plaintiffs assert "effectively eliminated pre-trial release pursuant to a secured bond denying [criminal defendants] the pre-trial liberty option of a secured bond." (Doc. 56 at ¶ 5); (*Id.* at ¶ 49) ("The use of the Arnold [Public Safety Assessment] Tool. . . infringe[s] upon a person's pretrial liberty just as the Supreme Court Rules do."). Judge Nash and Judge Alaniz are protected by judicial immunity in connection with their implementation of the 2017 Rules.

Mr. Noel and Mr. Padilla are likewise protected by quasi-judicial immunity. The absolute immunity available to judges is "extended, under the rubric of quasi-judicial immunity, to other officials who perform functions closely associated with the judicial process." *Fuller v. Davis*, 594 F. App'x 935, 939 (10th Cir. 2014); *Kincaid v. Vail*, 969 F.2d 594, 601 (7th Cir. 1992) (Quasi-judicial immunity exists to protect court staff from "the danger that disappointed litigants blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts."). In this case, the court staff defendants are sued only because they implemented court rules and orders, and thus, they are protected from suit. *See Penn v. United States*, 335 F.3d 786, 790 (8th Cir. 1982) (Absolute quasi-judicial immunity applies to public officials who are required to act under a court order or at a judge's direction). Therefore, Plaintiffs fail to state individual-capacity claims against the Judicial Defendants.

## D.   Plaintiffs' Motion to Amend

Plaintiffs seek leave to amend to add two other state legislators as named party plaintiffs, to name the individual defendants in their personal capacity for damages under 42 U.S.C. § 1983, to

add criminal defendant William Martinez as a named party plaintiff, to add claims for violations of the First Amendment based on the Rule 11 Motion for Sanctions filed by Judicial Defendants in this case on September 22, 2017 (Doc. 33), and to add a new separation-of-powers claim under the New Mexico Constitution. (Doc. 31). Under Fed. R. Civ. P. 15, the Court should give leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). Although Federal Rule of Civil Procedure 15(a) provides that leave to amend is to be given freely, the district court may deny leave to amend where an amendment is futile. *Bradley v. Val-Mejias*, 379 F.3d 892, 901 (10th Cir. 2004). A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. *TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992); *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Investor's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999).

### 1. Additional Legislative Plaintiffs

Plaintiffs' proposed amendment suffers from the same deficiencies as their current complaint in that they fail to make allegations sufficient to state a plausible § 1983 claim. *Twombly*, 550 U.S. at 570. First, Plaintiffs move "to add two other state legislators that wish [to] participate in the lawsuit." (Doc. 31 at ¶ 7). However, Representative Rod Montoya and Representative Debbie Rodella lack standing and fail to state a claim for relief just as the existing legislator Plaintiffs have failed to state a claim against Defendants. Therefore, this proposed amendment is futile and shall be denied.

### 2. Individual-Capacity Claims

Second, Plaintiffs request leave to amend "for clarification by modifying the statements regarding 'personal capacity' to instead reflect that individual Defendants are sued for damages in their 'individual capacity acting under color of law.'" (*Id.* at ¶ 8). Yet, the live pleading currently states that Defendants are sued "individually in her [or his] official capacity." (Doc. 56 at 1). Thus, Plaintiffs have already attempted to assert claims against Defendants in both their official and individual capacities. However, those individual-capacity claims fail as a matter of law because, as

stated above, the United States Constitution does not provide for an absolute right to money bail, there is no source of law guaranteeing the option of money bail to criminal defendants, Plaintiff Collins was not subjected to any unreasonable search or seizure, purchasing pretrial release with monetary bail does not implicate fundamental rights under the Due Process Clause, and the Government has a legitimate interest in regulating pretrial release and detention. Therefore, this proposed amendment is futile and shall be denied.

### 3.    Plaintiff William Martinez

Third, Plaintiffs "seek to add Mr. William Martinez as [a] presumably innocent person that is experiencing excessive and punitive conditions of release, because he has been denied the option of non-excessive bail." (*Id.* at ¶ 9). Unlike Plaintiff Collins, Mr. Martinez is a criminal defendant who has allegedly been subjected to electronic monitoring. However, as discussed previously, the promulgation and implementation of the 2017 Rules as applied to Plaintiff Collins or any other potential criminal defendant does not violate their constitutional rights, including their procedural due process rights under the Fourteenth Amendment. Plaintiffs cannot state a viable claim for relief under § 1983 by arguing that Collins, Martinez, or any other criminal defendant suffered an injury by not receiving the option of monetary bail in lieu of nonmonetary conditions of release. Therefore, this proposed amendment is futile and shall be denied.

