Page 1

UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO


COLLINS, et al.,

                Plaintiffs,

v.                   No:  1:17-CV-00776-RJ-KK

DANIEL, et al.,

                Defendants.


TRANSCRIPT OF PROCEEDINGS
MOTION HEARING

November 27, 2017
12:53 p.m.
Albuquerque, New Mexico


BEFORE:   THE HONORABLE ROBERT A. JUNELL
             UNITED STATES DISTRICT JUDGE


REPORTED BY:   DEBRA ANN FRIETZE, CCR #251
               PAUL BACA COURT REPORTERS
               500 4th Street, NW, Suite 105
               Albuquerque, New Mexico  87102

Page 2

1                    A P P E A R A N C E S

2    For the Plaintiffs:

3            A. BLAIR DUNN, ESQ.
             400 Gold Avenue, SW, Ste. 1000
4            Albuquerque, New Mexico  87102
             505.750.3060
5            abdunn@ablairdunn-esq.com

6            DORI RICHARDS

7            RICHARD WESTFALL

8
     For the Judicial Defendants:
9
             ARI BIERNOFF
10           Office of the New Mexico Attorney General
             P.O. Box 1508
11           Santa Fe, New Mexico  87504-1508
             505.490.4058
12           abiernoff@nmag.gov

13   For the Board of County Commissioners for Bernalillo
     County:
14
             BRANDON HUSS
15           NM Association of Counties
             111 Lomas Blvd., NW, Ste. 424
16           Albuquerque, New Mexico  87102
             505.820.8116
17           bhuss@nmcounties.org

18

19

20

21   REPORTER'S CERTIFICATE                              74

22

23

24

25

PAUL BACA PROFESSIONAL COURT REPORTERS
500 FOURTH STREET NW - SUITE 105, ALBUQUERQUE, NM  87102

Page 3

1               THE COURT:  Would the Clerk call the case,

2   please?

3               THE CLERK:  The Court calls 17-CV-776,

4   Collins, et al., versus Daniel, et al.

5               THE COURT:  Who's here for the plaintiffs

6   in the case?

7               MS. RICHARDS:  Good afternoon, Your Honor.

8   Dori Richards on behalf of the plaintiffs.

9               MR. DUNN:  Blair Dunn on behalf of the

10  plaintiffs, and we are joined at counsel table by the

11  President of the Bail Bonds Association of New Mexico,

12  Gerald Madrid.

13              MR. WESTFALL:  Good afternoon, Your Honor.

14  Richard Westfall, by limited entry of appearance, on

15  behalf on the plaintiffs as well.

16              THE COURT:  All right.  Thank you.

17              And who's here for the defendants?

18              MR. BIERNOFF:  Good afternoon, Your Honor.

19  Ari Biernoff, from the New Mexico Attorney General's

20  Office.  I'm here on behalf of the judicial defendants.

21              I'm joined at counsel table by two of my

22  clients, Chief Justice Nakamura and Chief Justice

23  Charles Daniels of New Mexico.

24              THE COURT:  And the other gentleman?

25              MR. HUSS:  Good afternoon, Your Honor.

Page 4

1    Brandon Huss, from the New Mexico Association of

2    Counties, on behalf of the Board of County Commissioners

3    for Bernalillo County.

4              THE COURT:  All right.  We had a telephonic

5    conference back on October 26th, just kind of setting up

6    some time and if there were going to be any witnesses or

7    exhibits, and the parties agreed that the plaintiffs

8    will be given one hour and 15 minutes to present its

9    case.  And we can divide that up between your opening,

10   and then if you've got any time left over for any

11   rebuttal that you get from that.  And then for the

12   judicial defendants it is one hour, and then 15 minutes

13   for Bernalillo County again for that.

14              I understand that there were no witnesses,

15   that we're not going to have any live testimony.  Is

16   that correct?

17              MS. RICHARDS:  That's correct on our part,

18   Your Honor.

19              THE COURT:  Is that correct on you all's

20   part as well?

21              MR. BIERNOFF:  Yes, Your Honor.

22              THE COURT:  All right.  And I understand

23   also there are no exhibits.  Is that correct, as well?

24              MS. RICHARDS:  Yes, Your Honor.

25              THE COURT:  Any exhibits?

Page 5

```
 1                    MR. BIERNOFF:  No exhibits from us.

 2                    THE COURT:  Okay.  Then the Court will hear

 3    from the plaintiffs in this case any argument that you'd

 4    like to meet.

 5                    MS. RICHARDS:  Your Honor, all the

 6    motions --

 7                    THE COURT:  Oh, that's right.  You're

 8    correct.  You're correct.  I'll hear from the defendants

 9    first, I guess, and we'll start with the judicial

10    defendants first.  You're correct.

11                    MR. BIERNOFF:  Thank you very much, Your

12    Honor.  I will do my best to keep our presentation

13    significantly under the one hour that the Court has

14    allotted.

15                    I think, particularly with the judicial

16    defendants' motion to dismiss, the parties briefing, I

17    think, is pretty straightforward and captures the

18    parties' respective positions accurately.

19                    Judicial defendants move to dismiss because

20    plaintiffs fail to state a claim for which relief can be

21    granted with respect to any of the three causes of

22    action that plaintiffs assert in their amended

23    complaint.  And I think it's important to note that

24    while the amended complaint makes references to various

25    other grievances that the plaintiffs might have with the
```

Page 6

 1   New Mexico State Judiciary, there are only three causes

 2   of action under the Eighth Amendment, the Fourth

 3   Amendment and the Fourteenth Amendment.

 4              And as we set forth in our motion to

 5   dismiss, there are a myriad other reasons mandating

 6   dismissal.  Aside from failure to state a claim, there

 7   are well-established doctrines of immunity in this case,

 8   legislative immunity for the judges who have been sued

 9   and quasi-judicial immunity for the other court staff

10   who have been sued.

11              And beyond the contours of immunity, none

12   of the plaintiffs have establishd their standing to

13   maintain this lawsuit.

14              So Your Honor, I'll just give a quick

15   overview of our arguments on these respective issues.

16              Let's start with the Eighth Amendment

17   because plaintiffs' claim -- and this is, I think, the

18   very core of the amended complaint -- that the United

19   States Constitution, through the Eighth Amendment,

20   guarantees criminal defendants the right to purchase

21   pretrial release through a money bond in lieu of

22   nonmonetary conditions of release.

23              I think this Court has already very clearly

24   disposed of that argument in its prior order, finding

25   that neither the text of the Eighth Amendment nor any of

Page 7

1    the case law interpreting the Eighth Amendment, and the

2    United States versus Salerno case in particular,

3    provides such a Constitutional right.

4              And so plaintiffs ask the Court not only to

5    create new law where none has existed before, but to

6    disregard more than 50 years of case law from the United

7    States Supreme Court finding that there is no right to

8    bail, let alone to money bail.

9              Now plaintiffs' argument with respect to

10   the Fourth Amendment is clearly barred by governing law.

11   And we've cited to the Becker case, and that case from

12   the 10th Circuit is unequivocal.  There is no search and

13   seizure if a criminal defendant is subject to conditions

14   of pretrial release, and the United States Supreme Court

15   has never held otherwise.  And so the law that we must

16   follow forecloses the Fourth Amendment claim.

17             Plaintiffs, in response to judicial

18   defendants' Rule 11 motion, which we'll talk about

19   later, finally get around to saying that they're arguing

20   for a change in law, but nothing in the briefing on the

21   motion to dismiss suggests such an argument.  And

22   indeed, plaintiffs do not, in responding to judicial

23   defendants' motion, make any argument for overruling or

24   modifying or distinguishing the Becker case, so the

25   Fourth Amendment claim must fall.  Finally, the due

Page 8

1    process claim suffers from similar infirmities.

2              Plaintiffs concede at least tacitly, by not

3    making any response, that they don't have a procedural

4    due process claim, and I think they have to have make

5    that concession.  They don't offer any response to that

6    argument in their opposition to judicial defendants'

7    motion to dismiss.

8              And I think they have to make that

9    concession because Darlene Collins, who is the only

10   criminal defendant among the plaintiffs, the only person

11   who even conceivably could suffer any kind of an injury

12   as a result of a pretrial detention or release decision,

13   plaintiffs in their own amended complaint freely admit

14   that none of the conditions that they complain about at

15   length, like GPS monitoring or home detention, applied

16   to Ms. Collins.

17             And so there can't be any claim that she

18   was somehow deprived of a process when New Mexico law,

19   like the Federal Bail Reform Statute, provides a very

20   clear and well-established process for determining

21   whether any particular criminal defendant, Ms. Collins

22   or anybody else, is entitled to pretrial release, what

23   the factors are, and what the steps are that the

24   presiding court must take.  So without the procedural

25   due process claim, plaintiffs are left with the

Page 9

1    substantive due process claim.

2              This Court has correctly determined that a

3    claim to have a right to the option of money bail, which

4    is what plaintiffs ask for in their amended complaint,

5    is not a fundamental right under substantive due process

6    analysis.  Since it's not, and since there is no claim

7    that Ms. Collins or any other plaintiff was treated

8    unequally based on membership in a suspect class, what

9    remains for plaintiffs is to demonstrate to this Court's

10   satisfaction that promulgating the 2017 rules of the

11   New Mexico Supreme Court was not acting in the service

12   of a legitimate governmental interest.

13             And I think not only has this Court

14   properly found that governing pretrial detention and

15   release decisions is a strong governmental interest, but

16   that's what the United States Supreme Court also

17   instructed us in the Salerno case, so plaintiffs' three

18   constitutional claims all fail.

19             I think this Court's prior order makes that

20   clear, and there's a handful of other issues that are

21   pendent in our motion to dismiss that I want to just

22   outline briefly.

23             This Court has recognized that Bernalillo

24   County's motion to dismiss, or at least a portion of it,

25   must be granted, and this Court has ordered the

Page 10

1    dismissal of all claims against County Manager Julie

2    Morgas Baca.  And for the same reason that the Court

3    reached that result, dismissal of all of the individual

4    defendants, judicial defendants, should also obtain.