### 4.    First Amendment Claim

Fourth, Plaintiffs seek to add a claim against Judicial Defendants for "violation of the First Amendment. . . for vindictive prosecution." (Doc. 31 at 3). On September 22, 2017, Judicial Defendants filed a Rule 11 Motion for Sanctions after serving Plaintiffs with a copy of that motion and affording them a 21-day safe harbor required by Rule 11. (Doc. 33). According to Plaintiffs, Judicial Defendants are liable for damages to Plaintiffs for "serving a retaliatory and vindictive Rule 11 Motion." (Doc. 31 at ¶¶ 181–82). Plaintiffs claim Judicial Defendants "undertook to threaten and

intimidate Plaintiffs into abandoning their Free Speech and right of access to the Courts through the service of a defamatory Rule 11 Motion directed personally at Plaintiffs' counsel." (*Id.* at ¶ 10).

Rule 11 provides that the court may impose sanctions on an attorney who pursues a frivolous lawsuit. Fed. R. Civ. P. 11(b)(1), (b)(2), (c)(1). Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith for an improper purpose. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Plaintiffs contend that the allegations in their Complaint are protected speech under the First Amendment. (Doc. 45). Defendants argue the instant action is frivolous or made for an improper purpose, and therefore, is not protected by the First Amendment. (Doc. 33).

There is no constitutional right to file frivolous litigation. *Wolfe v. George*, 486 F.3d 1120, 1125 (9th Cir. 2007). The First Amendment does not protect frivolous claims. *United States v. Ambort*, 405 F.3d 1109, 1117 (10th Cir. 2005). Courts have awarded Rule 11 sanctions to public officials, including state court judges and justices, where frivolous claims have been raised against them. *Snyder v. Snyder*, Nos. 97-1081, 97-1192, 1998 WL 58175, at *5 (10th Cir. Feb. 11, 1998) (unpublished); *Johnson ex rel. Wilson v. Dowd*, 345 F. App'x 26, 28 (5th Cir. 2009) (unpublished) (affirming district court's grant of Rule 11 sanctions to state judicial defendants where plaintiff disregarded those defendants' absolute immunity from suit); *Kircher v. City of Ypsilanti*, 458 F. Supp. 2d 439, 453–54 (E.D. Mich. 2006) (awarding Rule 11 sanctions in favor of state judges where plaintiff's "opposition to the Judicial Defendants' assertion of judicial immunity lacked any basis in existing law, nor was it supported by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law.").

According to Defendants, this is a patently groundless suit because Plaintiffs "filed this federal lawsuit against Judicial Defendants not with any colorable prospect of obtaining a ruling in their favor, but for the improper purpose of advancing a local and national public relations campaign

on behalf of the money bail industry against bail reforms in New Mexico and throughout the United States." (Doc. 33 at 2).  Further, Defendants assert that "Plaintiffs' claims under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution are both utterly unsupported and filed in direct contravention of governing law." (*Id.*).  In addition, Defendants state that Plaintiffs' claims have no basis in law because the Court lacks jurisdiction, Plaintiffs do not have standing, and Judicial Defendants have immunity from suit.  (*Id.*).

The Court is of the opinion that Plaintiffs have not been denied access to the courts.  Rather, Plaintiffs have pursued their rights in the instant lawsuit without inhibition.  Moreover, the Court has already determined that all plaintiffs in this action, with the exception of Darlene Collins, lack standing, Plaintiff Collins's claims are subject to dismissal for failure to state a claim, and Judicial Defendants are immune from suit.  As such, the allegations in Judicial Defendants' Motion for Sanctions under Rule 11 regarding standing, jurisdiction, and immunity are, at least in part, correct.  Therefore, the Court concludes that the filing of the Rule 11 Motion was not a retaliatory act to punish Plaintiffs, but rather, an acceptable pleading expressly allowed by the Federal Rules of Civil Procedure.  Further, the Court concludes that the Rule 11 motion is not a regulatory enforcement action against Plaintiffs.  In this lawsuit, Judicial Defendants are acting as a litigant and not as an adjudicator.

In sum, Plaintiffs have failed to state a claim for any First Amendment violation as a result of the filing of Judicial Defendants' Rule 11 Motion for Sanctions. *In re Harper*, 725 F.3d 1253, 1261 (10th Cir. 2013) (because "the First Amendment does not protect the filing of frivolous motions," the sanctioned attorney's argument that his actions were constitutionally protected was "meritless").  Since Plaintiffs' proposed amendment to add a First Amendment claim would be futile and the amended complaint would be immediately subject to dismissal for failure to state a claim on which relief can be granted under § 1983, Plaintiff's Motion to Amend shall be denied.  (Doc. 31).