5              And we did make this argument in our motion

6    to dismiss, that the amended complaint is entirely

7    bereft of any allegations about any individual

8    defendant.  So there is no guidance in the amended

9    complaint about who did what to whom, about what

10   specific acts, for example, Mr. Padilla, from Bernalillo

11   County Metropolitan Court, undertook that harmed any of

12   the plaintiffs.

13             There's no discussion, there's no

14   allegation about what, for example, Judge Nash, of the

15   Second Judicial Court, did to harm the plaintiffs.  And

16   in the absence of those allegations, just like with

17   Ms. Baca from Bernalillo County, the complaint fails to

18   state a claim.  And that leaves us with I think several

19   additional bases for dismissal that the Court has not

20   already had the occasion to rule on in resolving and

21   denying the Motion for Preliminary Injunction.

22             First and foremost is the problem with

23   standing, and I think we explain how the Kerr case, also

24   from the 10th Circuit, closes the door on plaintiffs'

25   ability to enlist legislators, a handful of New Mexico

Page 11

1    state representatives/state senators, to join their

2    cause.  Because at most, those legislators are

3    complaining of an institutional injury, which Kerr says

4    is not sufficient to confer standing.  In other words,

5    there's nothing that's different about the legislator

6    plaintiffs -- nothing different about their legal

7    interests from any other member of the New Mexico

8    Legislature.

9            I think we've already talked a little bit

10   about how Darlene Collins doesn't have standing because

11   plaintiffs' amended complaint does not take issue with

12   the conditions of release that were actually imposed on

13   her, like that she has to come back to court for future

14   court appearances, or that she is not to use illegal

15   drugs during the time that the case is pending or

16   alcohol.  They don't take issue with any of those

17   conditions in their amended complaint.  They do take

18   issue with GPS monitoring and home detention.  But as

19   we've established, she wasn't subject to those

20   conditions.

21            The Bail Bond Association might

22   theoretically have standing in this case.  But again,

23   there are three claims and only three claims that

24   plaintiffs raise, and they are all derivative of Darlene

25   Collins.

Page 12

1                    So the Bail Bond Association is actually

2       attempting to advance this lawsuit several steps

3       removed.  It's not just that the Bail Bond Association

4       is representing its member companies on behalf of

5       Darlene Collins, who was not subject to any

6       constitutionally objectionable conditions of release, so

7       standing fails for the Bail Bond Association as well.

8                    And the final point I'd like to make on the

9       motion to dismiss, Your Honor, is that the doctrines of

10      immunity that we've set forth the law on in our motion

11      papers are essentially unchallenged by the plaintiffs.

12                   I know the plaintiffs don't like the

13      doctrines of immunity that protect the New Mexico State

14      Judiciary, but that is not enough to survive dismissal

15      nor is it enough to articulate, to make out an argument

16      for a change in law.

17                   I suppose that plaintiffs could have gone

18      that extra step and argued in their response that

19      judicial immunity and legislative immunity are too broad

20      and are unfair, or that there should be some exceptions

21      created to those immunity doctrines.  Plaintiffs never

22      make that argument.

23                   What they do is point to the United States

24      Supreme Court case, the Supreme Court of Virginia case

25      that we cite in our briefs, and argue that that case

Page 13

1  somehow stands for the proposition that money damages

2  against judges are okay.  The case holds nothing like

3  that.

4              What the case does make clear is that

5  because in that instance, the Virginia Supreme Court was

6  acting as the initiator, not the decider but the

7  initiator of disciplinary proceedings, they could be

8  sued for declaratory relief and injunctive relief.  It

9  never says a word about money damage.  So I think it's

10  clear that there's no legal support for a claim of

11  damages, and that that's just another reason why the

12  complaint needs to be dismissed.

13              Unless the Court has any questions for me,

14  I'll be glad to sit down.

15              THE COURT:  Does Bernalillo want to be

16  heard at this time?

17              MR. HUSS:  Yes, Your Honor.

18              THE COURT:  Would you state your name again

19  for us, please?

20              MR. HUSS:  Brandon Huss, Your Honor.  Very

21  briefly, the County incorporates judicial defendants'

22  motion as we did in our written pleadings, but I thought

23  touching on a couple of points would also point out the

24  applicability of the motion to the County.

25              In reviewing the complaint or, for that

Page 14

1  matter, the proposed pending amended complaint, there's

2  really, if anything, threadbare assertions against the

3  County.  When read in their entirety, essentially that

4  they signed an MOU, a memorandum of understanding,

5  agreeing to use a pretrial evaluation tool.  And that

6  comes almost exclusively from paragraph 50 of Document

7  7, which simply says that the defendants, including

8  Bernalillo County, entered into an agreement to use what

9  they've referred to as the Arnold tool.

10            That paragraph goes on to describe in

11  formal lay terms what plaintiffs believe the application

12  of that is, but the remaining allegations in the

13  complaint, with respect to the County, Your Honor, are

14  essentially none.

15            Their second count Fourth Amendment claim

16  doesn't reference the County directly at all.  Their

17  Eighth Amendment count appears to only to do so at

18  paragraph 127, which is again just a reference to the

19  implementation of the Arnold tool.

20            The allegation in its entirety reads,

21  "Supreme Court rules an implementation of the Arnold

22  tool violate the Eighth Amendment by permitting judges

23  to consider secured bond only when it is determined that

24  no other conditions of release will reasonably assure

25  the eligible defendants appear in court when required."

1           That allegation by itself doesn't state an

2      actionable claim, even if one could exist against my

3      client, the Board of County Commissioners.

4           The same argument applies to both prongs of

5      plaintiffs' due process argument, both the procedural

6      due process and substantive.  For the reasons expressed

7      by prior counsel, the claims fail on their face, I

8      believe, against all defendants.  But certainly when

9      reviewed against the Board of County Commissioners,

10     there's only a handful of paragraphs that reference the

11     County in any way.  And the only one that really has any

12     substance to it is 50, which simply says we agreed to

13     sign an MOU entering into a pretrial evaluation tool.

14           That is not a violation of the Eighth, the

15     Fourth or the Fourteenth, Your Honor.  For that reason,

16     we ask that the Court dismiss the County with prejudice.

17           THE COURT:  All right.  I'd be glad to hear

18     from the plaintiffs.

19           And would you state your name again for us,

20     please?

21           MS. RICHARDS:  Thank you.

22           Good afternoon, Your Honor.  Again, my name

23     is Dori Richards, and I'm here on behalf of the

24     plaintiffs in this case.

25           The defendants in this case would like to

1    make out the law to be one of absolutes.  And I think we

2    all know, as practitioners of the law, nothing is really

3    absolute, and often we have to go back to the confines

4    of the Constitution to determine what the law is and

5    what the law should be.  And yet that is something that

6    these particular defendants seek to avoid as they move

7    for a dismissal on a variety of grounds.

8              I think the first notion to put to rest is

9    that there are many allegations in the complaint.  And

10   while they would like to avoid the separation of powers

11   argument, most likely because there is a significant

12   concern that the Supreme Court has overstepped its

13   authority, that is not the case.

14             If you look at the complaint, as well as

15   the relief and the different portions of the complaint

16   that are incorporated throughout paragraph 76 through

17   paragraph 80, they expressly outline the separation of

18   powers violations by the Supreme Court's actors, while

19   it doesn't say Cause 1 in front of it is a cause of

20   action, and express the relief as sought in relief

21   paragraph F.

22             So to try to avoid arguing to the Court the

23   separation of powers argument simply because the words

24   Counts I or II wasn't in front of the various paragraphs

25   is, I would suggest, slightly disingenuous.

Page 17

1              The issue was briefed by them in the

2    motions to dismiss.  It was responded to by the

3    plaintiffs as well, so it has been briefed before the

4    Court.  I do think looking at the separation of powers

5    argument is necessary and appropriate because it flows

6    into whether or not they enjoy any of the immunities

7    they seek to assert.

8                    In this instance, the Supreme Court and the

9    Second Judicial defendants did not assert judicial

10   immunity because they can't.  None of the actions that

11   they took arose out of the judicial process, the things

12   they normally do in deciding a case.  So instead, they

13   sought to bootstrap on to legislative immunity based on

14   the legislative rights of certain legislators acting

15   appropriately.

16                   With that said however, though, again we

17   have to look at what can a legislator do and what can't

18   they do?

19                   The Supreme Court is an entity that does

20   have some limited powers.  And I think expressly if

21   you'll look at New Mexico Statute 38-1-1, it's been very

22   clear that those powers are limited.

23                   The Supreme Court is allowed to make rules

24   for the purpose of simplifying and promoting the speed

25   of determination of litigation on its merits.  Such

Page 18

1    rules shall not abridge, enlarge, or modify the

2    substantive rights of any litigant.

3                So to the extent that the Supreme Court

4    decides to make rules that go beyond housekeeping

5    statutes, this is your timing to file this motion, this

6    is your timing for an appeal, or go beyond the Bar

7    licensure rules in managing the Bar and how the Court

8    processes proceed, they have overstepped their

9    rulemaking authority as delegated by the legislature.

10   That is significant and very, very important when we

11   look at what is -- when legislative immunity attaches.

12                There's been many court decisions in

13   New Mexico about limitations on the powers of the

14   Supreme Court.  For example, in Southwest Underwriters

15   versus Montoya, the premise there was whether a proposed

16   rule affects substance or merely procedure, and thus is

17   within the province of the legislature or rulemaking

18   authority of the court, depends on the circumstances of

19   each case.

20                As far back as I believe 1944, the seizure

21   of property under a writ of replevin in requisite to the

22   jurisdiction of a court to try and determine the right

23   to possession of property and damages for its unlawful

24   caption or detention may not be dispensed with added to

25   or limited by a rule of the Court.

1              State versus Montoya, for purposes of

2    determining whether a court rule is procedural rather

3    than substantive and thus does not violate the

4    separation of powers, procedural provisions do not

5    abridge, enlarge or modify the substantive rights of any

6    litigant.  And that is exactly what is happening here

7    Your Honor.

8              So the question is then:  Did the Supreme

9    Court overstep its boundaries in engaging in rulemaking

10   that went beyond the process of a court hearing, the

11   process that we go through to file a case, appeal a case

12   and represent someone's rights?  In this case, it did.