### 5. New Mexico Constitution Claim

Plaintiffs' proposed amended complaint adds a new claim for "Declaratory Judgment of Violation of New Mexico Constitution's Sep[a]ration of Powers and of the New Mexico Constitution's Right to Bail." (Doc. 31). However, Plaintiffs' claims under the New Mexico Constitution do not present a federal question. *See Schuylkill Trust Co. v. Pennsylvania*, 302 U.S. 506, 512 (1938) (holding that whether a state court has exceeded its power under the state constitution does not present a federal question). 28 U.S.C. § 1367(c) provides that a district court may decline to exercise supplemental jurisdiction if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

A district court's decision whether to exercise supplemental jurisdiction under § 1367 is a matter within its discretion. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639–40 (2009); *Estate of Harshman v. Jackson Hole Mountain Resort Corp.*, 379 F.3d 1161, 1165 (10th Cir. 2004).

Here, the Court declines to exercise supplemental jurisdiction over Plaintiffs' new separation-of-powers claim under the New Mexico Constitution because all federal-law claims have been dismissed. In addition, exercising jurisdiction over a separation-of-powers claim based on the New Mexico Constitution violates fundamental principles of federalism and comity because New Mexico has a definite interest in determining whether its own laws comport with the New Mexico Constitution. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (warning that it "is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their own conduct to state law."). Therefore, Plaintiffs' proposed amendment shall be denied.

## IV.   CONCLUSION

Because the Bail Bond Association of New Mexico and the legislator Plaintiffs, including Senator Richard Martinez, Senator Bill Sharer, Senator Craig Brandt, and Representative Carl Trujillo lack standing, Defendants' Rule 12(b)(1) Motion to Dismiss is **GRANTED**.  (Docs. 14, 59). In addition, Plaintiffs fail to state a claim for any violation of Collins's Eighth Amendment, Fourth Amendment, or Fourteenth Amendment rights.  Likewise, Plaintiffs fail to state a viable separation-of-powers claim.  Plaintiffs also cannot state a claim for money damages under 42 U.S.C. § 1983 or any claim that the Public Safety Assessment Tool violates Collins's constitutional rights.  Therefore, Defendants' Rule 12(b)(6) Motion to Dismiss is also **GRANTED**.  (Docs. 14, 59).

Further, Plaintiffs' proposed Second Amended Complaint would be subject to immediate dismissal.  Allowing Plaintiffs to amend to add two additional state representatives without standing and a criminal defendant with meritless claims would be futile.  In addition, Plaintiffs cannot prevail on their new First Amendment claim based on the filing of Judicial Defendants' Rule 11 Motion for Sanctions.  Lastly, the Court declines to exercise supplemental jurisdiction over Plaintiffs' proposed separation-of-powers claim under the New Mexico Constitution.  Accordingly, Plaintiffs' Motion to Amend is **DENIED**.  (Doc. 31).

The Court's ruling on the Motion to Dismiss (Docs. 14, 59) and the Motion to Amend (Doc. 31) should not be interpreted as a ruling on the merits of the pending Rule 11 Motion for Sanctions. The Court will issue a separate order pertaining to the Rule 11 Motion for Sanctions at a future date.

It is therefore **ORDERED** that Defendants' Rule 12(b)(1) Motion to Dismiss is **GRANTED** (Docs. 14, 59) and the claims brought against Defendants Charles W. Daniels, Edward L. Chavez, Petra Jimenez Maez, Barbara J. Vigil, Judith K. Nakamura, the New Mexico Supreme Court, Nan Nash, James Noel, the Second Judicial District Court, Henry A. Alaniz, Robert L. Padilla, Bernalillo County Metropolitan Court, and Board of County Commissioners of the County of Bernalillo by Plaintiffs Bail Bond Association of New Mexico, Senator Richard Martinez, Senator Bill Sharer,

Senator Craig Brandt, and Representative Carl Trujillo, are hereby **DISMISSED WITH PREJUDICE** for lack of subject matter jurisdiction.

It is further **ORDERED** that Defendants' Rule 12(b)(6) Motion to Dismiss is **GRANTED** and the claims brought against Defendants Charles W. Daniels, Edward L. Chavez, Petra Jimenez Maez, Barbara J. Vigil, Judith K. Nakamura, the New Mexico Supreme Court, Nan Nash, James Noel, the Second Judicial District Court, Henry A. Alaniz, Robert L. Padilla, Bernalillo County Metropolitan Court, and Board of County Commissioners of the County of Bernalillo by Plaintiff Darlene Collins are **DISMISSED WITH PREJUDICE** for failure to state a claim.

It is further **ORDERED** that Plaintiffs' Motion to Amend is **DENIED** as futile.  (Doc. 31).

It is so **ORDERED**.

SIGNED this ___11___ day of ___December___ 2017.

ROBERT A. JUNELL
Senior United States District Judge