13             The reason that is so important, Your

14   Honor, is that's when legislative immunity must give

15   way.

16             THE COURT:  Legislative immunity or

17   judicial immunity?

18             MS. RICHARDS:  Legislative, Your Honor.

19   It's actually both.  There's no judicial immunity

20   because they were acting in a legislative capacity.  But

21   here there's no legislative immunity because they were

22   not acting under their inherent authority or delegated

23   authorities.  They were not the sole legislative

24   entities.

25             The reason that's important is if we look

Page 20

1    at the Supreme Court of Virginia case, in that case at

2    issue were Bar regulatory rules, and that is it.  It

3    wasn't the substantive rights of litigants.  The Supreme

4    Court acted -- enacted housekeeping rules that governed

5    the Bar and the administration of the judicial process.

6    And that's really the difference between legislative and

7    judicial immunities.  The judicial process versus

8    legislating, creating law, creating policies and

9    substantive rights.

10            So the Supreme Court is one of limited

11    jurisdiction and abilities in the rulemaking process.

12    It's limited to just those procedural rules that are

13    necessary for the fair and speedy administration of the

14    court process.

15            In the Supreme Court of Virginia case, at

16    issue there were Bar rules, the exact types of rules

17    that a Supreme Court has the inherent authority to

18    issue, to regulate and to amend.  That is not the case

19    here.  And in the Supreme Court of Virginia case,

20    because they had the sole and inherent authority to

21    engage that rulemaking process, legislative immunity

22    attached.

23            But if we look at it very carefully, the

24    Court said in any event, in this case, the Virginia

25    Court claims inherent power to regulate the Bar.  And as

1    the dissenting judge below indicated, the Virginia Court

2    is exercising the state's entire legislative power with

3    respect to regulating the Bar.

4              That same power, that same inherent power

5    and then absolute power is not at issue here, Your

6    Honor.  The Supreme Court of New Mexico does not enjoy

7    that, the New Mexico Constitution doesn't permit it, and

8    the legislature has not delegated it.

9              So what we have here is rulemaking that

10   impacts the substantive rights of litigants.  And that

11   is an excess of the authority of the Supreme Court,

12   which is why legislative immunity does not provide them

13   with a defense, either.

14             Now, Your Honor, there was some discussion

15   about judicial immunity and quasi-judicial immunity.

16   And again, the motion to dismiss does not argue any

17   judicial immunity on behalf of the Supreme Court

18   Justices or the Second Judicial District.  They do make

19   that -- have that discussion in one paragraph consisting

20   of sentences with regard to the Second Judicial named

21   defendants, Judge Nash and Judge Alaniz.

22             But again, we have to look at what was the

23   judicial process at issue?  And there wasn't a process.

24   It was implementation of an extra rulemaking that they

25   never had the authority to engage in in the first

Page 22

1    instance.

2              The same thing with regard to the

3    quasi-judicial immunity defense that they attempt to

4    assert with regard to the administrators of those same

5    courts.

6              For example, they cite the three cases with

7    regard to Defendants Noel and Padilla.  One of them, the

8    Penn case, very clearly in that case says that this is a

9    very complicated matter as to has jurisdiction in Indian

10   Country over nonmember Indians.  It certainly is not a

11   case on point or is actually even helpful to the

12   defendants.

13             And Fuller is an unpublished 10th Circuit

14   decision.  The defendants suggested that quasi-judicial

15   immunity flowed because of the judicial act and process

16   at issue, not an administrative act, as is the case

17   here, and we are asserting the administrative actions.

18             I think the difference is that in Fuller

19   and Kincaid, when there is an order of the Court and you

20   have a Court administrator just serving an order,

21   serving a warrant, that's a judicial process.

22             There's no identified judicial process here

23   in the motion that the judicial defendants or these

24   other named defendants articulate.  Without that

25   identified judicial process, they can't enjoy either of

Page 23

1    those defenses.

2             And I think that the briefing has been very

3    clear on the standing on sufficiently pled arguments,

4    that at this stage, the well-pled averments in the

5    complaint must be held as true in assessing whether or

6    not sufficient averments have been made and that it

7    falls into all the standards.  We stand by our briefing

8    on that.  We believe it is sufficiently pled.

9             This is a very lengthy complaint.  It

10   identifies the harm that various plaintiffs have

11   suffered, and we've done it in such a way to ensure that

12   there is sufficient, factual statements with regard to

13   organizational standing on behalf of the Bond

14   Association, as well as Ms. Collins herself.

15            I think in addition, when Mr. Dunn argues

16   the motion to amend, we'll further demonstrate what

17   sufficiency of the factual pleadings are already, but

18   also adding in an additional plaintiff.

19            Now, there has been some argument that

20   well, there's some allegations in the complaint about

21   ankle bracelets and other things.  And there's a really

22   good reason for that, Your Honor.  This was brought as a

23   class action complaint, and what we're trying to

24   demonstrate is the full range of different liberty

25   restrictions that can and have been implemented.

Page 24

1              Ms. Collins is just one person.  We sought

2    to bring in a second plaintiff to further articulate the

3    full breadth of types of liberty restrictions that we

4    have at issue now because there has been the full

5    deprivation of bonding, essentially.

6              So with that said, I really can't

7    understand why stones are being cast, because we added

8    in the breadth and range of liberty restrictions.  It is

9    exemplary, and it is because we seek class

10   certification, which obviously has yet to be fully

11   addressed.  But to the extent that we get to that stage,

12   clearly those averments are necessary and appropriate in

13   the pleading itself.

14             Now, Your Honor, getting to the heart of

15   the matter, the crux, the Eighth Amendment, and whether

16   or not there is a right to bail, the judicial defendants

17   would ask that Salerno be interpreted and held to mean

18   that there is no right to bail in the Eighth Amendment.

19             We think that is a very simplistic

20   understated interpretation of that particular decision.

21   Nothing in Salerno says there is not a constitutional

22   right, a fundamental right or an inherent right to bail.

23   It says there is a right that is not absolute.  And I

24   think we all know that constitutional rights are

25   fundamental and inherent rights, but they can give way

1    in certain and appropriate circumstances.

2              When a legislature charged with modifying

3    law in a state has done so and ensured that those rights

4    have been curtailed for appropriate interests, whether

5    that is the -- you know, the rational basis test or the

6    compelling interstate test or the intermediate test,

7    which I think is really what Salerno was looking at, but

8    Constitutional rights are those that are inherent.  And

9    they can give way in certain circumstances, but that is

10   not the same as seeing that there is not a fundamental

11   right to begin with.

12             I think that if we look at what Salerno

13   said at page 750, on the other side of the scale, of

14   course, is the individual strong interest in liberty.

15   We do not minimize the importance and fundamental nature

16   of this right.  To me, that's a clear statement of the

17   Court acknowledging that there is a fundamental right to

18   your liberty and trust.  So the question is then:  When

19   and how can those interests be curtailed?

20             It is appropriate for the legislatures,

21   whether it is Congress or state legislatures, to make

22   the determinations and pass laws in the full purview of

23   the public, with public hearings and public discussions

24   when those liberty interests and how this liberty

25   interest should be curtailed, and that did not happen

1    here.  And it did not need to happen here because the

2    Supreme Court is not a legislature.

3              They're not charged with curtailing

4    Constitutional rights.  They are charged with

5    interpreting those Constitutional rights, not impacting

6    them, not negating them, not taking them away  without

7    the public and the legislature having their voice in the

8    process.  And that is why the legislative immunity

9    argument and the Eighth Amendment argument come full

10   dovetail in reaching a decision in this case.

11             We do not believe that Salerno stands for

12   the premise that there is no right in the Eighth

13   Amendment to bail.  It says that there shall be no

14   excessive bail.  Well, excessive bail means nothing if

15   there isn't a right to begin with, just like search and

16   seizure means nothing.

17             You could take property only with due

18   process, but the inherent right to have that property

19   must exist.  It's the same with the Second Amendment,

20   the right to bear arms.  What does it mean to bear arms

21   if you can't have ammunition for those arms.

22             Under property and search and seizure, the

23   government can take property.  So obviously, there must

24   be a right for people to have property if, when the

25   government takes it, there is a Fifth Amendment right to

1   compensation.  There are inherent rights that exist

2   based on the causes in the Constitution.

3              So to merely say that because it doesn't

4   say, "You have a right to bail, and it can't be

5   excessive," that gives no voice to the Constitution' and

6   the original intent of the Constitution', Your Honor.

7              Salerno is not a simplistic statement of

8   there is no fundamental right.  It is a statement that

9   in limited circumstances, such as the Bail Reform Act,

10  those rights can be curtailed for several important

11  reasons, and it's a legislator's purview to determine

12  when those reasons come into play, not the Supreme

13  Court.  The Supreme Court should be interpreting the

14  legislature's will and the laws that it's passing and

15  the United States Constitution' and the New Mexico

16  Constitution' and not creating that law themselves.

17             With that, Your Honor, I think I'm going to

18  pause and allow -- I think we have the other motions to

19  come up, and I do have my other attorneys that will need

20  to argue the motion to amend, as well as the Rule 11

21  sanctions, unless you have further questions on the

22  motion to dismiss.

23             Thank you, Your Honor.

24             THE COURT:  Counsel?  Who's next?

25             MS. RICHARDS:  Your Honor, I believe that

Page 28

1   since they have not yet argued -- well, we need to argue

2   the motion to amend, but they haven't argued the Rule

3   11.  It's up to your discretion.

4                THE COURT:  You all are next.  Keep going.

5                MR. DUNN:  Good afternoon, Your Honor.

6   Blair Dunn.

7                I apologize to the Court.  This may be a

8   little bit disjointed.  Part of our motion to amend is

9   derivative from the Rule 11 motion.  So I'm going to

10  make some assumptions based upon our position on the

11  Rule 11 motion in order to address at least one portion

12  of why we sought to amend the complaint.

13               I'll lead off with that, and then we can go

14  through the rest of the things we seek to amend in the

15  complaint.  I won't belabor the Court with the standards

16  for amendment.  I'm sure the Court is very well aware of

17  those.  But I would point to the Court's attention to

18  the Taylor versus Meacham case.  I'll go over the

19  discussion from that case, and that case has been cited

20  in the briefing, but I would direct the Court's

21  attention to Taylor versus Meacham.

22               In that case, in that decision, at page

23  1561, the Court, 10th Circuit, said, "We further

24  observed, however, that if the misuse of the legal

25  procedures is egregious, there may be a deprivation of

Page 29

1   constitutional interventions for which a plaintiff can

2   invoke Section 1983."

3                We reiterate that view in Anthony versus

4   Baker, which is 767 F.2nd, 662-63.  It's 10th Circuit

5   1985.  Very clearly, if this motion that was brought for

6   Rule 11 purposes is for a malicious purpose or some sort

7   of retaliation, it was done so with the purpose to chill

8   my client's First Amendment rights.

9                It's no secret that there's a level of

10  animus that this case has created amongst the judicial

11  defendants rising to the level of a legal procedure

12  seeking to have the case leave.  That is really what

13  this comes down to.  They invoked the Rule 11 Safe

14  Harbor.

15               I would imagine that the judicial

16  defendants do not wish to see this case go up to the

17  10th Circuit for clarification.  And that perhaps the

18  reason why they seek to shut this down at this juncture,

19  rather than allowing this Court to make a decision on

20  the motions to dismiss or the rest of the dispositive

21  motions in this case and allow this case to proceed up

22  through the court system, into the Federal Court of

23  Appeals and on up, if needed, that is ultimately -- part

24  one of the things we understood in bringing this case

25  forward is that we are seeking to probably have an

Page 30

 1    appellate review.  No matter which side takes this up,

 2    it's likely going to go to the 10th Circuit.  There's

 3    really no reason why -- and I believe it is egregious,

 4    under the standard from Taylor, that a Rule 11 motion

 5    needed to be filed.

 6                 And I'm not going to go any further into

 7    the Rule 11 motion in that, but I would -- I use that as

 8    the basis to then direct the Court's attention to the

 9    Poole case, Poole versus the County of Otero.  And I

10    think that that case is very clear that this isn't

11    limited to a criminal prosecution setting and a

12    malicious prosecution, that there is a Section 1983

13    cause of action that can arise from the actions of the

14    government to chill speech through some sort of legal

15    proceeding, be it outside of a criminal proceeding as

16    well --

17                 THE COURT:  I am completely lost by your

18    argument here.

19                 What is it that the defendants did to kill

20    speech?

21                 MR. DUNN:  I apologize, Your Honor.  I'll

22    back up and make that clear.

23                 Our argument for the First Amendment cause

24    of action we seek to add to the complaint was that the

25    filing of the Rule 11 motion is a legal proceeding

Page 31

1   without a basis, that that was done for the purpose --

2   essentially, Your Honor, what we're arguing is instead

3   of filing a cross-motion or a countermotion for our own

4   Rule 11 sanctions, because we didn't think that that

5   Rule 11 motion was warranted -- and we believe that to

6   be frivolous -- instead, we've asserted the rights of

7   our clients to petition the courts for address.  That

8   right of access to the courts, we believe, is chilled

9   through threatening US Attorneys.  We believe that their

10  right to speak about this issue is curtailed through the

11  threat.

12          In fact, my clients would tell the Court

13  they had trouble finding us to bring forward these

14  causes of action because attorneys were afraid of taking

15  on the judiciary.  And I understand that fully, and I

16  understand the reason why we have those immunities for

17  the judiciary.  That doesn't change the position that

18  they have a cause of action, that they have a right to

19  petition the Courts for address under the First

20  Amendment, and they have a right to talk about this.

21  What the judicial defendants did in the Rule 11 motion

22  was an attempt to chill that speech.

23          Again, I understand the difference -- and

24  perhaps that's why I'm causing confusion for the

25  Court -- is the distinction between a Rule 11 motion and

Page 32

1    initiating a prosecution.

2              But I think when you look at the fact that

3    the Supreme Court is the high court of the state, with

4    regulatory authority over attorneys, a Rule 11 motion is

5    the same as an initiating a Bar complaint, but it's also

6    the same as initiating a disciplinary proceeding in

7    front of this Court.

8              They've sought to discipline us as

9    attorneys.  And I believe that that is a regulatory

10   enforcement action from which they enjoy no immunities.

11   Therefore, it's valid on behalf of our clients in this

12   amended complaint.

13             If we turn and we look -- a good portion of

14   what we've attempted to do here is housekeeping.  The

15   first portion of that was to clarify the separation of

16   powers argument.  I won't go through those.  My law

17   partner has done a very good job of explaining that.

18   That's part of what we're attempting to do, is to

19   clarify that cause of action in this case.

20             The other side to it, as has also been

21   discussed, is to add an additional plaintiff to address

22   the Court's concerns from the order on preliminary

23   injunction about Ms. Collins' standing to complain about

24   the rest of the conditions of release.  And in that

25   vein, we seek to add Plaintiff William Martinez.

Page 33

1              Mr. Martinez, as is indicated in the

2    complaint, suffered 16 conditions of pretrial release

3    ranging from deprivation of his Second Amendment rights

4    to deprivation of his right to consume alcohol, his

5    right to travel, which is recognized as a liberty

6    restriction commonly in the courts, as well as a

7    pre-release detention of over 10 days.

8              Just to get through -- and his detention

9    started on one day.  It took 10 days for this process,

10   this new process, to be implemented while he sat in

11   jail, waiting on the Pretrial Release Program that the

12   County and the Second Judicial District have agreed to

13   undertake to be implemented in order to see their

14   release supervisors.

15             The final thing I will note for the Court,

16   the other amendment of substance, not just housekeeping

17   but of substance, is that we added a violation of the

18   New Mexico Constitution' argument.

19             Our argument is that when the voters

20   adopted, by 87 percent, this Constitutional amendment

21   that is proclaimed to have caused these court rules to

22   be legislated by the Court and then enforced by the

23   Court through its order actually says in that amendment

24   that a person without the financial ability to post bond

25   shall file a motion.  Because of the Court's rules, that

Page 34

1    language from our Constitutional amendment is not being

2    followed.

3              The Court's rules essentially sidestep what

4    the voters approved.  The voters asked for that person

5    without financial ability to file a motion.  Because

6    there is no longer secured bonds, there's no need for

7    any criminal defendant to file a motion.  And we don't

8    have those numbers to offer to the Court as evidence --

9    I don't think they've been compiled -- but I will wager

10   that not a single motion has been filed by a person

11   without financial ability to post a bond because they

12   just don't have to under these new rules, and that is

13   inconsistent with the Constitutional amendment that the

14   voters of this state adopted.

15             If the Court has no other questions?

16             THE COURT:  Next?  Anything else?

17             Do the plaintiffs have anything else that

18   they would like to offer, any other arguments at this

19   time?

20             MR. DUNN:  Your Honor, would you prefer

21   that we address the Rule 11 motion at this juncture

22   or --

23             THE COURT:  We'll hear everything right

24   now.

25             Do you want to go ahead and respond?

Page 35

1                MR. BIERNOFF:  I'd be glad to, Your Honor,

2    to the motion to amend.

3                THE COURT:  Okay.

4                MR. BIERNOFF:  Your Honor, the proposed

5    second amended complaint, while endeavoring to cure some

6    of the defects of the first amended complaint that is

7    before the Court now, does not address most of the

8    deficiencies, most of the areas in which the amended

9    complaint fails as a matter of law, and therefore,

10   amendment would be futile.  And that is why judicial

11   defendants oppose amendment.

12               Plaintiffs' counsel characterizes amendment

13   as largely a matter of housekeeping.  And I suppose that

14   to a limited extent, there are some changes in language

15   that the second amended complaint would offer.  But what

16   I want to focus on are the substantive changes because

17   they're significant.  Despite that, they are

18   insufficient to rescue this case from dismissal.

19               So plaintiffs, I think, fairly concede that

20   Darlene Collins lacks standing and is not an appropriate

21   vehicle for bringing the various grievances that

22   plaintiffs bring in their amended complaint.  And that

23   concession is manifest by plaintiffs' interest in adding

24   a new defendant named William Martinez, a new -- excuse

25   me, a new plaintiff named William Martinez, who is a

Page 36

1   criminal defendant in an underlying proceeding in state

2   court, and who, by plaintiffs' allegations, is subject

3   to GPS monitoring.  So plaintiffs appear to have finally

4   found one human being who lines up with their theory of

5   the case.

6                   There's a couple of problems, Your Honor.

7   First of all, it's too late to rescue this complaint

8   from dismissal and to rescue these plaintiffs from Rule

9   11 because at no point in time have they sought to

10  withdraw Darlene Collins as a plaintiff and replace her

11  with William Martinez.

12                  But perhaps more important, adding

13  Mr. Martinez to the second amended complaint still fails

14  because as this Court has found, and as judicial

15  defendants have argued, there is no Eighth Amendment

16  right to purchase a bail bond from a commercial vendor

17  in lieu of receiving nonmonetary conditions of release.

18  There is no Constitutional right to be free from

19  searches and seizures that is violated by imposing

20  nonmonetary conditions of release, and there is no due

21  process right that is afforded to Ms. Collins or

22  Mr. Martinez that the 2017 rules have violated or have

23  contravened.

24                  So the substance of plaintiffs' claims is

25  as thin with Mr. Martinez in the complaint as it is with

Page 37

1    Ms. Collins in the complaint.  So adding that individual

2    plaintiff does nothing to save this cause of action.

3              I will address in more detail the problems

4    with plaintiffs' First Amendment argument when we

5    present the other Rule 11 motion.  But in response to

6    the motion to amend, plaintiffs are essentially asking

7    the Court for permission to add another frivolous cause

8    of action against judicial defendants.  There is no

9    right that's protected by the First Amendment that

10   judicial defendants have violated simply by defending

11   themselves in court in this proceeding.

12             Judicial defendants, like any other

13   litigants, are entitled to the full panoply of

14   procedural protections and to avail themselves of Rule

15   11 when, in a case like this, plaintiffs have

16   overstepped, have crossed the line from merely

17   presenting a nonmeritorious claim to one that's actually

18   frivolous.  So the First Amendment claim is not

19   cognizable.

20             I think plaintiffs frequently try to muddy

21   the waters.  The judicial defendants in this proceeding

22   are not an adjudicator, judicial defendants are a

23   litigant, a defendant.  And so the claim that we've

24   heard from plaintiffs that the judiciary is somehow

25   punishing the plaintiffs is just entirely unfounded,

Page  38

 1    Your Honor.

 2                The judicial defendants have made a request

 3    in the form of a Rule 11 motion to the Court.  And it

 4    is, of course, this Court's decision whether or not to

 5    impose Rule 11 sanctions.

 6                So there is nothing resembling a First

 7    Amendment violation, nor could there be, when the

 8    judicial defendants are acting as any other litigant may

 9    act in defending themselves vigorously against baseless

10    charges.

11                The other claim that plaintiffs would add

12    to their second amended complaint is a separation of

13    powers claim.  And again, I think it's a telling

14    concession that there was no such claim in the first

15    amended complaint that is before the Court today.

16                We look to the pleadings to alert us to the

17    claims and defenses that the parties wish to put before

18    the Court.  It should be left to the Court to divine or

19    construct a claim of separation of powers where the

20    plaintiffs have failed to plead that in their operative

21    amended complaint.

22                And certainly our briefing both on the

23    motion to amend and also on the motion to dismiss makes

24    clear why, as a matter of law, the separation of powers

25    claim, even if it had been included, might fail.  It's

Page 39

1    an institutional injury and nothing more that this

2    handful of legislators is claiming.  And we've alerted

3    the Court to significant case law that makes clear that

4    it is not the role of the federal courts to referee a

5    separation of powers dispute between two branches of

6    state government, even if there was standing.

7                 And so the addition of that claim, just

8    like the addition of the First Amendment claim, does not

9    rescue this case from oblivion.  So it's a futile

10   amendment, and it should be denied.

11               And just very briefly, if I may offer a few

12   words of rebuttal on the motion to dismiss, I just want

13   to mention, I guess first and foremost, plaintiffs'

14   theory of the separation of powers, while it wasn't --

15   it's not a claim right now -- but if amendment is

16   granted, it would be a claim -- is really breathtaking.

17   Because essentially plaintiffs are telling the Court

18   that they think -- plaintiffs believe that the

19   New Mexico Supreme Court has encroached on a legislative

20   prerogative.

21               And that same logic, Your Honor, would open

22   the floodgates truly to litigation.  Any time anybody is

23   displeased with something that a judge does, an act that

24   a judge takes from the bench, and believes the judge to

25   be acting outside of his or her jurisdiction, the judge

Page 40

1    could be sued for money damages.  And similarly, any

2    time somebody is upset that a legislator voted for a

3    particular bill, or that the legislature, as a whole

4    passed a particular bill and believed that that bill was

5    improper or somehow encroaches on the executive branch

6    or the judicial branch, those legislators, including

7    plaintiffs' clients, could be sued for money damages.

8    That is the theory that plaintiffs ask the Court to

9    adopt.

10              And I think it's not surprising that

11   there's no citation to any textual authority for the

12   proposition that immunity should be discarded in this

13   case because plaintiffs hold the view that the New

14   Mexico State judiciary has overstepped its boundaries.

15              I just want to make one more point on that

16   subject, Your Honor.  And it's -- this New Mexico

17   Supreme Court has itself made very clear in its own

18   decisions that the Court -- and this is also reaffirmed

19   by the legislature -- that the Court has significant

20   rulemaking authority.  And plaintiffs' response is the

21   legislature has passed laws regulating the public peace,

22   and therefore, the Supreme Court may not create any rule

23   that touches that subject.  That's directly from

24   plaintiffs' briefing.

25              I think that is a misapprehension of

Page 41

1    separation of powers, to say the least, because all of

2    the Rules of Criminal Procedure in some fashion touch on

3    the public peace, but that is not the test.  I think

4    even if this claim of separation of powers was

5    justiciable, this is not the proper forum for that

6    dispute to be raised.

7              So I would ask, Your Honor, that the Court

8    deny amendment as futile and, as we asked for before,

9    grant our motion to dismiss.

10             MR. DUNN:  Your Honor, I believe the County

11   did file a response in opposition as well.  Mr. Huss may

12   have something to add.

13             THE COURT:  Yes, sir.  Thank you.

14             MR. HUSS:  Very, very briefly, Your Honor,

15   I think the same argument that we made with respect to

16   the pending amended complaint applies to the second

17   amended complaint.  The only variation that I could

18   identify with respect to County defendants was that

19   paragraph 50 that I referenced earlier is now paragraph

20   59.

21             I think it's also noteworthy that the

22   claims specifically under the Collins portion of the

23   complaint note that the County Detention Center could

24   not have considered releasing Ms. Collins without the

25   Court going through the procedure adopted by the Supreme

Page 42

1    Court.   Therefore, I think it's pretty clear that as it

2    relates to Ms. Collins, there's nothing that the County

3    is alleged to have done that could have violated her

4    rights in either the pending amended complaint or the

5    proposed second amended complaint.

6              And a review of paragraphs 80 through 89,

7    as they relate to proposed plaintiff Martinez having the

8    same absence of any allegation against the County,

9    simply primarily thrusts against the Supreme Court and

10   the amended rules, so I think the amended complaint has

11   failed to assert anything new against the County or

12   anything actionable against the County in any of its

13   claims.   And therefore, we'd ask that the Court deny the

14   proposed amendment and grant the motion to dismiss.

15             MR. DUNN:   Thank you.

16             Your Honor, I'll continue in brevity

17   addressing perhaps Mr. Huff's contentions first.   Our

18   complaint doesn't argue that this is isn't some sort of

19   judicial capacity.   Our argument has always been for the

20   County defendants and for the defendants that

21   quasi-judicial immunity is asserted for by the judicial

22   defendants, that they're acting in an implementation or

23   an enforcement capacity; that what they're attempting to

24   do through the adoption and the implementation of the

25   Arnold tool is essentially law enforcement, not

Page 43

1    necessarily an adjudicatory or a legislative function.

2            We know that the legislation at issue in

3    this case came from the Supreme Court, not from the

4    Second Judicial defendants, any of those defendants, or

5    the Metropolitan Court defendants or the County

6    defendants.

7            But certainly when they got together and

8    agreed as a policy matter between themselves, the Second

9    Judicial District of Bernalillo, Metropolitan Court and

10   the Bernalillo County defendants agreed to implement

11   that policy through the use of the Arnold tool, that we

12   believe falls outside the realm of any of those sorts of

13   immunities.  We believe that it violates a clearly

14   established right such that they knew that qualified

15   immunity therefore would apply.

16           With respect to the First Amendment

17   argument raised by Mr. Biernoff, I'd like to start by

18   saying that our briefing says what it says, and we'll

19   stand by what it says.  It does not necessarily say what

20   Mr. Biernoff says it says, and I know the Court has read

21   our briefing, and we appreciate that.

22           We're not arguing that what the Supreme

23   Court defendants or any of the judicial defendants, for

24   that matter, did in filing the Rule 11 motion was in any

25   way a defense of this case.  They are not availing

Page 44

1   themselves of the defensive process.  This is an

2   offensive action.  It is a proactive step, especially

3   given the fact that the Supreme Court is the highest

4   disciplinary authority in the state.

5            This is essentially an enforcement action

6   to regulate the conduct of us as attorneys.  It's not

7   just defending themselves in the lawsuit.  I believe

8   that they are defensive in that they would rather this

9   lawsuit ended at this juncture and did not go forward,

10  but I don't think that that's the proper use of a Rule

11  11 motion.

12           Finally, with regard to the separation of

13  powers and the other Constitutional -- state

14  Constitutional arguments that we're making, there has

15  been discussion in the briefing of supplemental

16  jurisdiction.

17           Tellingly, I would point the Court again to

18  the Supreme Court of Virginia case.  In that case, that

19  was a case brought in the federal district.  Granted, it

20  was pursuant to a statute that's now been repealed,

21  which was 28 USC, Section 2281, which was the injunctive

22  three-panel statute.  But that recognizes that there are

23  those instances where ultimately the federal district

24  court is the only place where this type of a matter can

25  be heard.

Page 45

1              Addressing our concerns over the

2    constitutionality of the Supreme Court with the Supreme

3    Court itself is absolutely a fruitless endeavor, and

4    this appears to be the only place, short of perhaps an

5    original writ to the US Supreme Court where me might be

6    able to do that.  And I would imagine that the US

7    Supreme Court would encourage this Court's supplemental

8    jurisdiction, rather than attempt to use that Court's

9    time with an original writ.

10              Thank you, Your Honor.  Nothing further,

11   Your Honor.

12              THE COURT:  Everybody's got time.  So if

13   you want to be heard again or if you've got something

14   that I haven't heard, now is the time to do it.

15              Anything from the --

16              MR. BIERNOFF:  Your Honor, all that's left

17   from the judicial defendants is argument on the Rule 11

18   motion.

19              THE COURT:  Okay.

20              MR. BIERNOFF:  And if the Court would like

21   me to proceed, I'll do it now.

22              THE COURT:  I'd be glad to hear from you on

23   the Rule 11.

24              MR. BIERNOFF:  Thank you, Your Honor.

25              It does not give me, as an advocate, any

Page 46

1    pleasure to bring a Rule 11 motion against fellow

2    members of the Bar.  It does not give my clients any

3    pleasure to take this approach that we have to take in

4    this case because plaintiffs' claims, plaintiffs'

5    amended complaint that's before the Court today is

6    utterly bereft of any support in law, and we'll go

7    through briefly claim by claim.

8              But I guess as an initial matter, I just

9    want to observe that far from what plaintiffs have

10   portrayed, this motion is not anything other than an

11   effort by judicial defendants to bring to this Court's

12   attention the fact that the amended complaint lacks

13   legal support, lacks even any well-reasoned basis for

14   proceeding past dismissal.

15             Rule 11 is clear that in such instances, it

16   is appropriate for a party to seek sanctions under the

17   rule.  It is, of course, the Court's decision whether to

18   impose those sanctions or not.  And so the notion that

19   judicial defendants are -- that this is really an

20   enforcement proceeding of the Disciplinary Board of the

21   State of New Mexico is very far-fetched.

22             This is an effort by judicial defendants to

23   make clear that these are not just nonmeritorious

24   claims.  These are claims that do not have a single case

25   standing behind them.  And that is very significant

Page 47

1    because plaintiffs are not only asking for this Court to

2    upend the 2017 rules that the New Mexico Supreme Court

3    promulgated, but are essentially asking the Court to de

4    facto overturn the Federal Bail Reform Act and to go

5    against many years of precedent and create new law

6    favorable to plaintiffs.

7              Now plaintiffs are absolutely entitled to

8    argue for a change in law, but that's not what they've

9    done.  And in fact, they made clear in their motion to

10   amend that they are not seeking a change in law.  This

11   is from plaintiffs' reply in support of their motion to

12   amend at page 3.

13             Plaintiffs' amended complaint is not even

14   arguing for a change in the law, which would be a

15   permissible basis for bringing suit.

16             So plaintiffs, in seeking amendment,

17   concede to the Court that they're not asking for any law

18   to be changed or for new law to be created.  And yet, in

19   responding to the Rule 11 motion, plaintiffs take a

20   different approach and all of a sudden embrace the

21   proposition that actually they are seeking a change in

22   law.

23             Now it's fine if that's the approach that

24   plaintiffs want to take, but then they actually have to

25   articulate what change in law they're seeking and why.

Page 48

1    Because after all, if there is no existing authority to

2    support any of their claims, they had better offer the

3    Court a compelling reason to revisit appellate and, in

4    some cases, Supreme Court precedents to the contrary.

5    So let's go through briefly and examine just how bereft

6    of any support in law or reason plaintiffs' claims are.

7                  Plaintiffs' Eighth Amendment claim.  I know

8    that plaintiffs seek to extract a meaning from Salerno

9    that I don't see in the text and, more importantly, no

10   reviewing court has ever seen in the text of Salerno.

11                 So that is a perfect example of a claim

12   where plaintiffs, in theory, could seek a change in law,

13   but have not asked for that, have not asked this Court

14   to overrule, modify or distinguish Salerno, but simply

15   insist that Salerno somehow, in some fashion, protects

16   this supposed right to purchase a commercial bail bond

17   at the option of the defendant, instead of being

18   released on other conditions.  And that is a

19   breathtaking assertion in the absence of any explanation

20   for why 50 or 60 years of law should change to give

21   effect to that position.

22                 On the Fourth Amendment claim, plaintiffs

23   absolutely could in theory argue that the Becker case

24   should be overruled.  They have never done that.

25                 Plaintiffs do not argue that Darlene

Page 49

 1   Collins' ability to purchase a commercial bail bond is a

 2   fundamental right under a due process or equal

 3   protection analysis.  They could have made that

 4   argument, but they don't.

 5               They're not asking the Court to find a new

 6   fundamental right.  And similarly, with the procedural

 7   due process claim, plaintiffs have essentially abandoned

 8   that claim, but again offer no citation to any authority

 9   that supports their theory that Ms. Collins' procedural

10   due process rights were infringed upon.

11               And again, they could make an argument that

12   the existing law of due process is insufficient, that

13   that law has to be expanded to protect their clients.

14   They do not make that argument.

15               I think what we'll see is that looking

16   beyond these core substantive claims that plaintiffs

17   have asserted, and looking to the issues of standing and

18   immunity, plaintiffs' arguments are similarly onward

19   from governing law, and standing is a good place to

20   start.

21               The legislator plaintiffs, to prevail in

22   this motion, need to be able to show that there's some

23   point of distinction from the Kerr case, which says you

24   don't have standing if you're asserting a purely

25   institutional injury and discussion.

1            Plaintiffs do not say a word about why that

2   law was improperly decided or should be reversed or

3   modified in some fashion.  All that plaintiffs say on

4   the subject of Kerr's barrier to institutional injury

5   litigation by legislators is what the facts of that case

6   are different.

7            And that is a meager response, Your Honor,

8   where as we all know, cases have a legal effect  beyond

9   the four corners of that one dispute, particularly 10th

10  Circuit case law, and the idea that the specific actors

11  in that case may have been different is an insufficient

12  response.  That is not the same thing as an argument for

13  the creation of new law or the modification of the

14  existing law.

15           I think that plaintiffs also fail to offer

16  any reason why the Kowalski case should not apply in

17  this case when it comes to the standing of the Bail Bond

18  Association because again, the Bail Bond Association is

19  not just suing on behalf of its members.  It's suing on

20  behalf of its members who are, in turn, suing on behalf

21  of Darlene Collins.

22           Kowalski makes clear that speculative,

23  hypothetical clients at that a business or an

24  organization might have in the future, that's

25  insufficient to confer standing.  And on the question of

Page 51

1    immunity, plaintiffs have literally not even the

2    thinnest of leads to offer this Court.

3              Plaintiffs again are simply distorting the

4    holding in Supreme Court of Virginia versus Consumers

5    Union.  That case never endorsed the proposition that

6    judges can be sued for money damages for their official

7    actions, whether it's a rulemaking action, which would

8    be protected by legislative immunity, or an adjudicative

9    action, which would be protected by judicial immunity.

10   Plaintiffs may wish that the case law held otherwise,

11   but that is again an insufficient basis to evade a Rule

12   11 sanction.

13             Plaintiffs need to have come to court with

14   more than just their viewpoints and their wishes.  And

15   we have been very clear that this is not an issue of the

16   First Amendment or plaintiffs' ability to express their

17   viewpoints.  There are many fora where plaintiffs can

18   tell any audience what their views are on bail reform.

19   They have that available to them.

20             This legal proceeding has a different set

21   of rules.  The federal rules, specifically Rule 11, make

22   clear that a party needs to have a good-faith basis for

23   coming into court.  That is utterly lacking in this

24   amended complaint.  In some cases that's conceded by the

25   plaintiffs because they haven't responded to some of our

Page 52

1    arguments, like the procedural due process argument.

2    It's conceded by plaintiffs in other cases because

3    they've attempted belatedly to cure the defect in the

4    first amended complaint.

5         But again, they haven't at any point said

6    that they'll drop Darlene Collins because she wasn't

7    subject to the conditions of release that animate the

8    amended complaint.  They want to keep her in the case

9    and just bring in more people.  They want to add new

10   claims against the State Supreme Court and other

11   New Mexico state judges and court staff that are equally

12   unfounded in the law.  And I talked about that on the

13   motion to amend, so I won't repeat that here.

14        To conclude, this Rule 11 motion is

15   necessary, Your Honor, to deter parties that simply have

16   a policy disagreement with decision makers, whether

17   those decision makers are the executive, are the

18   judiciary,  are legislators, from embroiling state

19   actors in claims for money, which is what these

20   plaintiffs demand, when there is utterly no support for

21   those claims.

22        And that is why we are asking the Court,

23   again reluctantly, but borne out of necessity, to impose

24   Rule 11 sanctions as a deterrent to plaintiffs'

25   litigation misconduct in this case.

Page 53

 1                    THE COURT:  Thank you, sir.

 2                    MR. WESTFALL:  Good afternoon.  Richard

 3      Westfall with a limited entry of appearance on behalf of

 4      the plaintiffs for the limited purpose of arguing the

 5      Rule 11 motion.

 6                    First of all, I want to thank the Court for

 7      granting me the opportunity to be able to come and

 8      present this particular argument on behalf of the

 9      plaintiffs in this Court today.

10                    I respectfully submit to this Court that

11      there is a dramatic difference between disagreement on

12      the merits and asserting that a claim is frivolous.

13                    I will go through the individual claims and

14      the arguments that have been made.  I don't think it's

15      even remotely a close question as to whether or not

16      these particular claims are frivolous, which is the

17      standard for imposing Rule 11 sanctions.

18                    I respectfully submit that just looking at

19      a handful of key points in both -- all three substantive

20      claims, both the Eighth Amendment claim, the Fourth

21      Amendment claim, and the due process claim, and looking

22      at, you know, the basic scope of immunity or lack

23      thereof in a given situation itself, wholly belies the

24      assertion that the claims that are being brought by the

25      plaintiffs in this particular situation are frivolous.

Page 54

1    Let me turn to those key points.

2                    Key Point Number 1.  Under the Supreme

3    Court of Virginia case, the New Mexico Supreme Court is

4    a proper defendant in a 1983 action that properly

5    asserts that there's a deprivation of a Constitutional

6    right.  That assertion has been made here, and I'll get

7    to the merits in a moment.

8                    But to assert that -- and there's a huge

9    focusing on the money damages aspect.  That's a form of

10   relief that may or may not be appropriate once this

11   Court reviews the claim.  But there's no question that

12   under the Supreme Court of Virginia case that the

13   New Mexico Supreme Court can, and in this case, is a

14   proper defendant for having an adjudication of the issue

15   as to whether or not its rules were, number one, invoked

16   in excess of its authority.  Ms. Richards already

17   asserted that from a merit standpoint.

18                   But from the standpoint of whether it's

19   frivolous or not, certainly on its face, the Supreme

20   Court of Virginia case makes it clear that in

21   appropriate cases, a state supreme court that exceeds

22   its authority can in fact be a proper defendant in a

23   1983 action if its conduct leads to the deprivation of a

24   right.  That's a fundamental takeaway from the Supreme

25   Court of Virginia, and the case clearly provides for

Page 55

1    that.

2                   Second, let's look at the Salerno case that

3    touches upon both the due process element and touches

4    upon the Eighth Amendment.  As Ms. Richards pointed out,

5    and I'll repeat, this is a point of law that's

6    enumerated by the US Supreme Court in Salerno.  On the

7    other side of the scale, of course, it is the

8    individual's strong interest in liberty.  We do not

9    minimize the importance and fundamental nature of this

10   right.

11                  For Mr. Biernoff to say that somehow or

12   another there's a Rule 11 problem here because it's

13   based upon the lack of any sort of Constitutional right,

14   that language from the Supreme Court's opinion in

15   Salerno directly and expressly belies that assertion.

16   More important, that's with respect to the due process

17   element.

18                  Turning to the Eighth Amendment, I

19   respectfully submit that it is not yet settled as to

20   whether there's a fundamental Constitutional right, or I

21   should say it's less clear in Salerno that there's a

22   fundamental Constitutional right.

23                  But clearly, the Supreme Court's decision

24   in Salerno leaves open the question that's being

25   asserted to this Court today and in this case, where the

Page 56

1    plaintiffs are asking this court to answer:  What are

2    the scopes of what legislative power -- what power can

3    be exercised to limit the right to bail in this case,

4    the right to money bail?

5                At 754 of 41 US 754 is the key paragraph

6    that discusses the contours of the Eighth Amendment

7    right.  And it starts off by saying in a distinguishing

8    case, Carlson versus Landon, a civil case, that we need

9    not decide today whether the excessive bail clause

10   speaks at all to Congress' power to define the class of

11   criminal arrestees who shall be admitted to bail.

12               For even if we were to conclude that the

13   Eighth Amendment imposes some substantive limitations on

14   the national legislature's powers in this area, we would

15   still hold that the Bail Reform Act is valid.

16               It should be pointed out in the facts of

17   Salerno.  The facts of Salerno are you had a reputed

18   gang member that was saying he had a right to get out on

19   bail, as a fundamental Constitutional right,

20   irrespective of a clear determination under the new Bail

21   Reform Act that he exhibited potential dangerousness to

22   the community.

23               And there's two components to the Eighth

24   Amendment.  Number one -- or excuse me, to bail.  Number

25   one is to secure that the person attend a future court

Page 57

1    proceeding.  And the second proceeding is under the Bail

2    Reform Act -- that was the new issue that was at issue

3    in Salerno -- as to whether or not the legislature had

4    the power, despite the excessive bail clause under the

5    Eighth Amendment, to say no, setting aside the issue of

6    whether or not bail can secure that the person is going

7    to be there.  In fact, the legislature has the power to

8    impose additional conditions to secure the safety of the

9    community.

10                   So the Supreme Court in this case, there's

11   nothing -- there's no issues at all, it's my

12   understanding, with respect to Ms. Collins with respect

13   to the issue of her bail or -- excuse me, that these

14   other conditions were required to secure Ms. Collins

15   from attending.  In fact, the bail itself would have

16   accomplished that result.

17                   And there's no issue in this particular

18   situation, as I understand it, where these other

19   additional restrictions or conditions were required to

20   protect the safety of the community.  This is not that

21   case.

22                   So the Supreme Court specifically

23   distinguishing that situation I think is critically

24   important.  Here's the key -- and the language at the

25   end of this paragraph I think is very important as

Page 58

1    well --

2                   THE COURT:  Doesn't Ms. Collins have an

3    opportunity to appeal the judge's decision on bail?

4                   MR. WESTFALL:  That I don't know.  And I

5    think my co-counsel will have an opportunity to address

6    that.

7                   THE COURT:  They do in federal court, and

8    we make the same decision.  We make a decision, whether

9    or not it's federal judges, whether or not someone -- or

10   a magistrate judge would make that decision as to

11   whether or not somebody's going to show up or not, or

12   whether or not they're going to be a danger to the

13   community, and the defendant has a right to appeal that

14   decision.

15                  MR. WESTFALL:  It's my understanding that

16   the way this new rule operates, that there was really no

17   opportunity; that she was -- she should have been

18   allowed -- and we assert -- it's my understanding that

19   the complaint of search, Ms. Collins had a right to

20   immediately bail out after being arrested; that in fact

21   she was actually unlawfully detained for a number of

22   days and denied money bail.

23                  And in the process of being denied those --

24   you know, being incarcerated for a number of days, when

25   she should have been able to get out, you know, on the

1    first day after posting money bail.  And the allegations

2    in the complaint are that she was ready, willing and

3    able to do that, and that there was a bail bondsman

4    prepared to issue that bail.  But she was denied that

5    and in fact suffered significant health injuries as a

6    result of being incarcerated, and she was wrongfully

7    denied this option for money bail.

8                    That's the allegations, as I understand

9    them.

10                    THE COURT:  So instead of having to put up

11    money bail, she had to wear an ankle bracelet and was

12    restricted to her home or something of that nature?

13                    MR. WESTFALL:  It's my understanding -- and

14    again, I'm coming in -- I was just looking at the Rule

15    11 issue.  But no, she was denied that opportunity

16    entirely to get out, when she should have been allowed

17    complete freedom by posting money bail, because that

18    would have secured the State's interest in being able to

19    secure that she would be attending future proceedings.

20                    And because of this new tool, the

21    evaluative tool, she was forced to go through days of

22    incarceration needlessly and in violation of the liberty

23    interest that I believe she has.  And I believe that's

24    clear under the US Supreme Court decision in Salerno.

25                    And so getting to the limitations of

Page 60

1    Salerno and leaving open the question of the scope of

2    Eighth Amendment protection, the right to bail under the

3    Eighth Amendment, the Supreme Court concludes, "Thus,

4    when the government has admitted that its only interest

5    is in preventing flight," and they've identified that

6    that's their only interest, and I would submit that's

7    this case, they all must be set by a court at a sum

8    designed to ensure that goal and no more.

9              I think that's a clear declaration by the

10   Supreme Court that if it's not a flight situation, I

11   mean if it's only -- excuse me.  If it's only designed

12   to ensure against flight, then that's it.  But there is

13   a right to bail.  I think it's clear in that language.

14             And then it says, "We believe that when

15   Congress has mandated attention on the basis of a

16   compelling interest other than prevention of flight, as

17   it has here, the Eighth Amendment does not require

18   release on bail."  Implicit in that is clearly the right

19   to be released on bail.

20             With respect to the Fourth Amendment issue,

21   frankly I am somewhat surprised when I've gone back and

22   I've looked at the briefs in preparing for -- for

23   arguing this motion before Your Honor, there's multiple

24   declarative statements that are made in the Rule 11

25   motion and in the reply about how Becker versus Kroll is

Page 61

1   this overwhelming controlling authority on the --

2   conclusively establishes that the Fourth Amendment claim

3   is frivolous.

4            Here's the key language at the end of that

5   discussion, and this appears at 494 F.3d -- let's see,

6   494 of F.3d at 916, I believe.  Chief Judge Tymkovich

7   makes the following -- then I think Judge, now Chief

8   Judge Tymkovich, makes the following observation at the

9   end.  "Becker does not argue that she was subject to any

10  of the indicia of nonphysical control arising from

11  NMFU's investigation and procedure.  She apparently

12  never posted bond, was not required to appear in court,

13  and had no specific restrictions on her freedom of

14  movement."

15           Under these circumstances, even if we were

16  inclined to broaden the meaning of seizure beyond our

17  traditional understanding, this case does not present a

18  vehicle for doing so.  I respectfully submit that the

19  deprivation that was made on Ms. Collins meets precisely

20  the situation that Judge Tymkovich said was not at issue

21  before them in Becker.

22           So to say that Becker somehow slams the

23  courthouse door and, more importantly and more focused

24  on this particular proceeding here today, with respect

25  to Rule 11 motions, to say that it is frivolous for

Page 62

1    Ms. Collins to make a Fourth Amendment claim under

2    Becker versus Kroll is respectfully patently

3    demonstrably false under the plain reading of Becker

4    itself.

5              I would urge this Court to look at three

6    documents that I think, beyond any shadow of a doubt by

7    any measure, demonstrate that the claims that are being

8    asserted by the plaintiffs and their defense of those

9    claims in this Court are not frivolous.

10             Number one is I would call the Court's

11   attention to the response to the Rule 11 sanctions that

12   was filed by the plaintiffs.  I'd specifically call the

13   Court's attention to multiple references, including in

14   the affidavits attached, to the reliance upon the

15   Holland case in New Jersey, the very same claims that

16   are at issue:  Due process, Eighth Amendment, Fourth

17   Amendment are being bought right now by Mr. Paul

18   Clement, one of plaintiffs in the case in New Jersey,

19   dealing with a money bail case and the right to bail.

20             Mr. Clement is the most -- I've had a

21   chance to meet him.  He is one of the most distinguished

22   US Supreme Court advocates in the county.  And

23   Mr. Clement has signed his name to a series of pleadings

24   in the Holland case that make the very same claims that

25   my client has been making in this Court.  So to say that

Page 63

1    their claims are somehow frivolous, when Mr. Clement is

2    making the same arguments on Holland, I find remarkable.

3                    The other two documents I would call to the

4    Court's attention are ECF Filing Number 23, which is the

5    plaintiffs' response to the motion to dismiss, and ECF

6    Number 24, replying to the motion for preliminary

7    injunction.

8                    And under 23, there's extensive briefing by

9    the plaintiffs justifying why they believe their clients

10   have standing in that particular situation.  And in ECF

11   Filing Number 24, there is a detailed discussion of the

12   merits of the Eighth Amendment, Fourth Amendment and due

13   process.

14                   And again, to say that somehow or another

15   the claims that are being brought are frivolous, in

16   light of that briefing, I think just -- it just won't

17   withstand just a basic cursory reading of those specific

18   filings.

19                   With regards to the issue that was raised

20   in the motion and not really touched upon that much in

21   the reply regarding an improper motive, there's focus on

22   a Web posting, and then there's more discussion or

23   assertion regarding the letter that was authored by

24   Mr. Dunn.  I would just call the Court's attention to

25   just look at the letter.  There's nothing inflammatory.

1            The letter is limited to addressing the

2    merits, and it's only in response to, you know, what was

3    perceived to be assertions that were being made in the

4    General Assembly by one or more of the judicial

5    defendants.  So it was just answering -- and it

6    addresses only the merits of litigation.  There's

7    nothing even remotely in that letter that would suggest

8    any kind of improper purpose.

9            Careful lawyering requires that, you know,

10   claims be brought in the alternative.  Every attorney,

11   as you can see, both in response to the motion to

12   dismiss and in the motion for Rule 11 sanctions, they're

13   saying the Eighth Amendment categorically doesn't apply,

14   due process categorically doesn't apply.

15           Well, as I've articulated to the Court, I

16   think that Salerno itself makes it clear that there is

17   an unquestionable liberty interest in pre-adjudication

18   liberty prior to somebody being adjudicated as

19   criminally liable.  And that liberty is the norm and is

20   protected, we respectfully submit, by the excessive bail

21   clause.

22           It is wholly appropriate for careful

23   lawyering to say it's either the Fourth Amendment that

24   provides the protection or the Eighth Amendment that

25   provides that protection or due process that provides

Page 65

 1    that protection, especially in light of the categorical

 2    arguments that are being made that none of those

 3    provisions applies.

 4              The last thing I would point out is that

 5    with regards to -- there was a new issue, I believe,

 6    that was asserted in the reply brief with regards to --

 7    and that would be -- I think there was a new matter that

 8    was asserted as a basis for imposing the rule of

 9    sanctions that was not argued in the original motion,

10    and I believe that the Court should not give that any

11    conversation.  And that was the section of the brief

12    that appears at page 9 of 13, where it talks about the

13    absence of specific allegations against all individual

14    judicial defendants.

15              I've gone back and I've looked at the

16    motion carefully, and I didn't see that issue being

17    raised even tangentially in the original motion.

18              Unless Your Honor has any other questions,

19    that's all I have.  Thank you.

20              THE COURT:  Defendants?

21              MR. BIERNOFF:  May I briefly, Your Honor?

22              THE COURT:  You may.

23              MR. BIERNOFF:  Thanks.

24              Your Honor, the problem that prompts this

25    motion, the Rule 11 motion, is not that plaintiffs

Page 66

1    engaged in alternative pleading, it's not that

2    plaintiffs seek to obtain relief through any mechanism

3    that they can think of.  It is that the claims that they

4    raise in their amended complaint do not satisfy the

5    standard of Rule 11 because there's no support in law

6    for any of those claims.

7              It is insufficient for plaintiffs

8    literally, at the moment of the Rule 11 hearing, for the

9    first time to articulate reasons why they think Salerno

10   should be read differently.

11             The argument that Mr. Westfall made a

12   moment ago is utterly absent from the briefing record in

13   this case.  There's no trace of an argument from

14   plaintiffs that Salerno really means something other

15   than what every court that's considered it has concluded

16   it means.  And plaintiffs again would have been free to

17   make that argument earlier on in these proceedings and

18   did not do so.

19             So let's take a look real briefly at some

20   of the ways in which plaintiffs' complaint, even after

21   the presentation from plaintiffs' counsel a moment ago,

22   remains unsupported by law.

23             Mr. Westfall takes issue with judicial

24   defendants' reliance on the Becker case, which closes

25   the door on a Fourth Amendment case for plaintiffs to

Page 67

1    assert here based on conditions of pretrial release.

2                    I understand that there are points of

3    distinction that the plaintiff can belatedly raise about

4    the Becker case.  The problem is that plaintiffs don't

5    have any authority on the other side.  There is no case

6    that plaintiffs have identified for the Court where the

7    judicial defendants have located in their research that

8    indicates that any pretrial conditions of release ever

9    constitute a continuing search and seizure and therefore

10   open the door to a Fourth Amendment case claim.

11                    So there is an utter asymmetry, Your Honor,

12   between cases that judicial defendants have located and

13   scribed and analyzed in the briefing and plaintiffs'

14   11th-hour protest at this hearing that those cases

15   really should mean something else.  That's all that

16   plaintiffs offer the Court on the Fourth Amendment

17   argument.  That's all that plaintiffs offer the Court on

18   the Fourteenth Amendment argument.

19                    I think the Court expressed a concern or

20   asked a question about what mechanisms are available to

21   a criminal defendant like Ms. Collins.  Ms. Collins

22   absolutely, under the rules, can seek to have the

23   conditions of her pretrial release reevaluated.  If she

24   believes that those can -- or if any criminal defendant

25   believes that the conditions imposed on that individual

Page 68

1    are improper or unfair, that defendant has an

2    opportunity to seek review.

3              There is also certainly a mechanism in

4    state court, whether talking about an appeal or whether

5    you're talking about a habeas proceeding, for a

6    defendant to seek relief from what he or she considers

7    to be improper or too onerous or unreasonable conditions

8    of pretrial release.

9              What no authority supports is plaintiffs

10   sidestepping Ms. Collins' underlying criminal proceeding

11   and coming into federal court not on their own, but with

12   the bail bond industry, to invalidate the entire system

13   of rules that have been promulgated after significant

14   public participation.  And that was a comment that

15   plaintiffs' counsel made, that there was no notice,

16   there were no public hearings.  That's just not true.

17             It's clear from Justice Daniels' affidavit

18   that we submitted in connection with the opposition to

19   the motion for a preliminary injunction that there was a

20   significant period of public participation, and many

21   interested parties weighed in, and those comments were

22   considered as the rules were looked at and ultimately

23   adopted.

24             And so what plaintiffs are asking the Court

25   to do is to find that even though their Eighth

1   Amendment, Fourth Amendment and Fourteenth Amendment

2   claims have no discernable support in any judicial

3   decision, that it is sufficient to avoid a finding that

4   those claims are frivolous for the plaintiffs simply to

5   say that they don't think that the cases we've

6   identified are sufficient, that those cases just are

7   wrong or are inapplicable.

8               If you'll look at the scale, there is all

9   of the authority that we've cited on each of these

10  points.  And on the plaintiffs' side, there is nothing.

11  When it comes to standing, I think it's very -- again,

12  very important to remember that everybody on the

13  plaintiffs' side of this case is seeking entre to this

14  case and is seeking relief from the New Mexico State

15  Judiciary through Darlene Collins.  Darlene Collins

16  doesn't have standing.  Darlene Collins, as we've

17  explained, has many other avenues for review of the

18  conditions of release.  And Mr. Westfall, I think, gives

19  short shrift to what is an important part of the

20  plaintiffs' amended complaint.

21              They are asking for money damages against

22  all of the Justices of the New Mexico Supreme Court,

23  against several other judges, and against court

24  personnel because these plaintiffs disagree with the

25  facially valid duly promulgated rules that this Court

Page 70

1    adopted and that the lower courts have implemented, and

2    that is a travesty.

3                There is no support that plaintiffs have

4    identified at any stage of the proceedings for getting a

5    judicial decree from this Court ordering my clients to

6    pay money to the Bail Bond Association or its members or

7    Darlene Collins or a handful of New Mexico legislators.

8    That is front and center part of the relief that these

9    plaintiffs are asking for, using Section 1983, and it is

10    a misuse of Section 1983.

11                So the fact that plaintiffs at this very

12    late stage have, through another attorney, articulated

13    some reasons why they don't think they should be bound

14    by existing law is not enough.  Plaintiffs needed to

15    make that inquiry on the front end before they filed the

16    complaint.

17                The fact that an accomplished or

18    distinguished attorney in another state filed similar

19    claims is of no moment.  These plaintiffs are not

20    immunized from Rule 11 because a former Solicitor

21    General, who has very strong credentials, filed by their

22    account similar claims.

23                They are not immunized from Rule 11 because

24    they have chosen to sue governmental defendants.  In

25    other words, this notion that the First Amendment

Page 71

 1   somehow nullifies judicial defendants' ability to invoke

 2   Rule 11 finds no support anywhere in law.

 3              So contrary to plaintiffs' argument, this

 4   is not a situation where defendants simply disagree with

 5   the plaintiffs' argument.  It is not a situation where

 6   judicial defendants believe that the law supporting our

 7   defenses is stronger than the law supporting plaintiffs'

 8   claims.

 9              There is literally no support for any of

10   plaintiffs' claims.  That is why the amended complaint

11   is necessarily frivolous.  No legal support and no

12   argument up until this afternoon for the modification or

13   distinction of existing case law.  Those are the reasons

14   why Rule 11 sanctions are necessary in this case, Your

15   Honor, so we would ask that the motion be granted.

16              THE COURT:  They get the last say.

17              MR. WESTFALL:  Your Honor, may I have one

18   small point of rebuttal?

19              THE COURT:  One small point of rebuttal.

20              MR. WESTFALL:  Very small, Your Honor.

21              THE COURT:  All right.

22              MR. WESTFALL:  While I may have put my own

23   gloss on the Salerno point, I think if Your Honor looks

24   at Document Number 24, specifically at pages 3 through

25   9, I think that's the gist of what I asserted to this

Page 72

1    court today.

2                    Thank you, Your Honor.

3                    THE COURT:  All right.  Anything else from

4    the defendants in this -- or plaintiffs in this case?

5    Excuse me.

6                    MR. BIERNOFF:  No, Your Honor.

7                    THE COURT:  Anything from the plaintiffs in

8    this case?

9                    MS. RICHARDS:  No, Your Honor.

10                   THE COURT:  The case is submitted.

11                   My intent is to have a written decision out

12   by Christmas, so that we'll get that done post haste and

13   get that out.

14                   And I've not made my final mind up about

15   this.  I may not address -- I want to address the

16   substantive issues first.  That's the ones that I'm

17   going to address first.  There may be some of the other

18   issues that we have in this case that may get done after

19   I initiate -- after I send out my initial opinion on

20   that, and that may be in supplementary opinions after

21   that.

22                   It was well-argued, well thought out, and I

23   appreciate very much your civility to one another and

24   civility to the Court.  And with that, this court is

25   adjourned.  Thank you.

Page 73

1                    [The Court proceedings adjourned at 2:30

2                    p.m.]

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 74

1   STATE OF NEW MEXICO
    COUNTY OF BERNALILLO
2

3

4

5

6              CERTIFICATE OF COURT REPORTER

7

8              I, DEBRA ANN FRIETZE, New Mexico Certified

9   Court Reporter No. 251, do hereby certify that I

10  reported the foregoing proceedings in stenographic

11  shorthand and that the foregoing pages are a true and

12  correct transcript of those proceedings that were

13  reduced to printed form by me to the best of my ability.

14             I FURTHER CERTIFY that the Reporter's

15  Record of the proceedings truly and accurately reflect

16  the exhibits, if any, offered by the respective parties.

17             I FURTHER CERTIFY that I am neither

18  employed by nor related to any of the parties or

19  attorneys in this case and that I have no interest in

20  the final disposition of this case.

21

22             DEBRA ANN FRIETZE.
               Certified Court Reporter
23             New Mexico CCR No. 251
               Date of CCR Expiration:  12/31/2017
24

25